# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEW MEXICO

In re:                                                    )
                                                          )
**Fred Dale Van Winkle**,                                 )          Case No. 13-11743-t7
                                                          )
        Debtor,                              )
                                                          )
and                                                       )
                                                          )
**Brian Van Winkle**, not in his personal capacity        )
but solely as co–personal representative                  )
of the estate of Fred Van Winkle, and **Tammy**           )
**Sprague**, not in her personal capacity but solely as   )          Adv. No. 20-01022
co–personal representative of the estate of Fred          )
Van Winkle,                                               )
                                                          )
        Plaintiffs,                          )
                                                          )
vs.                                                       )
                                                          )
**Belleview Valley Land Co.**, a New Mexico               )
corporation, **John H. Williams**, and **Ellen B.**       )
**Williams**,                                             )
                                                          )
        Defendants.                          )
                                                          )

## REFLING OF DEFENDANTS' EXHIBITS TO THE
## MOTION FOR SUMMARY JUDGMENT

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

**FRED DALE VAN WINKLE,**

     **Debtor.**

**No. 13-11743-j7**

**TAMMY SPRAGUE as PERSONAL
REPRESENTATIVE OF THE ESTATE
OF FRED DALE VAN WINKLE,**

     **Plaintiff,**

**v.**

**Adv. No. _____**

**BELLEVIEW VALLEY LAND CO., INC.,
JOHN WILLIAMS and ELLEN B.
WILLIAMS,**

     **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES FOR BOTH VIOLATION OF BANKRUPTCY COURT'S DISCHARGE ORDER AND VIOLATION OF STIPULATED ORDER RESOLVING MOTION TO AVOID JUDICIAL LIEN AND FOR EMERGENCY ORDER ENFORCING THE DISCHARGE INJUNCTION TO STAY ANY FURTHER STATE COURT PROCEEDINGS PENDING RESOLUTION OF THESE MATTERS

COMES NOW, Plaintiff, Tammy Sprague as personal representative of the Estate

of Fred Dale Van Winkle (hereinafter referred to as "Van Winkle") through undersigned

counsel, and for its Complaint, states as follows:

1.    Plaintiff resides in Las Cruces, New Mexico.

2.    Defendant, Belleview Valley Land Co., Inc. ("BVL") is a Missouri

Corporation unauthorized to do business in New Mexico. BVL was a

secured creditor in the Chapter 7 bankruptcy of Fred Dale Van Winkle.

## EXHIBIT "11"

1

Case 15-01047-t   Doc 1   Filed 06/24/15   Entered 06/24/15 09:24:29 Page 1 of 13
Case 20-01022-t   Doc 16-2   Filed 10/30/20   Entered 10/30/20 16:21:45 Page 2 of 28

3. Defendants, John and Ellen Williams (hereinafter jointly referred to as "Williams") are believed to be residents of the state of Missouri. The Williams were also secured creditors in the Chapter 7 bankruptcy of Fred Dale Van Winkle.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and the United States District Court for the District of New Mexico's Administrative Order 84-0324 (D.N.M. March 19, 1992) (referring all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to Title 11 to the Bankruptcy Court), and 11 U.S.C. §§524 and 105.

5. This Court has the authority to enter a final order regarding this matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A) and (O). *See also, Mountain States Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir. 1990) (Contempt proceedings arising out of a core matter are also core matters.)

## FACTS AND ALLEGATIONS

6. On August 13, 2010, BVL and Williams obtained judgment against Van Winkle in the amount of $243,944.31 in an Otero County State Court proceeding. On February 4, 2011, the state court awarded further attorney's fees and costs.

7. BVL and Williams filed a Transcript of the Judgment in Otero County on August 17, 2010. A judgment lien attached to the Otero County real property Van Winkle owned.

8.     BVL and Williams filed a Transcript of the Judgment in Lincoln County
       on August 17, 2010.

9.     Van Winkle filed his Chapter 7 bankruptcy petition on May 21, 2013.
       (See Docket Entry # 1 in Bankruptcy Case)[1]

10.    On May 21, 2013 contemporaneously with the filing of his Chapter 7
       Petition, Van Winkle filed his Bankruptcy Schedules and Statement of
       Financial Affairs with the Court. These schedules and statements listed
       the Defendants as a creditor in the case on Schedule D and listed the debt
       as disputed. Docket Entry #1.

11.    On May 23, 2013, the Defendants were given notice of the Debtor's
       bankruptcy proceeding as reflected in the Court's BNC Certificate of
       Service. Docket Entry #9.

12.    BVL and the Williams were aware of the Debtor's bankruptcy as they
       filed a Motion for Relief of Stay on August 30, 2013 through their counsel
       W.T. Martin, Jr. Docket Entry #21.

13.    On August 26, 2013 the Bankruptcy Court entered an order granting
       Debtor a bankruptcy discharge. Docket Entry #19. As a result, the
       Judgment against Van Winkle was voided as to the personal liability of
       Van Winkle.[2]

---

[1] Van Winkle had also attempted to reorganize the debt in a prior chapter 13 proceeding (11-13861) but was unsuccessful and the case was dismissed.

[2] 11 U.S.C. §524(a)(1) states, "A discharge in a case under this title (1) **voids any judgment** at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727…of this title, whether or not discharge of such debt is waived;" (Emphasis Added)

14. The Discharge Order was mailed to the Defendants through their counsel on August 28, 2013 as indicated by the Court's BNC Certificate of Service. Docket Entry #20.

15. The Debtor, Van Winkle, became deceased on April 28, 2014 after receiving his discharge but prior to the case being closed. A suggestion of death was filed on July 21, 2014. Docket Entry #35.

## The Otero County Property

16. On December 4, 2013, the Bankruptcy Court entered an order lifting the automatic stay as to Debtor's Otero County Property (Docket #33).

17. Shortly thereafter, BVL and Williams filed suit to foreclose their judgment lien on the Debtor's Otero County property.

18. On May 22, 2014, the state court entered a Final Judgment foreclosing the judgment lien. See Final Judgment attached as Exhibit "A" hereto.

19. On July 8, 2014, a foreclosure sale was conducted by a special master. The Defendants were the high bidders upon bidding $67,000.00 of their Judgment of $338,905.61.

20. On July 28, 2014, the state court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment even though the underlying Judgment was void as a result of Van Winkle's discharge. See Amended Order attached as Exhibit "B" hereto.

21. A special master's deed transferring title to the property to the Defendants was approved and recorded. See Deed attached as Exhibit "G" hereto.

4

Case 15-01047-t   Doc 1   Filed 06/24/15   Entered 06/24/15 09:24:29 Page 4 of 13
Case 20-01022-t   Doc 16-2   Filed 10/30/20   Entered 10/30/20 16:21:45 Page 5 of 28

22.    Even though the underlying Judgment was void as to Van Winkle's personal liability and uncollectible against Van Winkle, on August 8, 2014, Defendants further recorded a Transcript of Deficiency Judgment reflecting the deficiency judgment of $271,905.61 with the Otero County Clerk of Otero County which begs the question of "How can Van Winkle owe a deficiency on an otherwise void judgment?" See Transcript attached as Exhibit "C" hereto.

23.    On April 20, 2015, Plaintiff filed a Petition for Redemption and placed $73,200.94 in the state court registry as required by law.

24.    On May 14, 2015, Defendants filed a Response to the Petition for Redemption objecting to the Redemption. See Response attached as Exhibit "D" hereto.

25.    On May 14, 2015, Defendants also filed Motion for Summary Judgment to Foreclose the (invalid and unenforceable post-discharge) Judgment Lien and Supporting Brief. See Motion and Brief attached as Exhibit "E" hereto.

**The Lincoln County Property**

26.    Van Winkle owned a condominium at 702 White Mountain, #11, Ruidoso, NM (hereinafter referred to as "Condo"). Van Winkle resided in the Condo at the time his petition was filed and he claimed a $60,000 homestead exemption on the property.

27.    The Condo was subject to a mortgage held by First National Bank of Ruidoso in the approximate amount of $12,000.00.

28. On September 23, 2013, Debtor filed a Motion to Avoid the Judicial Lien of BVL and Williams as it impaired the exemption claimed by Van Winkle. Docket Entry #23.

29. BVL and Williams filed a response through their counsel on October 8, 2013. Docket Entry #27.

30. The Court first ordered that Van Winkle's death did not affect his ability to exempt the property for purposes of avoiding the judicial lien. Docket Entry #45.

31. The parties then stipulated to entry of an Order which valued the Condo and partially avoided the pre-discharge judicial lien held by BVL and Williams. Docket Entry #45.

32. The Order indicates that the pre-discharge judicial lien is avoided to the extent of $100,000 (value) less the payoff of the first mortgage less the Van Winkle's homestead exemption ($60,000). BVL and Williams have since purchased the note and first mortgage from First National Bank of Ruidoso and claim that as of April 20, 2015 the amount owed on principal and interest is $20,164.05 thereby avoiding all but $19,835.95 of the pre-judgment lien against the Condo.[3]

33. On March 20, 2015, Van Winkle filed a Motion to Compel Abandonment of the Condo and of any redemption rights held by Van Winkle as a result of the Otero Property foreclosure discussed above. The Motion was

---

[3] It is important to note that Williams purchased the note and mortgage on August 6, 2013 (before the bankruptcy discharge was granted) for the amount of $15,034.77. No notification from BLV or Williams has ever been received by Van Winkle nor was Van Winkle ever sent any billing notifications for the mortgage payments raising possible RESPA and/or TILA violations.

6

Case 15-01047-t   Doc 1   Filed 06/24/15   Entered 06/24/15 09:24:29 Page 6 of 13
Case 20-01022-t   Doc 16-2   Filed 10/30/20   Entered 10/30/20 16:21:45 Page 7 of 28

properly noticed out and all parties including BLV and Williams were given the opportunity to object. No objections were filed. Docket Entry #64 and #65.

34. On April 15, 2015, the Bankruptcy Court entered an Order Granting the Motion to Compel. Docket Entry #67.

35. On April 15, 2015, the Bankruptcy Court entered an Order Abandoning Assets which included the Condo and Otero foreclosure redemption rights. Docket Entry #68.

36. On May 19, 2015, BVL and Williams filed an Amended Complaint for Judgment for Debt and Money Due on Promissory Note, to Foreclose Real Estate Mortgage and to Foreclose Judgment Lien. See Complaint attached as Exhibit "F" attached hereto.

37. Even though the amount of their lien had been avoided except for $19,835.95, Exhibit F seeks to enforce the entire judgment lien as it requests, "If the proceeds are insufficient to satisfy the balance owed on the Otero County judgment, then a deficiency judgment for the **unpaid balance** be entered in accordance with the deficiency judgment previously entered by the Otero County District Court." Exhibit F, Page 10, Paragraph 6(c). (Emphasis Added)

## Count I

### Violation of The Bankruptcy Court's Discharge Order

38. The Order of Discharge is a federal court order and it operates as an injunction against creditors who commence or continue an action against a debtor to recover or to collect a discharged debt. *See, **Tennessee Student Assistance Corp. v. Hood,*** 541 U.S. 440, 449 n.4 (2004).

39. A Creditor's continued attempts to collect the discharged debt places it in contempt of this Court. This Court can impose sanctions under the bankruptcy code. See 11 U.S.C. §105. *See, **Schott v. WyHy Federal Credit Union (In re Schott)***, 282 B.R. 1, 6 (10th Cir. BAP 2002); ***Skinner,*** 917 F.2d at 447.

40. In this case, Van Winkle's debt to BLV and Williams was discharged on August 26, 2013.

41. Van Winkle does not dispute that the BLV and Williams' pre-discharge Judgment Liens survived the bankruptcy, and that BLV and Williams were allowed to collect as against the real property of Van Winkle with the limitation that the judgment lien in Lincoln County was partially avoided and only attached in the approximate amount of $19,835.95.

42. BLV and Williams have violated the Court's discharge order, however, by misleading and basically committing fraud upon the Otero County state court by filing a false transcript of judgment which ignores the voiding of the pre-bankruptcy judgment post-discharge in the Otero County case. See Paragraph 22 *supra.* BLV and Williams argue in many of the state court filings that because the Court granted a further "deficiency judgment" which they transcribed as a further lien against the Otero

8

property, that Van Winkle should be prohibited from redeeming the Otero property free and clear of their post-discharge "deficiency judgment." In other words, BLV and Williams are attempting to impose and enforce an invalid post discharge "deficiency lien" against post Van Winkle's newly acquired property. This is a clear violation of 11 U.S.C. §524(a)(2).

43.     BLV and Williams have violated the Bankruptcy Court's discharge order as follows:

    A. By submitting the Amended Order Approving Special Master's Report & Granting Deficiency Judgment to the state court in the Otero County foreclosure case. See Exhibit B. Van Winkle submits that Exhibit B is an attempt to collect on a discharged debt. BLV and Williams were entitled to collect as to the Otero property. Upon foreclosing on the Otero property, BLV and Williams bid a portion of their judgment in the amount of $67,000.00 and the lien was terminated as to its *in rem* status. There remained no further *in rem* or *in personam* obligation at that time as Van Winkle no longer owned any real estate in Otero County. Since the underlying debt had previously been discharged, there could be no further "deficiency." The language contained in Exhibit B, Page 3, Paragraph 6(a) is an attempt to collect on a discharged debt even though deceptively coined an "in rem" deficiency judgment.

9

Case 15-01047-t   Doc 1   Filed 06/24/15   Entered 06/24/15 09:24:29 Page 9 of 13
Case 20-01022-t   Doc 16-2   Filed 10/30/20   Entered 10/30/20 16:21:45 Page 10 of 28

B. By filing a further Transcript of Judgment for $271,905.61 in the records of Otero County on the claimed "deficiency judgment." Again, there can be no deficiency on an otherwise void Judgment.

C. By filing Plaintiffs' Response to Petition for Redemption in the Otero County case.

D. By filing a further Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien in the Otero County case.

E. By filing Plaintiffs' Motion for Summary Judgment to Foreclose Judgment Lien and Supporting Brief in the Otero County case.

44. The Debtor should be awarded her costs, attorney fees, and damages caused by the violations.

45. The acts by BLV and Williams are willful, wanton, malicious, or taken in clear disregard or disrespect of the bankruptcy laws; therefore, punitive damages should be awarded.

46. Van Winkle did not "reaffirm" the debt with the defendant pursuant to 11 U.S.C. §524.

47. Van Winkle has suffered injury and harm as a result of the Defendants' failure to comply with the Court's discharge order in an amount to be proven at trial.

## Count II

### Violation of the Stipulated Order Resolving Motion to Avoid Judicial Lien

48. BLV and Williams have violated the Stipulated Order Resolving Motion to Avoid Judicial Lien by filing the Complaint for Judgment for Debt and

Money Due on Promissory Note, to foreclose real estate mortgage and to

Foreclose Judgment Lien in the Lincoln County case.  In this case, BLV

and Williams have simply ignored the Stipulated Order regarding the lien

avoidance that was entered by the Bankruptcy Court by asking the state

court for a deficiency if the judicial lien is not satisfied in full.

## Count III

### Declaratory Judgment

49.    A Declaratory Judgment is necessary from this Court in order to rule on

the effect of the Van Winkle's bankruptcy discharge as it applies to the

legality of the tactics of BLV and Williams in the state court lawsuits.  A

Declaratory Judgment may be necessary in order to further challenge and

to have those orders set aside on Rule 60 grounds in the state court

proceedings since the action was taken in violation of the discharge

injunction.

## Count IV

### Request for Emergency Hearing for Order Enforcing Discharge Injunction to Stay State Court Proceedings Pending Resolution Herein

50.    Van Winkle requests that this matter be set for Emergency Hearing to

Enforce the Discharge Injunction already in place due to Van Winkle's

bankruptcy discharge.

WHEREFORE, for the foregoing reasons, the Van Winkle respectfully requests

this Court to:

1.  Enter a Declaratory Judgment indicating that, 1) Defendants are not entitled to any post discharge "deficiency judgment;" 2) that their judgment liens expired with the foreclosure of the Otero property; 3) that the underlying debt was discharged in Van Winkle's bankruptcy proceeding; and 4) that only $19,835.95 of the Defendants' judgment lien attaches to the Lincoln County property.

2.  Find the Defendant violated the Court's discharge order as set forth in this Complaint;

3.  Find that the Defendant's violations were willful, intentional, and malicious in nature as they are in clear violation of the law;

4.  Enter an Order enforcing the discharge injunction which can be filed in the state court proceedings which will stay those proceedings until these matters are determined by this Court;

5.  Award the Plaintiff all actual damages incurred including attorney's fees, costs, and expenses incurred by them;

6.  Award the Plaintiff punitive damages to the extent necessary to prevent this type of conduct by this creditor and other creditors that appear before this Court.

7.  Grant any further relief deemed necessary by this Court.

                                    Respectfully Submitted,

                                    /s/ filed electronically
                                    R. "Trey" Arvizu, III
                                    Attorney for Plaintiff
                                    P.O. Box 1479

Las Cruces, NM  88004
(575)527-8600
(575)527-1199 (fax)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                              Case No. 13-11743 t7

      Debtor.

TAMMY SPRAGUE, personal representative
of the estate of FRED DALE VAN WINKLE,

      Plaintiff,

v.                                                  Adv. No. 15-01047 t

JOHN WILLIAMS,
ELLEN B. WILLIAMS, and
BELLEVIEW VALLEY LAND CO., INC.,

      Defendants.

## OPINION

As set out in an opinion entered February 10, 2017, the Court concluded that Defendants
violated the discharge injunction under 11 U.S.C. § 524 by attempting to foreclose on real property
that Plaintiff redeemed post-discharge. The Court entered partial summary judgment on that issue.
Now before the Court is whether to award Plaintiff damages for Defendants' violation of the
discharge injunction, and/or for violating a separate Court order.[1] The Court held an evidentiary
hearing and has considered the law and the evidence. The Court will award $33,161.70 in
compensatory damages and $16,838.30 in punitive damages for violation of the discharge
injunction and court order.

---

[1] Previous orders limited the evidentiary hearing to matters not already decided in the opinion
granting partial summary judgment. *See* docs. 77, 86.

EXHIBIT "12"

## I. FACTS[2]

### 1. The Original State Court Action.

In 2008, Fred Van Winkle brought an action in state court against Belleview Valley Land Co., John Williams, and Ellen B. Williams. Defendants filed a counterclaim.

On August 13, 2010, Defendants obtained a money judgment against Van Winkle for $243,944.31 (the "Original Judgment"). This amount was augmented on February 4, 2011 by a $17,711.93 award of attorney fees and costs.

Defendants filed transcripts of judgment in Otero and Lincoln Counties on August 17, 2010, creating judgment liens on Van Winkle's real estate in those counties. At the time Van Winkle owned, inter alia, certain land in Otero County, New Mexico (the "Subdivision Property") and a condominium in Ruidoso, New Mexico (the "Condominium").

### 2. The Bankruptcy Case.

Van Winkle filed this chapter 7 case on May 21, 2013. Defendants received notice of the bankruptcy filing.

On Van Winkle's Schedule A, he listed several parcels of real property, including the Subdivision Property and the Condominium.

Van Winkle claimed $60,000 of the equity in the Condominium as exempt under New Mexico's homestead exemption, N.M.S.A. § 42-10-9. The Condominium is encumbered by a first

---

[2] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court took judicial notice of the docket in the adversary case and in the main bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

-2-

mortgage, held at that time by First National Bank of Ruidoso.[3] The Condominium also is encumbered by Defendant's judgment lien.

On August 26, 2013, the Court granted Van Winkle a chapter 7 discharge (the "Discharge Order"). Defendants were aware of the Discharge Order, and referred to it in state court filings.

      3.    The Stipulated Order.

On September 23, 2013, Van Winkle filed a motion in this Court to avoid Defendants' judicial lien on the Condominium, arguing that the lien impaired his homestead exemption. Defendants responded on October 8, 2013.

Van Winkle died on April 28, 2014. His daughter, plaintiff Tammy Sprague, was appointed as the personal representative of his probate estate.

On November 14, 2014, the Court ruled that Van Winkle's death did not affect his heirs' ability to exempt the Condominium or avoid the judicial lien. On January 27, 2015, Plaintiff and Defendants thereafter entered into a Stipulated Order Resolving Motion to Avoid Judicial Lien of Belleview Valley Land Co., John Williams and Ellen B. Williams (the "Stipulated Order"). The Stipulated Order provides in part:

> [Finding #] 6. The parties have agreed that the Property shall be valued at $100,000 for purposes of determining the extent of Creditors' judicial lien.
>
> [Decretal ¶] 1. The transcript of judgment lien of Creditors attached as Exhibit "A" hereto is hereby partially avoided and attaches only to the extent of any value over and above the stipulated value of the Property ($100,000) less the payoff of the First Mortgage less the Debtor's allowed Homestead Exemption ($60,000).
>
> [Decretal ¶] 2. When the amount of the payoff of the First Mortgage is known, the Court will enter a further order establishing the exact amount of the Creditors' judicial lien that can be applied against the Property.

---

[3] In August 2013, Defendant John Williams bought the first mortgage loan. At that time, the loan balance was about $13,000.

-3-

On March 20, 2015, Plaintiff filed a motion to compel the trustee to abandon both the Condominium and a statutory right to redeem the Subdivision Property.[4] The Court entered an order on April 15, 2015, deeming both assets abandoned.

4.   The Subdivision Property Foreclosure.

In December, 2010, Defendants had commenced an action in state court to foreclose their judgment lien on the Subdivision Property (the "Subdivision Foreclosure Action"). The action was stayed by the bankruptcy filing.

On December 4, 2013, the Court entered an order modifying the automatic stay so Defendants could complete the Subdivision Foreclosure Action. On May 22, 2014, the state court entered a final judgment foreclosing Defendants' judgment lien on the Subdivision Property. The judgment provided that, in the event of a deficiency, the Court could not enter a deficiency judgment against Van Winkle individually.

A special master held a sale of the Subdivision Property on July 8, 2014. Defendants John and Ellen Williams were the high bidders, credit bidding $67,000 of their judgment. On July 28, 2014, the state court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment, which included a deficiency judgment of $271,905.61, plus 8.75% interest. The amended order, submitted by Defendants, provides:

> The deficiency is a lien on the debtor's … real estate. While no deficiency judgment is granted on an in personam basis against the Estate of Fred Van Winkle, deceased, the lien created by the deficiency is collectable as provided … [by New Mexico law]. The deficiency also remains collectable by the plaintiffs through legal action, or actions, to enforce judgment liens as they may exist in other New Mexico counties.

---

[4] *See* N.M.S.A. § 39-5-18(A), which states in part "After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in the foreclosure proceeding."

-4-

Defendants recorded a new transcript of judgment in Otero County on August 8, 2014.

5.    Redemption of the Subdivision Property.

On April 20, 2015, Plaintiff filed in the Subdivision Foreclosure Action a petition to redeem the Subdivision Property. She deposited money in the court registry.

Defendants responded to the petition for redemption by, inter alia, filing a complaint to foreclose their deficiency judgment lien on the redeemed Subdivision Property, and asking for a summary judgment of foreclosure. Defendants took the position that Plaintiff's right of redemption was subject to Defendants' right to full payment of the deficiency judgment, and/or their right to foreclose the remaining judgment lien on the redeemed property.

The redemption remains pending; Defendants still have title to the Subdivision Property.

6.    The Condominium Foreclosure.

On May 19, 2015, Defendants filed an amended complaint in state court to foreclose their mortgage and judgment lien on the Condominium (the "Condominium Foreclosure Action"). The prayer for relief states:

> The sequence for payment from the proceeds received at a Special Master's sale are (1) satisfaction of the Note and Mortgage-payable to John Williams; (2) $60,000 for homestead exemption-payable to the Estate; and (3) the balance on the BVL and Williams judgment lien-payable to BVL and Williams.

7.    Attorney Fees.

Plaintiff has incurred attorney fees as follows:

a.    Law Office of Kyle H. Moberly

| Invoice Date | Fees | Interest, Costs and Tax | Total |
|---|---|---|---|
| August 12, 2015 | $7,000 | $617.88 | $7,617.88 |
| October 5, 2015 | $60 | $207.86 | $ 267.86 |
| April 6, 2017 | $1,000 | $118.13 | $1,118.13 |
| Total | $8,060 | $943.87 | $9,003.87 |

-5-

Mr. Moberly charged an hourly rate of $200, and spent a total of approximately 43.1 hours on the

Otero and Lincoln county cases.

        b.    Arvizu law Office, P.C.

| Invoice Date | Fees | Costs and tax | Total |
|---|---|---|---|
| June 6, 2017 | $24,502.50 | $2,225.53 | $26,728.02 |

Mr. Arvizu billed $225 per hour, and spent 108.90 hours on this case.

        8.    Personal Representative Time.

Plaintiff has spent 84.61 hours working on this matter. She asks the Court to award her

compensation at the rate of $40 per hour, for a total of $3,384.50.

        9.    Damages to the Subdivision Property.

Plaintiff asserts that, during the time redemption has been delayed by Defendants' violation

of the discharge injunction, the Subdivision Property has suffered the following damage:

- Wind damage to the roofs of two mobile homes attached to the property ($18,000); and
- Damages to a dirt berm on the property, caused by Defendants' failure to properly maintain the berm ($2,500).

## II.    DISCUSSION

### A.    Power to Sanction for Violations of the Discharge Injunction.

There is no private right of action under § 524(a)(2) when a creditor violates the discharge

injunction. *In re Otero,* 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (surveying the case law). The

remedy lies in a contempt proceeding, pursuant to which the Court may assess sanctions. *In re

Paul,* 534 F.3d 1303, 1306-1307 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts

have the equitable power to enforce and remedy violations of substantive provisions of the

Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2).... Thus, a

bankruptcy court may sanction a party for violating the discharge injunction...."). *See also*

-6-

*Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases for the proposition that sanctions are the generally recognized remedy). Bringing a contempt proceeding to sanction the creditor for violating the discharge injunction is the generally recognized remedy. *Paul,* 534 F.2d at 1306-07. *See Bessette,* 230 F.3d at 445; *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 506 (9th Cir. 2001); *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 917 (7th Cir. 2001).

### B. Burden of Proof.

Plaintiff has the burden of proving a violation of the discharge injunction by clear and convincing evidence. *In re Zilog, Inc.,* 450 F.3d 996, 1007 (9th Cir. 2006); *In re Al-Jiboury,* 344 B.R. 218, 225 (Bankr. D. Mass. 2006); *Musslewhite v. O'Quinn (In re Musslewhite),* 270 B.R. 72, 79 (S.D. Tex. 2000). *See generally Reliance Ins. Co. v. Mast Const. Co.,* 159 F.3d 1311, 1315 (10th Cir. 1998) (to prevail in a civil contempt proceeding, plaintiff must prove elements by clear and convincing evidence). Damages in a civil contempt proceeding, however, need only be proved by a preponderance of the evidence. *Reliance,* 159 F.3d at 1315.

### C. Willful Violation.

To sanction a party for violating § 524(a), a court must determine that the creditor's actions were willful, "i.e., whether the creditor deliberately acted with [actual] knowledge of the bankruptcy case." *In re Martin*, 474 B.R. 789, at *6 (6th Cir. BAP 2012) (unpublished), quoting *In re Waldo,* 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009); *In re Gunter,* 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

> [A] willful violation [of § 524(a) ] does not require any specific intent. Rather, the question is simply whether, having knowledge of the ... discharge injunction, the creditor's actions were intentional." *McCool,* 446 B.R. at 823 (citations omitted). A creditor's mistaken belief that its actions were lawful or did not violate § 524(a) is not a defense to a contempt action. *Id.* ("[A] willful violation of the ... discharge

-7-

> injunction may still exist even though the creditor believed in good faith that its actions were lawful."); *Waldo*, 417 B.R. at 892.

*Martin*, 474 B.R. 789, at \*6. *See also In re Culley*, 347 B.R. 115, \*5 (10th Cir. BAP 2006) (citing *In re Diviney*, 225 B.R. 762 (10th Cir. BAP 1998 for the proposition that violation of the automatic stay is willful if creditor knew about the injunction and intended the actions that violated it); *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996) (same, with respect to the discharge injunction);[5] *In re Nibbelink*, 403 B.R. 113, 120 (Bankr. M.D. Fla. 2009) (citing and following *Hardy*). *See also In re Johnson*, 501 F.3d 1163, 1173 (10th Cir. 2007) (reasonableness of creditor's belief that it did not violate automatic stay has no bearing on willfulness).

### D.  Damages Recoverable.

"In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." 4 Collier on Bankruptcy (16th ed.) ¶ 524.02[2][c], citing *Hardy v. IRS (In re Hardy),* 97 F.3d 1384 (11th Cir. 1996); *In re Elias,* 98 B.R. 332 (N.D. Ill. 1989); *Cherry v. Arendall (In re Cherry),* 247 B.R. 176 (Bankr. E.D. Va. 2000); *In re Arnold,* 206 B.R. 560 (Bankr. N.D. Ala. 1997). *See also McGlynn v. Credit Store, Inc.,* 234 B.R. 576, 583 (D.R.I. 1999) (collecting cases). In *In re Culley*, the Bankruptcy Appellate Panel for the Tenth Circuit upheld Judge Starzynski's award of actual damages, attorney fees, and punitive damages as a sanction for violating the discharge injunction. 347 B.R. 115, at \*5.

### 1.  Defendants' Violation of the Discharge Injunction was Willful.

The Court finds and/or concludes that Defendant willfully violated the discharge injunction. Defendants were well aware that the injunction had been entered. They were active

---

[5] In the Tenth Circuit, the standards for sanctioning violations of the automatic stay and the discharge injunction appear to be identical, or nearly so.

-8-

in the bankruptcy case, and never denied knowledge of the injunction. Their state court pleadings show that they knew about the discharge injunction.

Further, Defendants' actions that violated the discharge injunction (e.g. seeking to foreclose on the redeemed Subdivision Property) were intentional, as opposed to accidental or unintended. Defendants' argue that they thought their actions did not violate the discharge injunction. This is a difficult position to defend, given the lack of supporting authority. Regardless, Defendants' beliefs about legality are irrelevant. "A creditor's mistaken belief that its actions were lawful or did not violate § 524(a) is not a defense to a contempt action." *Martin*, 474 B.R. 789, at *6, citing *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010). *See also In re Atlantic Medical Management Services, Inc.*, 387 B.R. 654, 662 (Bankr. E.D. Pa. 2008), *citing Cuffee v. Atlantic Business and Community Development Corporation (In re Atlantic Business and Community Corporation)*, 901 F.2d 325 (3rd Cir.1990); *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989).

Defendants argue that it is not a willful violation of the discharge injunction if even a minority of courts support their position. Whether or not that argument has any merit, there are no cases supporting Defendants' position.

2.    Attorney Fees.

The Court concludes that Plaintiff is entitled to recover reasonable[6] fees incurred in state and bankruptcy court to respond to and stop the discharge injunction violation.

---

[6] "To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

-9-

In determining a reasonable sanction, courts do not distinguish between state court attorney fees spent responding to a violation and bankruptcy court attorney fees incurred to stop it. *See, e.g., In re Martin*, 474 B.R. 789 (6th Cir. BAP 2012) (unpublished) (attorney fees incurred in state court and bankruptcy court as a result of discharge violation were compensable); *In re Hambrick*, 481 B.R. 105, 118 (Bankr. E.D. Okla. 2012) (awarding attorney fees incurred in bankruptcy case as contempt sanction); *In re Cherry*, 247 B.R. at 190 (awarded both state and bankruptcy court attorney fees).

                    a.      Kyle Moberly fees. The Court has reviewed Mr. Moberly's fee bills. All of the fees are reasonable. Of the total fees, costs, and taxes billed, the Court finds that $4,318.42 was incurred in connection with the discharge injunction violation.

                    b.      Arvizu Law Office Fees. Arvizu Law Office charged $26,728.03 to represent Plaintiff in this matter. The Court finds that all of the charges were incurred to remediate Defendants' violations of the discharge injunction and Stipulated Order. The Court also finds that the fees would have been a fraction of amount charged if Defendants had agreed to let the Court rule on the discharge injunction issue when it first arose. The hours spent on the case are reasonable in light of the complexity of the case and the Defendants' litigiousness. The Court will award $26,728.03 as part of its sanction.

            3.      Personal representative time and expenses.

Plaintiff seeks to recover damages for her time and expense as personal representative of the Van Winkle probate estate, but does not seek lost profits from her personal business.

N.M.S.A. § 45-3-719 provides:

> A personal representative is entitled to reasonable compensation for his services. If a will provides for compensation of the personal representative and there is no contract with the decedent regarding compensation, he may renounce the provision before qualifying and be entitled to reasonable compensation. A personal

-10-

representative also may renounce his right to all or any part of the compensation. A written renunciation of the fee may be filed with the court.

The Court finds that under this provision, Plaintiff would be entitled to reimbursement from the probate estate for the time she spent in this matter. The Court further finds that $25 per hour is reasonable compensation for Plaintiff's time. Since Plaintiff spent 84.61 hours working on the matter, the Court will include in the sanction $2,115.25 for the time spent. The Court will require Plaintiff's counsel to file a short statement in this proceeding that, upon Defendants' payment of the sanction, Plaintiff will waive her right to seek reimbursement of $2,115.25 from the probate estate.

4.    Damages to the Subdivision Property.

The Court finds that Plaintiff did not carry her burden of proving the alleged damages to the Subdivision Property.

With respect to the mobile home roofs, Plaintiff is not an expert, and could not testify about how much it would cost to repair them. She had personal experience about what it recently cost her to fix her "brick and mortar" house, but the costs are not translatable.

Similarly, the only evidence in the record about the cost of repairing the dirt berm is hearsay,[7] to which Defendants' timely objected. In any event, the testimony was too vague and general to be of much use.

The Court cannot award any amounts for property damage, but notes that Plaintiff may have recourse from the following New Mexico statute:

Whenever any property shall be redeemed under the terms or provisions of any section of this act, the purchaser, his personal representatives or assigns shall have the growing crops upon such lands and shall not be responsible for rents and profits, but shall account only for waste.

---

[7] Plaintiff testified about what her father told her it cost to rent a bulldozer to repair the berm.

-11-

N.M.S.A. § 39-5-22. If Defendants have committed waste on the Subdivision Property, they would be liable to Plaintiff for that.

      E.    Punitive Damages.

"If the violation is willful or in reckless disregard of the law, punitive damages are proper. A creditor may be assessed punitive damages if it knew of the federally protected right and acted intentionally or with reckless disregard of that right." *In re Culley*, 347 B.R. 115 (10th Cir. BAP 2006) (affirming bankruptcy court's award of punitive damages several times higher than actual damages).

As set forth above, the Court found and concluded that Defendants' violation of the discharge injunction was willful. That finding appears to be sufficient to allow an award of punitive damages.[8] Furthermore, the Court finds and concludes that Defendants acted with reckless disregard of Plaintiff's rights under the discharge injunction. Defendants knew or should have known that their legal position was weak and lacked statutory or case law support.[9] A responsible party, faced with such a dearth of authority, would have sought a ruling from this Court before proceeding. Defendants instead pursued their doubtful course aggressively, without court

---

[8] It is not completely clear that the "willfulness" standard for awarding actual damages and attorney fees is the same as the willfulness standard for awarding punitive damages. Similarly, it is not clear whether, in *Culley*, the court meant to use "willfully" and "intentionally" interchangeably.

[9] The authority Defendants rely upon, cited in both the state court and this Court, does not support their position that a judgment lien, post-discharge, can reattach to redeemed property. The weakness of their position can be summed up by the following:

- Redemption rights are not real property, as shown by, inter alia, the fact that they are never foreclosed. Indeed, it is not possible to foreclose on redemption rights under a mortgage or judgment lien;
- Because they are not real property rights, Defendants did not have a lien on the redemption right at issue;
- Foreclosure of the judgment lien eliminated all of Defendants' *in rem* lien rights in the Subdivision Property;
- Therefore, post-discharge the Defendants had no more rights to the redeemed Subdivision Property than to any other after-acquired property.

-12-

guidance. Worse, when Plaintiff complained about the discharge injunction violation, Defendants should have stopped everything and asked for a ruling on the issue. Defendants chose a different path, namely to ignore Plaintiff, barrage the state court with unhelpful or misleading legal argument, and to do everything possible to avoid a ruling from the Court.

An alternative test to determine whether punitive damages are awardable is to consider (i) the defendant's conduct, (ii) the defendant's ability to pay, (iii) the motives for the defendant's actions, and (iv) any provocation by the debtor. *In re Culley*, 347 B.R. 115, at \*4 (10th Cir. 2006), citing *In re Diviney*, 226 B.R. at 777. Application of these factors supports the award of punitive damages. As outlined above, Defendants took an aggressive course of action in the state court without a solid legal basis for doing so. Defendants' actions were willful, reckless, and appear somewhat vindictive. Exercising the probate estate's right of redemption is not a provocative act.

The purpose of punitive damages is to deter the offending creditor from continuing to violate the discharge injunction. *In re Culley*, 347 B.R. 115, at \*5.

All things considered, the Court finds and concludes that an award of punitive damages is warranted here. Defendants' conduct was willful and in reckless disregard of the law. Defendants' conduct also comes within the alternative test discussed above. The Court finds and concludes that an award of $16,838.30 in punitive damages is reasonable and appropriate.

F.      Damages for Violation of the Stipulated Order.

Plaintiff seeks contempt sanctions for Defendants' violation of the Stipulated Order. The evidence at the final hearing demonstrated that Defendants violated the Stipulated Order when they sued to foreclose their first mortgage and judgment lien on the Condominium. In their prayer for relief, Defendants asked that $60,000 of the special master's sale proceeds be paid to Plaintiff, with the balance paid to Defendants. Thus, for example, if the Condominium sold for $110,000,

-13-

Defendants would be paid $50,000. This is contrary to the Stipulated Order. While the language of decretal paragraph 1 of the Stipulated Order is somewhat confusing, when read in tandem with recital 6, the order can only mean that Defendants mortgage and lien interests are limited to $40,000. Their prayer for relief should have been similarly limited. Instead, the prayer for relief was written as though the Stipulated Order had never been entered. Nevertheless, the Court will not assess additional damages because they would be cumulative.

III.    CONCLUSION

Defendants willfully and/or recklessly violated the discharge injunction and caused actual damages and attorney fees of $33,161.70. To this amount the Court will add a punitive damage award of $16,838.30, for a total judgment of $50,000. The Court will enter a separate final judgment.

David T. Thuma
United States Bankruptcy Judge

Entered: June 23, 2017.

Copies to:

All case participants listed in CM/ECF.

-14-