# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEW MEXICO

In re: )
)
**Fred Dale Van Winkle**, )        Case No. 13-11743-t7
)
        Debtor, )
)
and )
)
**Brian Van Winkle**, not in his personal capacity )
but solely as co–personal representative )
of the estate of Fred Van Winkle, and **Tammy** )
**Sprague**, not in her personal capacity but solely as )        Adv. No. 20-01022
co–personal representative of the estate of Fred )
Van Winkle, )
)
        Plaintiffs, )
)
vs. )
)
**Belleview Valley Land Co.**, a New Mexico )
corporation, **John H. Williams**, and **Ellen B.** )
**Williams**, )
)
        Defendants. )
)

## REFLING OF DEFENDANTS' EXHIBITS TO THE
## MOTION FOR SUMMARY JUDGMENT

FILED
12TH JUDICIAL DISTRICT COURT
OTERO COUNTY NM
9/28/2018 3:03 PM
KATINA WATSON
CLERK OF COURT
Ian Bolinger

**STATE OF NEW MEXICO**
**COUNTY OF OTERO**
**TWELFTH JUDICIAL DISTRICT COURT**

**BELLEVIEW VALLEY LAND CO.**, a New
Mexico corporation, and **JOHN H. WILLIAMS**
and **ELLEN B. WILLIAMS**, husband and wife,

     **Plaintiffs,**

v.

                             **Cause No. CV-2010-01054**
                             **Judge James Waylon Counts**

**TAMMY SPRAGUE**, Personal Representative
of the Estate of Fred Van Winkle, Deceased,

     **Defendant/Petitioner,**

**and**

**BRIAN VAN WINKLE** and **JUDITH A.**
**VAN WINKLE**, husband and wife,

     **Defendants-in-Intervention.**

## PETITIONER'S AMENDED REPLY TO PLAINTIFFS' RESPONSE TO
## PETITIONER'S MOTION TO SUBSTITUTE TAMMY SPRAGUE,
## BRIAN VAN WINKLE AND HALEY VAN WINKLE AS PETITIONERS

Petitioner, Tammy Sprague, as personal representative of the estate of Fred Van Winkle,

through her counsel of record, Law Office of Kyle H. Moberly, P.C., replies to Plaintiffs' Response

to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as

Petitioners ("**Plaintiffs' Response**") as follows:

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 1 of 7

EXHIBIT "14"

In Plaintiffs' Response, Plaintiffs essentially had the following objections to Petitioner's

Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners (the

"**Motion**"):[1]

**1.** **Assignment of Right of Redemption is Not Fraudulent.** Plaintiffs claim that the

Motion is a "blatant fraud upon this court, a fraud upon Plaintiffs, and should not be permitted under

any circumstances." More specifically, Plaintiffs claim that Petitioner's assignment of the right of

redemption (the "**Assignment**") to Tammy Sprague, Brian Van Winkle and Haley Van Winkle

(collectively, the "**Heirs**") "is not bona fide and violates the Uniform Fraudulent Transfer Act."

Presumably, Plaintiffs mean that the Assignment violates New Mexico's Uniform Voidable

Transactions Act, NMSA 1978, Sections 56-10-14 through 56-10-29, which, prior to 2016, was

called the "Uniform Fraudulent Transfer Act." But, even if that is what they meant to say, the

Assignment is bona fide and does not violate New Mexico's Uniform Voidable Transactions Act

because Petitioner was merely acting on behalf of the Heirs when she filed the Petition for

Redemption and, therefore, the Assignment does not transfer anything to the Heirs that did not

already belong to them.

Petitioner filed the Petition for Redemption on behalf of the Heirs. This was done

for the Heirs' convenience and to provide their counsel a single person to act as their representative

---

[1] In Plaintiffs' usual fashion, Plaintiffs' Response is long and confusing. As the U.S.
Bankruptcy Appellate Panel of the Tenth Circuit (the "**BAP**") stated in its Order Denying
[Plaintiffs'] Motion for Attorneys' Fees on Appeal, Plaintiffs "submitted an excessively voluminous
(1,679 pages), internally redundant, and mostly unnecessary record on appeal. That record vastly
increased the time this Court had to expend deciding this appeal, and most likely caused a similar
increase for the [Petitioner]." The same is true of Plaintiffs' Response.

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 2 of 7

in managing the redemption. They had the right to redeem the real estate that was sold by a special master on July 8, 2014, pursuant to the Final Judgment Foreclosing Plaintiffs' Judgment Lien that the Court entered on May 22, 2014 (the "**Property**"). NMSA 1978, Section 39-5-18(D) provides that the term "owner" includes the owner's "heirs." The Heirs, namely, Tammy Sprague, Brian Van Winkle and Haley Van Winkle, are the heirs of Fred Van Winkle, who owned the Property until he died on April 28, 2014. It was a part of his estate until the special master deeded it to Plaintiffs John H. Williams and Ellen B. Williams pursuant to the above-described sale.

The Heirs borrowed the funds necessary to redeem the Property and they are responsible for repaying that loan. See lines 6 through 9 on page 33 and lines 20 through 24 on page 35 of the transcript of Petitioner's deposition on April 10, 2017, a copy of the pages of that transcript that are cited herein is attached hereto as **Exhibit A** (the "**Transcript of Petitioner's Deposition**"). The estate of Fred Van Winkle did not have sufficient funds to redeem the Property; Fred Van Winkle only had about $1,200 when he died. See lines 3 through 8 on page 27 of the Transcript of Petitioner's Deposition. The Heirs did not loan the funds to the estate of Fred Van Winkle. They merely gave them to Petitioner to hold and disburse on their behalf. See lines 7 through 11 on page 38 of the Transcript of Petitioner's Deposition. The Heirs gave additional funds to Petitioner to disburse on their behalf to purchase their father's interest in their grandmother's farm in Roosevelt County, New Mexico, from his bankruptcy trustee. See lines 20 through 25 on page 40 and lines 1 through 10 on page 41 of the Transcript of Petitioner's Deposition. Plaintiffs have known all of this since at least April 10, 2017. Therefore, it should be no surprise to Plaintiffs that the Heirs are

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 3 of 7

the real owners of the Petition for Redemption and the funds deposited with the Court to redeem the Property (the "**Funds**").

Petitioner was effectively the Heirs' "nominee." A "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" and also as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1211 (10th ed. 2014). Petitioner was "designated to act in place of" the Heirs to file the Petition for Redemption. Petitioner "holds bare legal title [to the right of redemption] for the benefit of" the Heirs. Petitioner held the funds the Heirs borrowed to redeem the Property and deposited them into the Court's registry for the Heirs' benefit. Therefore, the Assignment merely transferred Petitioner's bare legal title to the Petition for Redemption and the Funds to the Heirs.

Since the Heirs were the equitable owners of the Petition for Redemption and the Funds prior to the Assignment, the Assignment merely transferred Petitioner's bare legal title to the Petition for Redemption and the Funds to the Heirs. As a result, the Assignment is not a voidable transaction under New Mexico's Uniform Voidable Transactions Act or what used to be call a fraudulent transfer or fraudulent conveyance under prior New Mexico law. *In re Garcia*, 367 B.R. 778 (Bankr. N.M., 2007) (The debtors did not have an equitable interest in the property they conveyed to the parents of one of them shortly before they filed bankruptcy; they had bare legal title only. Therefore, the conveyance was not a fraudulent transfer).

**2.** **Heirs are Interested Parties.** Plaintiffs claim that the Heirs are not "interested parties" as a result of the Assignment because the Assignment was not effective. This claim is based

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 4 of 7

on Plaintiffs' assertion that the right of redemption could not be assigned to the Heirs because Petitioner had "already exercised [it] and [therefore it] is no longer a valid right."

There is nothing in the statute authorizing and governing the exercise of the right of redemption, NMSA 1978, Section 39-5-18, that prohibits the assignment of the right of redemption after a party files a petition for redemption. Furthermore, the New Mexico Court of Appeals mentioned, without objection, in its opinion in *HSBC Bank USA v. Fenton*, 2005-NMCA-138, Note 1, 138 N.M. 665, 125 P.3d 644, that the district court that presided over that case allowed a party "to be designated as a petitioner by substitution for" a party who originally filed a petition for redemption. Thus, Petitioner could assign the right of redemption to the Heirs after she filed the Petition for Redemption.

Furthermore, as described in more detail above, the Heirs were the equitable owners of the Petition for Redemption and the Funds prior to the Assignment and, therefore, they are the real parties in interest with respect to the Petition for Redemption.

**3.     Substitution of Heirs as Petitioner is Necessary and Does Not Prejudice Plaintiffs.** Plaintiffs claim that substitution of the Heirs for Petitioner is not necessary and is not permitted due to prejudice to Plaintiffs, including that it will delay this proceeding. Petitioner denies that claim.

The certificate of redemption that the clerk of the court issues after the conclusion of the hearing of the Petition for Redemption will presumably be issued to whomever is the petitioner. Therefore, in order for that certificate to be issued to the real parties in interest, which are the Heirs, they must be allowed to be designated as the petitioner by substitution.

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 5 of 7

Plaintiffs will not be prejudiced by the substitution of the Heirs for Petitioner because the Heirs are the real owners of the Petition for Redemption and the Funds and they always have been and Plaintiffs have known that for a long time.

Substitution of the Heirs for Petitioner will not delay the hearing of the Petition for Redemption or Plaintiffs' Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien and its Motion for Summary Judgment to Foreclose Judgment Lien, both of which should be denied as being premature as stated by the BAP in its opinion (see discussion below). Petitioner would have filed the Motion over three years ago if the parties had not agreed to stay this proceeding while they resolved in bankruptcy court Petitioner's claim that Plaintiffs violated the bankruptcy discharge injunction. Therefore, the Motion and, if it was granted, any issues raised by the substitution of the Heirs for the Petitioner would have had to have been heard and addressed eventually, unless Plaintiffs had been found to have violated the discharge injunction.

The Court should pay no heed to Plaintiffs' plea that "this Court . . . not delay this proceeding any further." Plaintiffs are responsible for most of the delay since the Petition for Redemption was filed. As the BAP stated in its opinion, "the record is replete with examples where positions taken by the [Plaintiffs] appeared to be an unnecessarily relentless pursuit to collect the Judgment Lien, often without regard to the law or the practicalities of litigation" and that Plaintiffs "were 'litigious' and 'aggressive,' including: the premature filing of the second foreclosure on the Otero Land [which is the subject of Plaintiffs' Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien and its Motion for Summary Judgment to Foreclose Judgment Lien] prior to the state court declaring the redemption effective and while it still held title; improperly delaying

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 6 of 7

the redemption process by arguing [Petitioner] must pay the entire amount due on the First Mortgage (sic) [should be Judgment Lien] to properly redeem, which was clearly unsupported by state law . . . ." *Sprague v. Williams (In re Van Winkle)*, 583 B.R. 759, 773 (B.A.P. 10th Cir., 2018). Any further delay in this proceeding caused by the Court considering and granting the Motion will pale in comparison to the delays caused by Plaintiffs' "aggressive" and "unnecessarily relentless" efforts to collect the remainder of its judgment over the last three years.

For the foregoing reasons, and for the reasons stated in the Motion, the Motion should be granted and the Heirs should be substituted as petitioners in this matter.

Respectfully submitted,

**LAW OFFICE OF KYLE H. MOBERLY, P. C.**

By: */s/ Kyle H. Moberly*

Kyle H. Moberly
State Bar # 245
Attorney for Petitioner
2460 S. Locust Ste. E
Las Cruces, NM 88001
(575) 541-1278

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, Petitioner's Amended Reply to Plaintiffs' Response to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners was served on Plaintiffs' counsel of record electronically through the Odyssey File & Serve/Tyler Technology system.

*/s/ Kyle H. Moberly*
**KYLE H. MOBERLY**

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 7 of 7

Case 20-01022-t    Doc 16-4    Filed 10/30/20    Entered 10/30/20 16:21:45    Page 8 of 28

Page 1 (Pages 1-4)

Sprague v Williams, et al.                     Tammy Sprague
Adv No. 15-010471        **Exhibit A**         April 10, 2017

Page 1

```
 1        IN THE UNITED STATES BANKRUPTCY COURT
 2            FOR THE DISTRICT OF NEW MEXICO
 3 In Re:
 4 FRED DALE VAN WINKLE,
 5                    Debtor,  No. 13-1174 t7
 6
 7 TAMMY SPRAGUE, PERSONAL REPRESENTATIVE
   OF THE ESTATE OF FRED DALE VAN WINKLE,
 8
 9                    Plaintiff,
10  -vs-              Adv. No. 15-010471
11 JOHN WILLIAMS AND ELLEN B.
   WILLIAMS, husband and wife,
12 and BELLEVIEW VALLEY LAND CO., INC.,
13                    Defendants.
14
15        DEPOSITION OF TAMMY SPRAGUE
16
                 April 10, 2017
17         9:05 a.m. to 11:24 a.m.
               443 Mechem Drive
18            Ruidoso, New Mexico
19
        PURSUANT TO THE BANKRUPTCY RULES OF CIVIL
20
   PROCEDURE, this deposition was:
21
22 TAKEN BY:   W.T. MARTIN, JR., ESQ.
               ATTORNEY FOR DEFENDANTS
23
   REPORTED BY:   JAN WIMBERLY, CCR No. 13
24               Dama's Reporting Service
                  P.O. Box 2022
25               Alamogordo, New Mexico  88311-2022
```

Page 2

```
 1             APPEARANCES
 2 For the Plaintiff:
 3    ARVIZU LAW OFFICE
      P.O. Box 1479
 4    Las Cruces, NM 88004-1479
      575-527-8600
 5    BY: R. TREY ARVIZU III, ESQ.
 6 For the Defendants:
 7    MARTIN, DUGAN & MARTIN
      P.O. Box 2168
 8    Carlsbad, NM 88221-2168
      505-887-3528
 9    BY: W.T. MARTIN, JR., ESQ.
10
11 ALSO PRESENT: John Williams
12
13 TRANSCRIPTION NOTE:
14
   Ellipses points (...) at the end of a sentence
15 denote an incomplete thought or sentence.
16 A dash (--) indicates an interruption of speaker or
   a change of thought.
17
   "[sic]" means "thus" or "so." If the attorney or
18 deponent misuses or mispronounces a word, "[sic]" is
   used to show it is not the reporter's error.
19
20
21
22
23
24
25
```

Page 3

```
 1              INDEX
 2                          PAGE
 3 TAMMY SPRAGUE
 4 Examination by Mr. Martin           4
 5 Reporter's Certificate         79
 6 Signature/Correction Page      81
 7
 8              EXHIBITS
 9 EXHIBIT      DESCRIPTION         PAGE
10 Exhibit No. 1  Check No. 10005, $147,000    31
11 Exhibit No. 2  Wells Fargo statement, August   32
                  2014
12
   Exhibit No. 3  Court Order              39
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1            TAMMY SPRAGUE,
 2 having been first duly sworn, testified as follows:
 3             EXAMINATION
 4 BY MR. MARTIN:
 5    Q.  Would you state your full name, please.
 6    A.  Tammy Laree Sprague -- Van Winkle-Sprague.
 7 Van Winkle is my maiden name.
 8    Q.  Have you ever given a deposition before?
 9    A.  I have not.
10    Q.  Okay.  Well, I'm not one of these to go
11 and spend 30 minutes on how it works or ground
12 rules, but let me go through a couple of things.  If
13 you do not understand the question I've asked,
14 please tell me.  And can we have an agreement that
15 if you don't -- if you don't understand a question,
16 you're going to tell me; otherwise, if you don't, we
17 can -- it's understood that you do understand the
18 question and are able to answer it to the best of
19 your knowledge and ability?
20    A.  Yes.
21    Q.  Okay.  You had said a moment ago that you
22 didn't feel very good today.  Is there any reason
23 why your health condition would stop you from giving
24 this deposition today?
25    A.  Probably just irritability more than
```

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 25

1   Q.   And I believe your brother Brian Van
2   Winkle and your sister Haley Van -- I'm sorry this
3   is daughter -- yeah, your sister Haley Van Winkle
4   each consented to you being the personal
5   representative?
6   A.   Correct.
7   Q.   Now your dad, according to this, had no
8   Will --
9   A.   Correct.
10  Q.   -- is that correct?  Did you do a search
11  for a Will?
12  A.   We did.
13  Q.   And you could not find one?
14  A.   No.
15  Q.   When did you complete your inventory of
16  the estate?
17  A.   I have not -- I'm sorry, can you give me a
18  little bit more detail of what you're asking?
19  Q.   What I asked you is when did you complete
20  the inventory of the estate.
21  A.   Nothing filed as far as in the probate,
22  just when I actually assessed what was in my
23  father's possession.
24  Q.   So you have never filed an inventory in
25  the probate; is that correct?

Page 26

1   A.   I have not.  I have been told that we had
2   three years to make that filing.  I was told that in
3   the Carrizozo courthouse, they told me that I had
4   three years.  And this has been complicated with the
5   bankruptcy court, and so I haven't completed it.
6   Q.   So you at this point have not completed an
7   inventory?
8   A.   I did complete an inventory of what he had
9   as far as his bills and things like that.
10  Q.   We'll come back to that in just a second.
11  A.   All right.
12  Q.   Who told you that you had three years to
13  file an inventory?
14  A.   The clerk.  When I filed -- when I got the
15  application, she said that I had up to three years
16  to take to wrap everything up.
17  Q.   Do you ever recall being told that you had
18  90 days to file an inventory under the Probate Code?
19  A.   I do not.
20  Q.   Do you ever recall that?
21  A.   I do not.
22  Q.   Or three months?
23  A.   I do not.
24  Q.   Okay.  So where we are, if I understand
25  this correctly, is you have not filed an inventory

Page 27

1   at this point in time in the probate proceeding?
2   A.   I have not filed anything.
3   Q.   Okay.  What have you determined was in the
4   estate at the time of his death?
5   A.   The cash, small amount of cash in his
6   checking account.
7   Q.   And that was how much?
8   A.   Approximately $1,200.
9   Q.   And what else was in his estate?
10  A.   The property tied up in litigation.
11  Q.   That would be the Otero County property,
12  Lincoln County property, Roosevelt County property?
13  A.   Correct.  But there is confusion on my
14  part, because it was tied up in the bankruptcy
15  hearings, as to whether or not it was still -- had
16  been released or not.
17  Q.   Okay.  Any other property besides the real
18  estate and the $1,200 cash?
19  A.   Furnishings in his home.
20  Q.   Okay.  Anything else?
21  A.   Personal -- personal effects, clothing.
22  Q.   At the time --
23  A.   A vehicle.
24  Q.   Vehicle, okay.
25  A.   Um-hmm.

Page 28

1   Q.   At the time of his death, did he have any
2   sources of income?
3   A.   Social Security.
4   Q.   Any other sources of income?
5   A.   No, other than the -- he received -- once
6   a year, he did receive money from the USDA, but that
7   was also relinquished to the bankruptcy court when
8   it came in.
9   Q.   And that's on the crop program, correct?
10  A.   Correct, um-hmm.
11  Q.   Are you still -- is the estate still
12  continuing to receive the crop payment from USDA?
13  A.   Yes, um-hmm.
14  Q.   When is the last time the estate received
15  a payment?
16  A.   In October of 2016.  And it is set to
17  expire in October of 2017.
18  Q.   The program's ending at that time, is it
19  not?
20  A.   Correct.
21  Q.   Did the estate receive a payment from the
22  USDA for 2016?
23  A.   In October of 2016.
24  Q.   What about 2015?
25  A.   Yes.

Page 9 (Pages 33-36)

Sprague v Williams, et al.                                    Tammy Sprague
Adv No. 15-010471                                             April 10, 2017

Page 33

1 Representative.
2    Q. Now, does that particular document contain
3 information that you deposited this $147,000 check
4 into that account?
5    A. Yes, it does.
6    Q. In your answers to the interrogatories in
7 relation to this $147,000, you indicated that this
8 was a loan to you; is that correct?
9    A. Correct.
10   Q. Who loaned you the money?
11        MR. ARVIZU: Objection. I'm going to
12 instruct my client not to answer the question.
13        MR. MARTIN: What is your reason?
14        MR. ARVIZU: This is under review by
15 Judge Thuma, there's a motion to compel that's been
16 filed and he has not ruled on the motion to compel.
17        MR. MARTIN: So you are refusing to answer
18 that --
19        MR. ARVIZU: Yes.
20        MR. MARTIN: -- today.
21        MR. ARVIZU: Yes.
22        MR. MARTIN: On the basis that Judge Thuma
23 has not ruled on the motion to compel?
24        MR. ARVIZU: Correct.
25        MR. MARTIN: Let me ask you this, so we

Page 34

1 can get it on the record --
2        MR. ARVIZU: Okay.
3        MR. MARTIN: -- Trey. What is -- other
4 than the fact that it is the subject of a motion to
5 compel, what is your basis for objecting to the
6 disclosure of who loaned the money?
7        MR. ARVIZU: Client's request.
8        MR. MARTIN: Let me put on the record that
9 that is not a valid reason for refusal to answer the
10 question or respond. The question directly relates
11 to issues in this case and if it doesn't directly
12 relate to this issues in this case, it certainly
13 leads to evidence that is relevant.
14   Q. (By Mr. Martin) Let me ask you this: You
15 have direct -- you have said you do not want to have
16 the name of the person that loaned you this money to
17 be disclosed --
18   A. Correct.
19   Q. -- is that correct?
20   A. Correct.
21   Q. Why do you not want to disclose who loaned
22 you the money?
23   A. They asked not to be disclosed.
24   Q. Have you signed a promissory note to them?
25   A. Yes, I have.

Page 35

1    Q. Is this more than one person?
2    A. I don't know.
3    Q. You don't know?
4    A. I don't know. It was a single person that
5 gave me the loan.
6    Q. And you have signed a promissory note?
7    A. I have signed a personal agreement in the
8 form of informal promissory note.
9    Q. So it's not a promissory note, it's just
10 some document that is an informal agreement?
11   A. It has not been filed anywhere that I'm
12 aware of.
13   Q. What are your terms of repayment?
14   A. Upon the settlement of the redemption and
15 the sale of the property.
16   Q. So as I understand your answer, your terms
17 of repayment are dependent upon what happens with
18 the redemption?
19   A. Correct.
20   Q. What is your obligation to repay, if you
21 are not successful in the redemption?
22   A. Then my brother, my sister and I will
23 divide the debt in three ways and make personal
24 payments.
25   Q. Are you making any payments on this debt

Page 36

1 now?
2    A. Not at this time.
3    Q. Is the lender a person or is it some kind
4 of entity of some nature?
5    A. I would assume that it came from a holding
6 company.
7    Q. You would assume that it came from a
8 holding company?
9    A. It came from a holding company.
10   Q. What type of holding company?
11   A. A personal holding company.
12   Q. What kind of business is this holding
13 company in?
14   A. I would assume that they are going to be
15 holding profits that they made from personal
16 business.
17   Q. To your knowledge, what type of business
18 does this holding company conduct or engage in at
19 the present time?
20   A. I don't know.
21   Q. Do you have an ownership interest in this
22 holding company?
23   A. No, I do not.
24   Q. Does your husband have an ownership
25 interest in this holding company?

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 37

1    A.   No, we do not.
2    Q.   Do any of your other family members have
3    an ownership interest in this holding company?
4    A.   No.
5    Q.   How did you find this holding company?
6    A.   I didn't find a holding company.
7    Q.   How did you become aware of this holding
8    company?
9    A.   I borrowed money from the individual that
10   owns the holding company.
11   Q.   How did you become aware of the
12   individual?
13        MR. ARVIZU: Hey, Tom.
14        MR. MARTIN: Yes.
15        MR. ARVIZU: Let's stop this right now.
16   Let's not go down this road, let's just hold off on
17   this until Judge Thuma takes the motion to compel --
18        MR. MARTIN: I haven't asked for the
19   identity.
20        MR. ARVIZU: I understand, but you're
21   playing 20 questions here.
22        MR. MARTIN: Well, I have every right to.
23        MR. ARVIZU: Well, I'm just saying let's
24   hold off on this line of questioning.
25        MR. MARTIN: I'm not going to stop.

Page 38

1         MR. ARVIZU: Well, I'm going to instruct
2    you not to answer any further questions on this.
3         MR. MARTIN: And I'm going to enter an
4    objection to the instruction to stop responding to
5    perfectly legitimate discovery questions. Give me
6    just a moment, please.
7    Q.   (By Mr. Martin) You deposited the $147,000
8    into the estate account to make it an asset of the
9    estate, correct?
10   A.   I deposited it into there to disburse it
11   out of there.
12   Q.   For?
13   A.   For business.
14   Q.   Of the estate?
15   A.   For business of the estate, correct.
16   Q.   What did you pledge to secure this debt?
17   A.   Nothing. My name.
18   Q.   In 2015, you -- and when I say "you," I'm
19   talking in terms of the estate or you as personal
20   representative -- you started the process of
21   attempting to redeem the property in Otero County?
22   A.   Correct.
23   Q.   And did you deposit an amount in the court
24   registry which was $73,200.94?
25   A.   I believe that's the right amount.

Page 39

1    Q.   Again, this is public record, but let me
2    mark that as Exhibit 3. This is a conformed copy of
3    a -- or filed-stamped copy of an order. Do you
4    recognize that document?
5         (Exhibit No. 3 marked.)
6    A.   Yes, I do.
7    Q.   Okay. And does that document reflect the
8    amount that was deposited into the court registry?
9    A.   I believe it does.
10   Q.   Okay. Where did the $73,200.94 come from?
11   A.   Out of that $147,000.
12   Q.   Did you write the check?
13   A.   Yes, I did.
14   Q.   And did you write the check on or about
15   April 20, 2015?
16   A.   This is dated April 21st, and so I'm
17   assuming that I wrote it that day.
18   Q.   Okay. And do you have the canceled check?
19   A.   It would be a matter of bank record, yes.
20   Q.   Do you have the bank statement for April
21   of 2015 on the estate?
22   A.   Yes.
23   Q.   And would you have a copy of the canceled
24   check?
25   A.   It would be an electronic copy.

Page 40

1    Q.   Understood. But do you have a copy of
2    that?
3    A.   There should be a copy with the bank
4    statement, I can't verify that.
5    Q.   I would ask your attorney to have you
6    provide us with a copy of that particular bank
7    statement, please.
8    A.   The entire statement?
9    Q.   Yes, ma'am.
10   A.   Okay.
11   Q.   How long do you think it would take you to
12   be able to find that copy and, through your
13   attorney, provide us with that?
14   A.   A week, four days, five days.
15   Q.   Fairly quickly then?
16   A.   Yes.
17   Q.   Okay. Can we agree on trying to get it
18   done within five days?
19   A.   Yes.
20   Q.   Now, out of this $147,000 that was loaned
21   and it became an estate asset, did you use the
22   remainder of the money for estate purposes?
23   A.   I used 12,500 to purchase my grandmother's
24   farm back from the bankruptcy trustee.
25   Q.   Do you still -- does the estate still have

Page 11 (Pages 41-44)

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 41

1  that property in Roosevelt County?
2  A.  It was deeded over to me and my brother
3  and my sister. We were able -- we obtained it
4  through the bankruptcy trustee.
5  Q.  So title to that undivided one-half
6  interest is in the three children?
7  A.  Correct.
8  Q.  And that's where the title is as of today;
9  is that correct?
10  A.  Yes, that's correct.
11  Q.  Do you have it under contract for sale or
12  anything, or are you just --
13  A.  No, I do not.
14  Q.  -- are you all just holding it right now?
15  A.  It's family property on my mother's side,
16  no intent to sell.
17  Q.  Okay.
18  MR. MARTIN: Give me just a moment,
19  please.
20  Q.  (By Mr. Martin) You obtained the $147,000
21  check on approximately August 22nd, 2014, that's the
22  date of the check?
23  A.  Correct.
24  Q.  And you did not attempt to exercise the
25  redemption until April of 2015. What was your

Page 42

1  reason for waiting so long to attempt to exercise
2  the redemption?
3  A.  It just took me that long to get
4  everything in order and to hire appropriate counsel.
5  Q.  Now, when you say to "get everything in
6  order," explain that, please. What do you mean "get
7  everything in order"?
8  A.  It just took me that long to take action,
9  that's all I can say.
10  Q.  Why didn't you attempt to start the
11  redemption shortly after you obtained the $147,000?
12  A.  Because I wasn't clear on what the ruling
13  was on the position, I just needed legal counsel.
14  Q.  I'm not asking what counsel said, so
15  please understand that. At that time, you had
16  Mr. Arvizu, who had been representing your dad --
17  A.  Correct.
18  Q.  -- and now you, correct, as far as the --
19  A.  Correct.
20  Q.  I'm not asking what he's told you, so
21  again understand that, but did you attempt to obtain
22  advice from him about the redemption?
23  A.  Yes.
24  Q.  Did you seek a second opinion on the
25  redemption?

Page 43

1  A.  Yes.
2  Q.  Was it this Mr. --
3  A.  Moberly.
4  Q.  Is that how you pronounce it, Moberly?
5  A.  Correct, um-hmm.
6  Q.  I'm not asking, again, what either one
7  said, okay?
8  A.  Um-hmm.
9  Q.  Please understand that. Was there a
10  difference of opinion between Mr. Arvizu and
11  Mr. Moberly about the redemption and the exercising
12  of the redemption?
13  A.  None that I'm aware of.
14  Q.  Okay. Let me jump, if I may, to another
15  topic. There was some discussion prior to the start
16  of this deposition about the issue of damages based
17  upon the partial summary judgment entered by the
18  bankruptcy court. Can you tell me what damages you
19  are claiming at this point?
20  A.  I would be claiming my attorneys' fees,
21  both Mr. Moberly and Mr. Arvizu.
22  Q.  Do you know what those amounts are?
23  A.  Mr. Arvizu is 16,000 plus.
24  Q.  In relation to the -- is that the entire
25  charge for his representation in the bankruptcy?

Page 44

1  A.  That is his representation from the time
2  that we began the redemption.
3  Q.  And what are Mr. Moberly's charges?
4  A.  I can get you the exact amount.
5  Q.  Okay.
6  A.  $9,167.20.
7  Q.  And what documents are you looking at?
8  A.  Just my own personal notes.
9  Q.  And again, on Mr. Moberly, are you
10  claiming that that is in relation to the redemption?
11  A.  Yes, sir.
12  Q.  Okay. And not his entire representation
13  of you?
14  A.  He didn't represent me until we started
15  the redemption process.
16  Q.  Didn't he represent the -- if I've got my
17  timing correct, didn't he represent the estate when
18  there was the issue of trespass?
19  A.  No, sir, he did not.
20  Q.  And the deed that you did?
21  A.  No, he did not. I represented --
22  Q.  Why was he in court then?
23  A.  Because he represented Mr. Pete Joyce. I
24  represented myself pro se.
25  Q.  Are any of his charges in relation to

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In Re:

FRED DALE VAN WINKLE,



Debtor, No. 13-1174 t7

TAMMY SPRAGUE, PERSONAL REPRESENTATIVE
OF THE ESTATE OF FRED DALE VAN WINKLE,

Plaintiff,

-vs-                          Adv. No. 15-010471

JOHN WILLIAMS AND ELLEN B.
WILLIAMS, husband and wife,
and BELLEVIEW VALLEY LAND CO., INC.,

Defendants.


DEPOSITION OF TAMMY SPRAGUE


April 10, 2017
9:05 a.m. to 11:24 a.m.
443 Mechem Drive
Ruidoso, New Mexico


PURSUANT TO THE BANKRUPTCY RULES OF CIVIL

PROCEDURE, this deposition was:


TAKEN BY:  W.T. MARTIN, JR., ESQ.
           ATTORNEY FOR DEFENDANTS

REPORTED BY:  JAN WIMBERLY, CCR No. 13
              Dama's Reporting Service
              P.O. Box 2022
              Alamogordo, New Mexico  88311-2022

Page 1 (Pages 1-4)

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

**Page 1**

```
 1          IN THE UNITED STATES BANKRUPTCY COURT
 2          FOR THE DISTRICT OF NEW MEXICO
 3  In Re:
 4  FRED DALE VAN WINKLE,
 5                    Debtor,  No. 13-1174 t7
 6
 7  TAMMY SPRAGUE, PERSONAL REPRESENTATIVE
    OF THE ESTATE OF FRED DALE VAN WINKLE,
 8
 9                    Plaintiff,
10  -vs-                      Adv. No. 15-010471
11  JOHN WILLIAMS AND ELLEN B.
    WILLIAMS, husband and wife,
12  and BELLEVIEW VALLEY LAND CO., INC.,
13                    Defendants.
14
15          DEPOSITION OF TAMMY SPRAGUE
16
17             April 10, 2017
               9:05 a.m. to 11:24 a.m.
18             443 Mechem Drive
               Ruidoso, New Mexico
19
20    PURSUANT TO THE BANKRUPTCY RULES OF CIVIL
    PROCEDURE, this deposition was:
21
22  TAKEN BY:  W.T. MARTIN, JR., ESQ.
               ATTORNEY FOR DEFENDANTS
23
24  REPORTED BY:  JAN WIMBERLY, CCR No. 13
                  Dama's Reporting Service
25                P.O. Box 2022
                  Alamogordo, New Mexico  88311-2022
```

**Page 3**

```
 1              INDEX
 2                        PAGE
 3  TAMMY SPRAGUE
 4  Examination by Mr. Martin            4
 5  Reporter's Certificate            79
 6  Signature/Correction Page         81
 7
 8            EXHIBITS
 9  EXHIBIT        DESCRIPTION        PAGE
10  Exhibit No. 1  Check No. 10005, $147,000    31
11  Exhibit No. 2  Wells Fargo statement, August  32
       2014
12
    Exhibit No. 3  Court Order              39
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 2**

```
 1           APPEARANCES
 2  For the Plaintiff:
 3     ARVIZU LAW OFFICE
       P.O. Box 1479
 4     Las Cruces, NM 88004-1479
       575-527-8600
 5     BY: R. TREY ARVIZU III, ESQ.
 6  For the Defendants:
 7     MARTIN, DUGAN & MARTIN
       P.O. Box 2168
 8     Carlsbad, NM 88221-2168
       505-887-3528
 9     BY: W.T. MARTIN, JR., ESQ.
10
11  ALSO PRESENT: John Williams
12
13  TRANSCRIPTION NOTE:
14
    Ellipses points (...) at the end of a sentence
15  denote an incomplete thought or sentence.
16  A dash (--) indicates an interruption of speaker or
    a change of thought.
17
    "[sic]" means "thus" or "so." If the attorney or
18  deponent misuses or mispronounces a word, "[sic]" is
    used to show it is not the reporter's error.
19
20
21
22
23
24
25
```

**Page 4**

```
 1           TAMMY SPRAGUE,
 2  having been first duly sworn, testified as follows:
 3           EXAMINATION
 4  BY MR. MARTIN:
 5     Q.  Would you state your full name, please.
 6     A.  Tammy Laree Sprague -- Van Winkle-Sprague.
 7  Van Winkle is my maiden name.
 8     Q.  Have you ever given a deposition before?
 9     A.  I have not.
10     Q.  Okay.  Well, I'm not one of these to go
11  and spend 30 minutes on how it works or ground
12  rules, but let me go through a couple of things.  If
13  you do not understand the question I've asked,
14  please tell me.  And can we have an agreement that
15  if you don't -- if you don't understand a question,
16  you're going to tell me; otherwise, if you don't, we
17  can -- it's understood that you do understand the
18  question and are able to answer it to the best of
19  your knowledge and ability?
20     A.  Yes.
21     Q.  Okay.  You had said a moment ago that you
22  didn't feel very good today.  Is there any reason
23  why your health condition would stop you from giving
24  this deposition today?
25     A.  Probably just irritability more than
```

Page 9 (Pages 33-36)

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 33

1  Representative.
2  Q.  Now, does that particular document contain
3  information that you deposited this $147,000 check
4  into that account?
5  A.  Yes, it does.
6  Q.  In your answers to the interrogatories in
7  relation to this $147,000, you indicated that this
8  was a loan to you; is that correct?
9  A.  Correct.
10  Q.  Who loaned you the money?
11      MR. ARVIZU: Objection. I'm going to
12  instruct my client not to answer the question.
13      MR. MARTIN: What is your reason?
14      MR. ARVIZU: This is under review by
15  Judge Thuma, there's a motion to compel that's been
16  filed and he has not ruled on the motion to compel.
17      MR. MARTIN: So you are refusing to answer
18  that --
19      MR. ARVIZU: Yes.
20      MR. MARTIN: -- today.
21      MR. ARVIZU: Yes.
22      MR. MARTIN: On the basis that Judge Thuma
23  has not ruled on the motion to compel?
24      MR. ARVIZU: Correct.
25      MR. MARTIN: Let me ask you this, so we

Page 34

1  can get it on the record --
2      MR. ARVIZU: Okay.
3      MR. MARTIN: -- Trey. What is -- other
4  than the fact that it is the subject of a motion to
5  compel, what is your basis for objecting to the
6  disclosure of who loaned the money?
7      MR. ARVIZU: Client's request.
8      MR. MARTIN: Let me put on the record that
9  that is not a valid reason for refusal to answer the
10  question or respond. The question directly relates
11  to issues in this case and if it doesn't directly
12  relate to this issues in this case, it certainly
13  leads to evidence that is relevant.
14  Q.  (By Mr. Martin) Let me ask you this: You
15  have direct -- you have said you do not want to have
16  the name of the person that loaned you this money to
17  be disclosed --
18  A.  Correct.
19  Q.  -- is that correct?
20  A.  Correct.
21  Q.  Why do you not want to disclose who loaned
22  you the money?
23  A.  They asked not to be disclosed.
24  Q.  Have you signed a promissory note to them?
25  A.  Yes, I have.

Page 35

1  Q.  Is this more than one person?
2  A.  I don't know.
3  Q.  You don't know?
4  A.  I don't know. It was a single person that
5  gave me the loan.
6  Q.  And you have signed a promissory note?
7  A.  I have signed a personal agreement in the
8  form of informal promissory note.
9  Q.  So it's not a promissory note, it's just
10  some document that is an informal agreement?
11  A.  It has not been filed anywhere that I'm
12  aware of.
13  Q.  What are your terms of repayment?
14  A.  Upon the settlement of the redemption and
15  the sale of the property.
16  Q.  So as I understand your answer, your terms
17  of repayment are dependent upon what happens with
18  the redemption?
19  A.  Correct.
20  Q.  What is your obligation to repay, if you
21  are not successful in the redemption?
22  A.  Then my brother, my sister and I will
23  divide the debt in three ways and make personal
24  payments.
25  Q.  Are you making any payments on this debt

Page 36

1  now?
2  A.  Not at this time.
3  Q.  Is the lender a person or is it some kind
4  of entity of some nature?
5  A.  I would assume that it came from a holding
6  company.
7  Q.  You would assume that it came from a
8  holding company?
9  A.  It came from a holding company.
10  Q.  What type of holding company?
11  A.  A personal holding company.
12  Q.  What kind of business is this holding
13  company in?
14  A.  I would assume that they are going to be
15  holding profits that they made from personal
16  business.
17  Q.  To your knowledge, what type of business
18  does this holding company conduct or engage in at
19  the present time?
20  A.  I don't know.
21  Q.  Do you have an ownership interest in this
22  holding company?
23  A.  No, I do not.
24  Q.  Does your husband have an ownership
25  interest in this holding company?

Page 10 (Pages 37-40)

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 37

1    A.   No, we do not.
2    Q.   Do any of your other family members have
3 an ownership interest in this holding company?
4    A.   No.
5    Q.   How did you find this holding company?
6    A.   I didn't find a holding company.
7    Q.   How did you become aware of this holding
8 company?
9    A.   I borrowed money from the individual that
10 owns the holding company.
11   Q.   How did you become aware of the
12 individual?
13       MR. ARVIZU: Hey, Tom.
14       MR. MARTIN: Yes.
15       MR. ARVIZU: Let's stop this right now.
16 Let's not go down this road, let's just hold off on
17 this until Judge Thuma takes the motion to compel --
18       MR. MARTIN: I haven't asked for the
19 identity.
20       MR. ARVIZU: I understand, but you're
21 playing 20 questions here.
22       MR. MARTIN: Well, I have every right to.
23       MR. ARVIZU: Well, I'm just saying let's
24 hold off on this line of questioning.
25       MR. MARTIN: I'm not going to stop.

Page 38

1        MR. ARVIZU: Well, I'm going to instruct
2 you not to answer any further questions on this.
3        MR. MARTIN: And I'm going to enter an
4 objection to the instruction to stop responding to
5 perfectly legitimate discovery questions. Give me
6 just a moment, please.
7    Q.   (By Mr. Martin) You deposited the $147,000
8 into the estate account to make it an asset of the
9 estate, correct?
10   A.   I deposited it into there to disburse it
11 out of there.
12   Q.   For?
13   A.   For business.
14   Q.   Of the estate?
15   A.   For business of the estate, correct.
16   Q.   What did you pledge to secure this debt?
17   A.   Nothing. My name.
18   Q.   In 2015, you -- and when I say "you," I'm
19 talking in terms of the estate or you as personal
20 representative -- you started the process of
21 attempting to redeem the property in Otero County?
22   A.   Correct.
23   Q.   And did you deposit an amount in the court
24 registry which was $73,200.94?
25   A.   I believe that's the right amount.

Page 39

1    Q.   Again, this is public record, but let me
2 mark that as Exhibit 3. This is a conformed copy of
3 a -- or filed-stamped copy of an order. Do you
4 recognize that document?
5        (Exhibit No. 3 marked.)
6    A.   Yes, I do.
7    Q.   Okay. And does that document reflect the
8 amount that was deposited into the court registry?
9    A.   I believe it does.
10   Q.   Okay. Where did the $73,200.94 come from?
11   A.   Out of that $147,000.
12   Q.   Did you write the check?
13   A.   Yes, I did.
14   Q.   And did you write the check on or about
15 April 20, 2015?
16   A.   This is dated April 21st, and so I'm
17 assuming that I wrote it that day.
18   Q.   Okay. And do you have the canceled check?
19   A.   It would be a matter of bank record, yes.
20   Q.   Do you have the bank statement for April
21 of 2015 on the estate?
22   A.   Yes.
23   Q.   And would you have a copy of the canceled
24 check?
25   A.   It would be an electronic copy.

Page 40

1    Q.   Understood. But do you have a copy of
2 that?
3    A.   There should be a copy with the bank
4 statement, I can't verify that.
5    Q.   I would ask your attorney to have you
6 provide us with a copy of that particular bank
7 statement, please.
8    A.   The entire statement?
9    Q.   Yes, ma'am.
10   A.   Okay.
11   Q.   How long do you think it would take you to
12 be able to find that copy and, through your
13 attorney, provide us with that?
14   A.   A week, four days, five days.
15   Q.   Fairly quickly then?
16   A.   Yes.
17   Q.   Okay. Can we agree on trying to get it
18 done within five days?
19   A.   Yes.
20   Q.   Now, out of this $147,000 that was loaned
21 and it became an estate asset, did you use the
22 remainder of the money for estate purposes?
23   A.   I used 12,500 to purchase my grandmother's
24 farm back from the bankruptcy trustee.
25   Q.   Do you still -- does the estate still have

Page 11 (Pages 41-44)

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 41

1 that property in Roosevelt County?
2 A. It was deeded over to me and my brother
3 and my sister. We were able -- we obtained it
4 through the bankruptcy trustee.
5 Q. So title to that undivided one-half
6 interest is in the three children?
7 A. Correct.
8 Q. And that's where the title is as of today;
9 is that correct?
10 A. Yes, that's correct.
11 Q. Do you have it under contract for sale or
12 anything, or are you just --
13 A. No, I do not.
14 Q. -- are you all just holding it right now?
15 A. It's family property on my mother's side,
16 no intent to sell.
17 Q. Okay.
18 MR. MARTIN: Give me just a moment,
19 please.
20 Q. (By Mr. Martin) You obtained the $147,000
21 check on approximately August 22nd, 2014, that's the
22 date of the check?
23 A. Correct.
24 Q. And you did not attempt to exercise the
25 redemption until April of 2015. What was your

Page 42

1 reason for waiting so long to attempt to exercise
2 the redemption?
3 A. It just took me that long to get
4 everything in order and to hire appropriate counsel.
5 Q. Now, when you say to "get everything in
6 order," explain that, please. What do you mean "get
7 everything in order"?
8 A. It just took me that long to take action,
9 that's all I can say.
10 Q. Why didn't you attempt to start the
11 redemption shortly after you obtained the $147,000?
12 A. Because I wasn't clear on what the ruling
13 was on the position, I just needed legal counsel.
14 Q. I'm not asking what counsel said, so
15 please understand that. At that time, you had
16 Mr. Arvizu, who had been representing your dad --
17 A. Correct.
18 Q. -- and now you, correct, as far as the --
19 A. Correct.
20 Q. I'm not asking what he's told you, so
21 again understand that, but did you attempt to obtain
22 advice from him about the redemption?
23 A. Yes.
24 Q. Did you seek a second opinion on the
25 redemption?

Page 43

1 A. Yes.
2 Q. Was it this Mr. --
3 A. Moberly.
4 Q. Is that how you pronounce it, Moberly?
5 A. Correct, um-hmm.
6 Q. I'm not asking, again, what either one
7 said, okay?
8 A. Um-hmm.
9 Q. Please understand that. Was there a
10 difference of opinion between Mr. Arvizu and
11 Mr. Moberly about the redemption and the exercising
12 of the redemption?
13 A. None that I'm aware of.
14 Q. Okay. Let me jump, if I may, to another
15 topic. There was some discussion prior to the start
16 of this deposition about the issue of damages based
17 upon the partial summary judgment entered by the
18 bankruptcy court. Can you tell me what damages you
19 are claiming at this point?
20 A. I would be claiming my attorneys' fees,
21 both Mr. Moberly and Mr. Arvizu.
22 Q. Do you know what those amounts are?
23 A. Mr. Arvizu is 16,000 plus.
24 Q. In relation to the -- is that the entire
25 charge for his representation in the bankruptcy?

Page 44

1 A. That is his representation from the time
2 that we began the redemption.
3 Q. And what are Mr. Moberly's charges?
4 A. I can get you the exact amount.
5 Q. Okay.
6 A. $9,167.20.
7 Q. And what documents are you looking at?
8 A. Just my own personal notes.
9 Q. And again, on Mr. Moberly, are you
10 claiming that that is in relation to the redemption?
11 A. Yes, sir.
12 Q. Okay. And not his entire representation
13 of you?
14 A. He didn't represent me until we started
15 the redemption process.
16 Q. Didn't he represent the -- if I've got my
17 timing correct, didn't he represent the estate when
18 there was the issue of trespass?
19 A. No, sir, he did not.
20 Q. And the deed that you did?
21 A. No, he did not. I represented --
22 Q. Why was he in court then?
23 A. Because he represented Mr. Pete Joyce. I
24 represented myself pro se.
25 Q. Are any of his charges in relation to



Ms. Tammy Sprague
1007 Ellendale
Las Cruces, NM 88005



THIS CHECK IS DELIVERED FOR PAYMENT
ON THE FOLLOWING ACCOUNTS

| DATE | INVOICE NO | AMOUNT |
|------|-----------|--------|
|      |           |        |
|      |           |        |
|      |           |        |
|      |           |        |
|      |           |        |
|      |           |        |

BANK OF ALBUQUERQUE

FOR _____

⑈0 10005⑈ ⑆ 107006506⑆ _____ 1088 9⑈

10005

95-660/1070

PAY
TO THE
ORDER OF  _TAMMY  SPRAGUE_

DATE _AUGUST 22, 2014_

$ | 147,000 ⁰⁰ |

_ONE HUNDRED FORTY - SEVEN THOUSAND  &  ⁿᵒ/100_ _____ DOLLARS





PENGAD 800-631-6989

EXHIBIT

_1_



automatic payment (ACH) transaction - and this is typically one to three days AFTER you made the purchase. When the purchase amount is sent to Wells Fargo for payment, the transaction will be paid with funds in your account, or if your account has insufficient funds to cover the transaction we may pay the transaction into overdraft (at the bank's discretion), or return it unpaid. If the transaction is paid into overdraft or returned unpaid, you may be assessed an overdraft or returned item fee. If the item is returned, the merchant may also charge a returned item fee and they will more than likely resubmit the transaction which could cause additional fees if there is not enough money in the account. As a result, it is very important for you to keep track of these purchases to avoid overspending.

## Activity summary

| | |
|---|---|
| Beginning balance on 8/14 | $127.62 |
| Deposits/Additions | 147,066.45 |
| Withdrawals/Subtractions | - 22,269.80 |
| **Ending balance on 9/12** | **$124,924.27** |

Account number: ████ 8044

**ESTATE OF FRED D. VAN WINKLE**
**TAMMY L SPRAGUE PREP**

*New Mexico account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 107002192

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 8/14 | | Check Crd Purchase 08/13 Circle K 06007 Las Cruces NM 434257xxxxxx9092 584225600396899 ?McC=5542 | | 57.19 | |
| 8/14 | | Check Crd Purchase 08/13 Circle K 06007 Las Cruces NM 434257xxxxxx9092 384225605192765 ?McC=5541 | | 3.95 | 66.48 |
| 8/15 | | Check Crd Purchase 08/14 Si Senor Express Las Cruces NM 434257xxxxxx9092 384226785764623 ?McC=5814 | | 9.16 | 57.32 |
| 8/18 | | Recur Debit Crd Pmt08/15 Rocket Lawyer Inc. 877-8810947 CA 434257xxxxxx9092 304227382077659 ?McC=8999 | | 39.95 | 17.37 |
| 8/21 | 102 | Check | | 66.45 | -49.08 |
| 8/22 | | Check Reversal | 66.45 | | |
| 8/22 | | NSF Return Item Fee for a Transaction Received on 08/21 $66.45 Check # 00102 | | 35.00 | |
| 8/22 | | State Sales Tax | | 2.78 | -20.41 |
| 8/27 | | Deposit | 147,000.00 | | 146,979.59 |
| 8/29 | 103 | Cashed Check | | 1,200.00 | |
| 8/29 | 104 | Check | | 1,200.00 | 144,579.59 |
| 9/2 | 106 | Check | | 1,200.00 | 143,379.59 |
| 9/3 | | Check Crd Purchase 09/02 Sams Club #6502 El Paso TX 434257xxxxxx9092 284245755829888 ?McC=5542 | | 72.17 | |
| 9/3 | | Check Crd Purchase 09/02 Starbucks #06830 E El Paso TX 434257xxxxxx9092 464245773683323 ?McC=5814 | | 5.36 | |
| 9/3 | | Check Crd Purchase 09/03 Burger King #13884 El Paso TX 434257xxxxxx9092 304245775430652 ?McC=5814 | | 3.24 | 143,298.82 |
| 9/5 | 105 | Check | | 400.00 | 142,898.82 |
| 9/8 | | Check Crd Purchase 09/04 Verizon Wrls Myacc 800-9220204 CA 434257xxxxxx9092 304247570193978 ?McC=4814 | | 454.95 | |
| 9/8 | | Withdrawal Made In A Branch/Store | | 12,500.00 | |
| 9/8 | 107 | Check | | 2,000.00 | |
| 9/8 | 108 | Check | | 1,000.00 | 126,943.87 |

Discovery Responses
Page 2 of 2



EXHIBIT
2

PENGAD 800-631-6989



019222

## Defendent In Intervention

Brian Van Winkle (Brian VW) is requesting to exercise his intervention of right. In doing so he seeks to have his sister Tammy Sprague removed as personal representitive of the estate of Fred Van Winkle (deceased) and replaced by himself as personal representitive.
( Brian VW could not verify how Tammy Sprague was Soley appointed as estate representitive )

The intervention of right arises when the intervenor, the person who seeks to become a party to an existing law suit, can satisfactorliy show that his or her interest is not adequately represented by the present parties, that the interest relates to the subject of the action , and that the disposition of the action might in some way impair his or her ability to protect such interest.

This Court is Familiar with this 11yr long litigation concerning the Estate of Fred Van Winkle. Brian VW request that Judge Thuma review his opinions, the BAP election opinions, and the State court ruling concerning this estate and its back ground.

The state court under Judge Counts has just recently allowed a Discharged debt set forth by this Banckruptcy court to be allowed in state court , in doing so , the state court has upset the balance provided by this court between Debtor and Creditor. This has also put Redemption funds deposited with the state court at risk . This ruling allows perpetual lien reattachment if left as is. As defendent in intervention, there are common issues shared between Brian V.W. and the existing parties involved, in particular, an eight acre parcal with Brian VWs homestead and shop. This acerage is a portion of the total acerage up for redemption and tied to the outcome of the complete estate closure. The issue of the Redemption process and allowing it to go forth as ruled by this court, the State ruling concerning lien reattachment and the closing (2017) of the Estate of Fred Van Winkle before the Estate itself has been closed, are grounds for Brian VW's request to be granted and to allow him to exercise his intervention of right. (There are still unsettled issue for this estate concerning the Condo in lincoln county and Sanctions set by this court.)

Brian Van Winkle is not attempting to inject new causes of action into a pending law suit.

Brian VW contacted, met with lenders in California and secured a loan for Fred Van Winkles' Estate litigation and for Redemption funds. The entire loan amount was deposited in an Estate Account for Fred Van Winkle. NM law requires an estate account to remain open until the entire estate is closed.

Brian VW secured this loan by providing his home for collateral.
The total loan amount of $147,000.00 was deposited into the estate account of Fred Van Winkle.
The Redemption funds on deposit with the state court is in the amount of approx $78,000.00.
The balance of 78,000.00 - 147.000.00 = $69,000.00.
Therefore $69,000.00 was left over from Redemption deposit
requirements and available for dispersment thru the Estate account for administration of assosiated cost such as legal fees, Taxes , Etc. and held secure for use in a specified account concerning estate needs until the time of the estates Finale closure.
An accurate balance of the Estate account can only be realized through the reconciling of the bank statements. However, the estate account has been closed and transparent access to the account has

EXHIBIT "16"

3

Defendent In intervention

of redemption under protection of this court.

The Bap ruled the way they did because the redemption Issue was stayed in state court...Williams was not pursuing collections in personam. Since Judge Counts has ruled in favor of lien reattachment he is now persuing in personam and has altered the equitable balance between debtor and creditor and made this a "core issue" eligible for review by the B.C.

Sanctions are called for in light of his relentless attempts in pursuit to collect a discharged debt through under handed legal methods .

Despite the amount of time, money and attention dedicated to litigation in this case, the estate heirs continue this fight for their Redemption and homestead rights in pursuit of justice inspite of The hardships over the past 11 yrs and will continue as long as Mr. Williams continues to relentlessly pursue and attack the Estate.

this he has done by hidding behind and weaponizing an obscure law that appears to be in favor of lien perpetuality regardless of the envolvment of an original morgagor or not. If allowed to prevail in this light as presented to the courts as justice, Tryranny evolves in our judicial system. The BAP noted that Mr. Williams' continued litigation methods resembled what is called " scorched earth" . The Brief Mr. Williams provided requesting Judge Counts To allow the Discharged liens to re attach is self incriminating as to his real intentions to persue the estate in Personam vr. In Rem. Sanctions are Called for to prevent future litigators from following the same or similar path under relative circumstances.

Thank You, Defendant In Intervention.
Brian Van Winkle , Monday June The 9th, 2019

———————————  / / 19

U

FILED
12TH JUDICIAL DISTRICT COURT
OTERO COUNTY NM
8/27/2018 9:57 AM
KATINA WATSON
CLERK OF COURT
Sven Michael Sears

**STATE OF NEW MEXICO**
**COUNTY OF OTERO**
**TWELFTH JUDICIAL DISTRICT COURT**

**BELLEVIEW VALLEY LAND CO., a New**
**Mexico corporation, and JOHN H. WILLIAMS**
**and ELLEN B. WILLIAMS, husband and wife,**

      **Plaintiffs,**

v.

                                      **Cause No. CV-2010-01054**
                                      **Judge James Waylon Counts**

**TAMMY SPRAGUE, Personal Representative**
**of the Estate of FRED VAN WINKLE, Deceased,**

      **Defendant,**

**And**

**BRIAN VAN WINKLE and JUDITH A.**
**VAN WINKLE, husband and wife,**

      **Defendants-in-Intervention.**

### PETITIONER'S MOTION TO SUBSTITUTE TAMMY SPRAGUE, BRIAN VAN WINKLE AND HALEY VAN WINKLE AS PETITIONERS

Petitioner, Tammy Sprague, as personal representative of the estate of Fred Van Winkle, through her counsel of record, Law Office of Kyle H. Moberly, P. C., files this Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as petitioners in this matter. In support of the Motion, Petitioner states as follows:

1.    Petitioner assigned the estate's statutory right to redeem the property at issue in this case to Fred Van Winkle's heirs, namely, Tammy Sprague, Brian Van Winkle, and Haley Van Winkle, who provided the funds to redeem the property and are the real parties in interest. As proof

Petitioner's Motion to Substitute
Tammy Sprague, Brian Van Winkle,
and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 1 of 3

of that transfer, Petitioner attaches the Assignment of Right of Redemption as **Exhibit A** to this Motion.

2.    Pursuant to Rule 1-025(C) NMRA, Tammy Sprague, Brian Van Winkle, and Haley Van Winkle are proper parties to this suit and should be substituted as petitioners in this matter in the place of Tammy Sprague in her capacity as personal representative of the estate of Fred Van Winkle.

3.    No delay in this action will occur as a result of the substitution of Tammy Sprague, Brian Van Winkle, and Haley Van Winkle as petitioners.

4.    Opposing counsel does not concur with this motion.

**WHEREFORE,** Petitioner requests that the Court substitute Tammy Sprague, in her individual capacity, Brian Van Winkle, and Haley Van Winkle as petitioners in this matter.

Respectfully submitted,

**LAW OFFICE OF KYLE H. MOBERLY, P. C.**

By:    */s/ Kyle H. Moberly*
Kyle H. Moberly
State Bar # 245
Attorney for Petitioner
2460 S. Locust Ste. E
Las Cruces, NM 88001
(575) 541-1278

Petitioner's Motion to Substitute
Tammy Sprague, Brian Van Winkle,
and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 2 of 3

Case 20-01022-t    Doc 16-4    Filed 10/30/20    Entered 10/30/20 16:21:45 Page 24 of 28

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2018, the foregoing Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners was filed electronically through the Odyssey File & Serve/Tyler Technology system, which caused Plaintiffs' counsel of record to be served by electronic means.

*/s/ Kyle H. Moberly*
KYLE H. MOBERLY

Petitioner's Motion to Substitute
Tammy Sprague, Brian Van Winkle,
and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 3 of 3

Case 20-01022-t   Doc 16-4   Filed 10/30/20   Entered 10/30/20 16:21:45 Page 25 of 28

e - R e c o r d e d 2 0 1 8 0 7 1 6 2  0 8 / 2 1 / 1 8  0 2 : 1 4 : 0 5  P M  O t e r o  C o u n t y

## *ASSIGNMENT OF RIGHT OF REDEMPTION*

Assignment by **TAMMY SPRAGUE** ("**Assignor**"), as personal representative of the estate of **Fred Van Winkle**, deceased, to **TAMMY SPRAGUE, BRIAN VAN WINKLE** and **HALEY VAN WINKLE**, who are Fred Van Winkle's heirs (collectively, the "**Assignees**").

WHEREAS, on April 20, 2015, Assignor filed a petition for redemption (the "**Petition**") of the following described real estate (the "**Property**") in Otero County, New Mexico, with the Twelfth Judicial District Court of the State of New Mexico (the "**Court**"), in Cause Number D-1215-CV-2010-01054, pursuant to NMSA 1978 Section 39-5-18 (2007):

> A tract of land in the Northeast Quarter (NE ¼) of Section 24, T15S, R9E, NMPM, Otero County, New Mexico, described metes and bounds as follows:
>
> Beginning at the East One—Quarter corner (E ¼) of Section 24 and going S 89°51'38" W along the East/West centerline of said Section 24, a distance of 1525.75 feet; Thence N 00°37'16" W, a distance of 858.92 feet; Thence S 89°50'08" E, a distance of 1531.80 feet; Thence S 00°13'11" E, a distance of 850.76 feet to the said place of beginning.
>
> And
>
> LOT 5, RANCH'S OF RIATA, OTERO COUNTY, NEW MEXICO, as shown on plat Book 65, Page 21, records of Otero County, New Mexico.
>
> And
>
> ANY ADDITIONAL LAND WITHIN THE RANCH'S OF RIATA LESS LOTS 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16
>
> including that certain well and all water rights appurtenant thereto which is located on the above-described property;

and

Assignment of Statutory Right of Redemption
from Estate of Fred Van Winkle to Tammy Sprague,
Brian Van Winkle and Haley Van Winkle

\\Worldox\e\Dox\CLIENT\0649\001\00015752.WPD

Page 1 of 3

# Exhibit A

WHEREAS, Assignor's right to redeem the Property arose from the judicial sale of the Property on July 8, 2014, pursuant to the Final Judgment Foreclosing Plaintiffs' Judgment Lien that the Court entered on May 22, 2014;

WHEREAS, on April 22, 2015, Assignor deposited the sum of $73,200.94 into the Court's registry to redeem the Property (the "**Funds**");

WHEREAS, Assignees provided the Funds to Assignor;

WHEREAS, since Assignees are the real parties in interest, they have requested that Assignor assign to them the estate's statutory right pursuant to NMSA 1978 Section 39-5-18 (2007), to redeem the Property, which Assignor is willing to do.

NOW, THEREFORE, Assignor hereby assigns the estate's statutory right pursuant to NMSA 1978 Section 39-5-18 (2007), to redeem the Property.

Assignor also hereby assigns to Assignees all of the estate's right, title and interest in and to the Funds.

Assignor also hereby assigns to Assignees all of the estate's right, title and interest in and to any claims that the estate may have against the purchaser of the Property for any waste or damage to the Property that has occurred since the purchaser purchased the Property at the judicial sale.

Assignor shall fully cooperate with Assignees in the execution and delivery of such other and further documents as may be reasonably required by Assignees to enforce the statutory right of redemption hereby assigned to them.

**TAMMY SPRAGUE**, as personal representative of the **Estate of Fred Van Winkle**, deceased

Assignment of Statutory Right of Redemption
from Estate of Fred Van Winkle to Tammy Sprague,
Brian Van Winkle and Haley Van Winkle

\\Worldox\e!Dex\CLIENT\0649\001\00015752.WPD

Page 2 of 3

STATE OF NEW MEXICO

COUNTY OF DOÑA ANA

    This instrument was acknowledged before me on August /7, 2018, by Tammy Sprague as personal representative of the estate of Fred Van Winkle, deceased.



Notary Public



Assignment of Statutory Right of Redemption
from Estate of Fred Van Winkle to Tammy Sprague,
Brian Van Winkle and Haley Van Winkle

\\Worldox\e\Dox\CLIENT\0649\001\00015752.WPD

Page 3 of 3

e-Recorded 20180716Z  08/21/18 02:14:05 PM Otero County