**Subject:** Sprague & Brian Van Winkle v. Belleview Valley, et al. --Adversary -- Pre-Trial Order & Other Matters
**Date:** Wednesday, November 4, 2020 at 3:25:47 PM Mountain Standard Time
**From:** Tom Martin
**To:** Joel Gaffney
**CC:** Carla Galloway

Mr. Gaffney:

The Scheduling Order Judge Thuma entered required you send me a draft of a Pre-Trial order on Monday, November 2, 2020. I did not get a draft on Monday or Tuesday. I have not received one today. Are you going to do one? It is my intent to provide a Pre-Trial order that reflects my input even if I have nothing from you. It is due you on Monday, November 9, 2020. Do you plan on doing a Pre-Trial? If not, let me know. At this point, I am considering some type of Motion for Sanctions if we can't get this properly dealt with.

In light of you never responding to the discovery and not providing you portion of the Pre-Trial, it appears there is no interest in pursuing this adversary. Will you agree to settlement of this by dismissing the adversary?


Tom Martin

-----

W. T. Martin, Jr.
Martin, Dugan & Martin
509 W. Pierce St.
P.O. Box 2168
Carlsbad, NM 88221-2168
(575) 887-3528
Fax (575) 887-2136
e-mail – martinlaw@zianet.com

# Martin, Dugan & Martin

**MARTIN**
**DUGAN &**
**MARTIN**

509 W. Pierce Street
P.O. Box 2168
Carlsbad, NM 88221-2168
Phone: (575) 887-3528
Fax: (575) 887-2136
E-mail: martinlaw@zianet.com

W. T. Martin, Jr.
Kenneth D. Dugan *
Lane T. Martin

(* Also licensed in Texas)

November 9, 2020

**E-MAILED**
joel@gaffneylaw.com

Joel Alan Gaffney
Gaffney Law, PC
6565 America's Parkway #200
Albuquerque, NM 87110

Re: Brian Van Winkle as P.R. & Tammy Sprague as P.R. v. Belleview Valley Land Co., et al.
Bankruptcy Adversary No 20-01022

Dear Mr. Gaffney:

In my previous e-mail of Wednesday November 4, 2020 to you, I stated:

> **The Scheduling Order Judge Thuma entered required you send me a draft of a Pre-Trial order on Monday, November 2, 2020. I did not get a draft on Monday or Tuesday. I have not received one today. Are you going to do one? It is my intent to provide a Pre-Trial order that reflects my input even if I have nothing from you. It is due you on Monday, November 9, 2020. Do you plan on doing a Pre-Trial? If not, let me know. At this point, I am considering some type of Motion for Sanctions if we can't get this properly dealt with.**
>
> **In light of you never responding to the discovery and not providing your portion of the Pre-Trial, it appears there is no interest in pursuing this adversary. Will you agree to settlement of this by dismissing the adversary?**

In light of you not sending your portion of the Pre-Trial Order as required by the Court, I have prepared my portion. I am sending it to you as per Court Order. We have until Friday, November 13, 2020 to send an Agreed Pre-Trial Order to the Court. I am still willing to work out an Order.

EXHIBIT "B"

If you intend to provide your portion, please do so right away so I can review and we can get the Order ready for submission on Friday. If I don't hear from you, I will send in the Order with my entries in the form of Order that I have sent you today.

**You are not authorized to complete your portion of the Pre-Trial Order and submit any part of my submission without my approval.**

Yours very truly,

**Martin, Dugan & Martin**

W. T. Martin, Jr.

WTM/id

```
6500797400                                                                      P.01/01

TRANSACTION REPORT
                                            NOV/11/2020/WED 01:58 PM
FAX(TX)
 #  | DATE  | START T. | RECEIVER     | COM.TIME | PAGE | TYPE/NOTE   | FILE
 001| NOV/11| 01:43PM  | 15052130629  | 0:15:12  | 37   | MEMORY   OK | G3 4730
```



# Martin, Dugan & Martin

509 W. Pierce St.  
P.O. Box 2168  
Carlsbad, NM 88221-2168  
(575) 887-3528  
Fax (575) 887-2136

W. T. Martin, Jr. *  
Kenneth D. Dugan ⁑  
Lane T. Martin  
(* Also licensed in Texas)

## FACSIMILE TRANSMISSION

DATE: NOVEMBER 11, 2020

TO: JOEL GAFFNEY

FAX NO.: 505 213-0629

NO. OF PAGES, INCLUDING COVER PAGE: 37

FROM: W.T. Martin, Jr.

FILE: SPRAGUE & VAN WINKLE v BELLEVIEW/WILLIAMS

ATTACHED PLEASE FIND MR. MARTIN'S LETTER DATED 11/9/20 AND THE PRETRIAL ORDER. MAY WE PLEASE HEAR FROM YOU TODAY. THANK YOU!!

Please call Carla at (575) 887-3528 if the transmission is unclear or pages are missing.

I do hereby certify that I have completed the transmission set forth above.

By: _____  
CARLA GALLOWAY

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the receiver of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. THANK YOU.

FILED
12th JUDICIAL DISTRICT COURT
Otero County
8/12/2019 8:49 AM
KATINA WATSON
CLERK OF THE COURT
Serena Counts

TWELFTH JUDICIAL DISTRICT COURT
COUNTY OF OTERO
STATE OF NEW MEXICO

BELLEVIEW VALLEY LAND CO, a New Mexico )
corporation, and John Williams and ELLEN B. )
WILLIAMS, husband and wife, )
)
                      Plaintiffs, )   No. CV-2010-1054
)
vs. )
)
TAMMY SPRAGUE, PERSONAL )
REPRESENTATIVE OF THE )
ESTATE OF FRED VAN WINKLE, deceased, )

                      Defendant.

**ORDER ON PLAINTIFFS' AMENDED MOTION TO DISTRIBUTE REDEMPTION SUMS AND ENTER FINAL JUDGMENT**

CAME ON to be heard the *Plaintiffs' Amended Motion To Distribute Redemption Sums and Enter Final Judgment* (the "*Motion*") filed by Belleview Valley Land Co. ("BVL"), John Williams and Ellen B. Williams (collectively "*Plaintiffs*"). The parties were represented by counsel in the hearing on August 9, 2019. Plaintiffs appeared through counsel, Kenneth Dugan. Defendants appeared through counsel, Kyle Moberly. The Court having heard arguments of counsel and being otherwise fully advised, finds that the Motion should be and hereby is GRANTED for the reasons stated in the Motion.

The Court finds the following:

1. On May 22, 2014, this Court entered a Final Judgment Foreclosing Plaintiff's Judgment Lien on the concerned property at issue described in Exhibit A hereto (the "Property").

2. Defendant subsequently redeemed the Property at issue by filing a petition and depositing the stated sums. NMSA 1978, Section 39-5-18(A)(2)(2007). Accordingly, Defendant was entitled to a hearing and issuance of a certificate of redemption under such terms as this Court deems just, including payment of all remaining owing sums. NMSA 1978, Section 39-5-18(C)(2007).

3. By Order entered on July 19, 2019, this Court ordered Defendant to elect within ten (10) days whether Defendant desired to proceed to hearing on issuance of the certificate of redemption or to withdraw the request for issuance of redemption. That order expressly provided failure by Defendant to so elect within the required timeframe would deem Defendant to have elected withdrawal of the request for issuance of a certificate of redemption.

1

4. Defendant did not timely file the required election. Accordingly, Defendant is deemed to have elected withdrawal of the request for issuance of a certificate of redemption.

5. By election, Defendant forfeited and/or waived the right to issuance of the certificate of redemption and to re-acquire legal title to the real property at issue pursuant to the redemption.

6. Defendant irrevocably deposited $73,200.94 (the "Deposited Funds") into the registry of the court pursuant to Court Order dated April 21, 2015.

7. The Estate waived any title or interest in the Deposited Funds when it procured a Court Order authorizing deposit and then tendered the Deposited Funds into the court registry without condition.

8. The Plaintiffs are entitled to receive the Deposited Funds, $73,200.94, plus the interest earned.

9. With interest, the amount of the Deposited Funds is $73,454.37, as of August 1, 2019.

10. By Order dated July 28, 2014, the Court previously reduced the amount of the *in rem* Deficiency Judgment from $338,905.61 to $271,905.61, accounting for the $67,000.00 bid by the purchasers at the foreclosure sale of the Property.

11. In fact, pursuant to this Order, Plaintiffs are now receiving $73,454.37, instead of $67,000.00. Accordingly, the deficiency judgment should be reduced to $265,451.24, to account for the excess amount in the Deposited Funds above the bid amount and interest (i.e., $6,454.37).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court:

2

A. Plaintiff's Motion is Granted for the reasons stated therein.

B. Judgment is hereby entered granting Plaintiffs John and Ellen Williams legal title, equitable title and possession of the Property pursuant to the Special Master Deed executed on July 8, 2014 and recorded in Otero County on July 25, 2014, free and clear of any claims of Defendant in redemption or otherwise.

C. The Clerk is hereby ordered to disburse to Plaintiffs John H. Williams and Ellen B. Williams the Deposited Sums ($73,200.94), together with any interest, if any, that was earned on the funds since deposit.

D. Plaintiffs are hereby granted a continuing *in rem* Deficiency Judgment against Defendant in the amount of $265,451.24, which shall continue to accrue interest at the rate of 8.75% per annum calculated from July 28, 2014 until paid in full, as previously authorized in the *Final Judgment Foreclosing Plaintiffs' Judgment Lien* entered on May 22, 2014. [NOTE: This judgment is *in rem* only].

E. This is a Final Judgment.

_____
Honorable Judge James Waylon Counts

Approved as to form:


_____        _____
W.T. Martin, Jr., counsel for Plaintiffs        Kyle Moberly, counsel for Defendant

3

MICHELLE LUJAN GRISHAM
GOVERNOR

NEW MEXICO
**DEPARTMENT OF**
**HEALTH**

BILLY J. JIMENEZ
ACTING CABINET SECRETARY

# PUBLIC HEALTH ORDER
## NEW MEXICO DEPARTMENT OF HEALTH
## ACTING SECRETARY BILLY J. JIMENEZ

### NOVEMBER 13, 2020

**Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending Prior Public Health Emergency Orders to Provide Additional Temporary Restrictions Due to COVID-19**

### PREFACE

The purpose of this amended Public Health Emergency Order is to amend restrictions on mass gatherings and business operations, which were implemented in response to the spread of the Novel Coronavirus Disease 2019 ("COVID-19"). Continued social distancing and self-isolation measures are necessary to protect public health given the devastating effects that are now resulting from the rapid increase in COVID-19 cases in New Mexico. It remains the core purpose of this Order to emphasize that **all New Mexicans should be staying in their homes for all but the most essential activities and services.** This is especially true now, when this State is experiencing an unprecedented surge in new cases and hospitals are approaching or exceeding their capacity. When New Mexicans are not in their homes, they must strictly adhere to social distancing protocols and wear face coverings to minimize risks. These sacrifices are the best contribution that each of us can individually make to protect the health and wellbeing of our fellow citizens and the State as a whole. In accordance with these purposes, this Order and its exceptions should be narrowly construed to encourage New Mexicans to stay in their homes for all but the most essential activities.

It is hereby **ORDERED** that:

1. All current guidance documents and advisories issued by the Department of Health remain in effect.

2. The following Public Health Emergency Orders remain in effect through the current Public Health Emergency and any subsequent renewals of that Public Health Emergency or until they are amended of rescinded:

    A. March 13, 2020 Public Health Emergency Order to Temporarily Limit Nursing Home Visitation Due to COVID-19;

    B. April 30, 2020 Public Health Emergency Order Modifying Temporary Restrictions on Non-Essential Health Care Services, Procedures, and Surgeries; and

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org

C.   March 24, 2020 Public Health Emergency Order Temporarily Regulating the Sale and Distribution of Personal Protective Equipment Due to Shortages Caused by COVID-19.

3.   The November 5, 2020 Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending Prior Public Health Emergency Orders Limiting Businesses and Non-Profit Entities' Operations and Providing Additional Restrictions on Mass Gatherings Due to COVID-19 is hereby amended as follows:

## ORDER

**WHEREAS,** on March 11, 2020, because of the spread of the novel Coronavirus Disease 2019 ("COVID-19"), Michelle Lujan Grisham, the Governor of the State of New Mexico, declared that a Public Health Emergency exists in New Mexico under the Public Health Emergency Response Act, and invoked her authority under the All Hazards Emergency Management Act;

**WHEREAS,** Governor Michelle Lujan Grisham has renewed the declaration of a Public Health Emergency through December 11, 2020;

**WHEREAS,** confirmed cases in the United States have risen to more than 10.3 million and confirmed COVID-19 infections in New Mexico have risen to over 60,000, with significant recent spikes in cases in New Mexico threatening to overwhelm our hospitals;

**WHEREAS,** COVID-19 is a deadly virus and has taken the lives of over 220,000 Americans and over 1,100 New Mexicans;

**WHEREAS,** the further spread of COVID-19 in the State of New Mexico poses a threat to the health, safety, wellbeing and property of the residents in the State due to, among other things, illness from COVID-19, illness-related absenteeism from employment (particularly among public safety and law enforcement personnel and persons engaged in activities and businesses critical to the economy and infrastructure of the State), potential displacement of persons, and closures of schools or other places of public gathering;

**WHEREAS,** social distancing and the consistent and proper use of face coverings in public spaces are the most effective ways New Mexicans can minimize the spread of COVID-19 and mitigate the potentially devastating impact of this pandemic in New Mexico; and

**WHEREAS,** the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -19, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government, to preserve and promote public health and safety, to adopt isolation and quarantine, and to close public places and forbid gatherings of people when deemed necessary by the Department for the protection of public health.

**NOW, THEREFORE, I,** Billy J. Jimenez, Acting Cabinet Secretary of the New Mexico Department of Health, in accordance with the authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of her emergency powers under the All Hazard Emergency Management Act, do hereby declare the current outbreak of COVID-19 a condition of public health importance, as defined in NMSA 1978, Section 24-1-2(A) as an infection, a disease, a syndrome, a symptom, an injury or other threat that is identifiable on an individual or community level and can reasonably be expected to lead to adverse health effects in the community, and that poses an imminent threat of substantial harm to the population of New Mexico.

**DEFINITIONS**

As used in this Order, the following terms shall have the meaning given to them, except where the context clearly requires otherwise:

(1) "Essential businesses" means any business or non-profit entity falling within one or more of the following categories:

    a. Health care operations including hospitals, walk-in-care health facilities, pharmacies, medical wholesale and distribution, home health care workers or aides for the elderly, emergency dental facilities, nursing homes, residential health care facilities, research facilities, congregate care facilities, intermediate care facilities for those with intellectual or developmental disabilities, supportive living homes, home health care providers, drug and alcohol recovery support services, and medical supplies and equipment manufacturers and providers;

    b. Homeless shelters, food banks, and other services providing care to indigent or needy populations;

    c. Childcare facilities;

    d. Grocery stores, supermarkets, food banks, farmers' markets and vendors who sell food, convenience stores, and other businesses that generate the majority of their revenue from the sale of canned food, dry goods, fresh fruits and vegetables, pet food, animal feed or supplies, fresh meats, fish, and poultry, and any other consumable household products;

    e. Farms, ranches, and other food cultivation, processing, or packaging operations;

    f. Infrastructure operations including, but not limited to, public works construction, commercial and residential construction and maintenance, self-storage facilities, airport operations, public transportation, airlines, taxis, private transportation providers, transportation network companies, water, gas, electrical, oil drilling, oil refining, natural resources extraction or mining operations, nuclear material research and enrichment, those attendant to the repair and construction of roads and highways, gas

stations, solid waste collection and removal, trash and recycling collection, processing and disposal, sewer, data and internet providers, data centers, technology support operations, and telecommunications systems;

g. Manufacturing operations involved in food processing, manufacturing agents, chemicals, fertilizer, pharmaceuticals, sanitary products, household paper products, microelectronics/semi-conductor, primary metals manufacturers, electrical equipment, appliance, and component manufacturers, and transportation equipment manufacturers;

h. Services necessary to maintain the safety and sanitation of residences or essential businesses including security services, towing services, custodial services, plumbers, electricians, and other skilled trades;

i. Veterinary and livestock services, animal shelters and facilities providing pet adoption, daycare, or boarding services;

j. Media services;

k. Automobile repair facilities, bike repair facilities, and retailers who generate the majority of their revenue from the sale of automobile or bike repair products;

l. Utilities, including their contractors, suppliers, and supportive operations, engaged in power generation, fuel supply and transmission, water and wastewater supply;

m. Hardware stores, "big box" stores, and other large retailers;

n. Laundromats and dry cleaner services;

o. Crematoriums, funeral homes, and cemeteries;

p. Banks, credit unions, insurance providers, payroll services, brokerage services, and investment management firms;

q. Businesses providing mailing and shipping services;

r. Laboratories and defense and national security-related operations supporting the United States government, a contractor to the United States government, or any federal entity;

s. Professional services, such as legal or accounting services, but only where necessary to assist in compliance with legally mandated activities; and

t. Logistics and other businesses that store, transport, or deliver groceries, food, materials, goods or services directly to residences, retailers, government institutions, or essential businesses.

(2) "Close-contact businesses" include barbershops, hair salons, gyms, group fitness classes, tattoo parlors, nail salons, spas, massage parlors, esthetician clinics, tanning salons, guided raft tours, guided balloon tours, bowling alleys, ice skating rinks, and personal training services.

(3) "Food and drink establishments" include restaurants, breweries, wineries, distillers, cafes, coffee shops, or other similar establishments that offer food or drink. For purposes of this section, "breweries" are those businesses licensed pursuant to NMSA 1978, Section 60-6A-26.1; "distillers" are those businesses licensed pursuant to NMSA 1978, Section 60-6A-1; and "wineries" are those businesses licensed pursuant to NMSA 1978, Section 60-A-11.

(4) "Houses of worship" means any church, synagogue, mosque, or other gathering space where persons congregate to exercise their religious beliefs.

(5) "Close-contact recreational facilities" include indoor movie theaters, indoor museums with interactive displays or exhibits and other similar venues, miniature golf, arcades, amusement parks, aquariums, casinos, concert venues, professional sports venues, event venues, bars, dance clubs, performance venues, go-kart courses, automobile racetracks, adult entertainment venues, and other places of recreation or entertainment. For purposes of this section, a "bar" is defined as any business that generated more than half of its revenue from the sale of alcohol during the preceding fiscal year.

(6) "Outdoor recreational facilities" include outdoor golf courses, public swimming pools, outdoor tennis courts, ski basins, youth programs, youth livestock shows, u-pick produce operations and corn mazes, horseracing tracks, botanical gardens, outdoor zoos, and New Mexico state parks.

(7) "Places of lodging" means hotels, motels, RV parks, and short-term vacation rentals.

(8) "Retail space" means any business identified in the categories above: 1(d), (1)k, (1)m, and (1)n.

(9) "Mass gathering" means any public gathering, private gathering, organized event, ceremony, parade, funeral, or any other grouping that brings together more than five (5) individuals in a single room or connected space, confined outdoor space, or open outdoor space. "Mass gatherings" also includes coordinated events in which individuals gather in ten (10) or more vehicles. "Mass gathering" does not include the presence more than five (5) individuals where those individuals regularly reside. "Mass gathering" does not include individuals who are public officials or public employees in the course and scope of their employment.

(10) "COVID-Safe Practices" ("CSP's") are those directives, guidelines, and recommendations for businesses and other public operations that are set out and memorialized in the document titled "All Together New Mexico: COVID-Safe Practices for Individuals and Employers." This document may be obtained at the following link: https://cv.nmhealth.org/covid-safe-practices/.

**DIRECTIONS**

Beginning November 13, 2020, **I DIRECT** as follows:

The provisions and restrictions of the November 5, 2020 Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending Prior Public Health Emergency Orders Limiting Businesses and Non-Profit Entities' Operations and Providing Additional Restrictions on Mass Gatherings Due to COVID-19 shall remain in effect until November 16, 2020.

Beginning November 16, 2020, **I DIRECT** as follows:

(1) Except as provided elsewhere in this Order, all "mass gatherings" are prohibited.

(2) "Houses of worship" may hold religious services, indoors or outdoors, or provide services through audiovisual means, but may not be used as a venue for non-religious events. "Houses of worship" may not exceed the lesser of 25% of its maximum occupancy, as determined by the relevant fire marshal or fire department, or 75 individuals at any given time.

(3) All businesses and non-profit entities, except those entities defined as "essential businesses," must reduce the in-person workforce at each business or business location by 100%. "Essential businesses" may remain open, provided they minimize their operations and staff to the greatest extent possible. Further, all "essential businesses" shall comply with the pertinent "COVID-Safe Practices (CSP's)" section(s) of the "All Together New Mexico: COVID-Safe Practices for Individuals and Employers" and any identified occupancy restrictions. "Essential businesses" identified as a "retail space" must close by 10:00 p.m. and must remain closed until at least 4:00 a.m. Further, "essential businesses" identified as a "retail space" may not exceed the lesser of either 25% of its maximum occupancy, as determined by the relevant fire marshal or fire department, or 75 customers in the business space at any given time. Further, "essential businesses" identified as a "retail space" may not allow a person who is without a mask or multilayer cloth face covering to enter the premises except where that person is in possession of a written exemption from a healthcare provider.

(4) "Food and drink establishments" may not provide any indoor or outdoor dine-in service but may provide carryout service or delivery service, if otherwise permitted by law.

(5) This Order requires the closure of physical office spaces, retail spaces, or other public spaces of a business but does not otherwise restrict the conduct of business operations through telecommuting or otherwise working from home in which an employee only interacts with clients or customers remotely. Businesses that are not "essential businesses" may operate to the minimum extent necessary to provide curbside pickup and/or delivery services to customers but only if they are legally permitted to provide their services through pickup and/or delivery.

(6) "Places of lodging" which have completed the NM Safe Certified training offered at https://nmsafecertified.org may operate up to 25% of maximum occupancy. All other "places of lodging" must close to the extent not being utilized for the purposes of housing healthcare

6

providers who are engaged in the provision of care to New Mexico residents, individuals for extended stays as temporary housing, or individuals who are quarantining. The foregoing groups of individuals shall not be counted for purposes of determining maximum occupancy for "places of lodging."

(7) This Order does not limit animal shelters, zoos, and other facilities with animal care operations from performing tasks that ensure the health and welfare of animals. Those tasks should be performed with the minimum number of employees necessary, for the minimum amount of time necessary, and with strict adherence to all social distancing protocols.

(8) All outdoor recreational facilities must close.

(9) All state-run museums must remain closed.

(10) All indoor malls must close, except that individual "essential businesses" with separate outdoor entrances may continue to operate to the extent otherwise permitted by this Order.

(11) Private educational institutions serving children and young adults from pre-Kindergarten through 12th Grade, including homeschools serving children who are not household members, shall adhere to the face covering and other COVID-Safe Practices requirements for in-person instruction described in the document "Reentry Guidance" published by New Mexico's Public Education Department on June 20, 2020 and as updated from time to time thereafter, and shall operate with a maximum occupancy of 25% of any individual enclosed indoor space, such as any classroom, as determined by the relevant fire marshal or fire department, with the occupancy restriction herein to govern in the event of any discrepancy with the "Reentry Guidance."

(12) Any "food and drink establishment," "place of lodging," "retail space," or "essential business" (other than those which meet the definition of a healthcare operation, utility, or media service) in which members of the public regularly visit, must immediately close for a period of fourteen (14) days following the occurrence of four (4) or more rapid responses within a fourteen (14) day period. For purposes of this directive, rapid responses will be counted on a rolling basis. Notwithstanding this provision, an "essential business" may be permitted to continue operating if the Department of Health, after consultation with the Environment Department, determines that the business is a necessary provider of goods or services within the community in light of geographic considerations.

(13) Unless a healthcare provider instructs otherwise, all individuals shall wear a mask or multilayer cloth face covering in public settings except when eating or drinking. Masks with vents do not satisfy this requirement.

(14) All public and private employers are required to comply with this Order and any instructions provided by State departments or agencies regarding COVID-19.

(15) In order to minimize the shortage of health care supplies and other necessary goods, "retail spaces" shall limit the sale of medications, durable medical equipment, baby formula, diapers, sanitary care products, and hygiene products to three items per individual.

**I FURTHER DIRECT** as follows:

(1) This Order shall be broadly disseminated in English, Spanish and other appropriate languages to the citizens of the State of New Mexico.

(2) This Order declaring restrictions based upon the existence of a condition of public health importance shall not abrogate any disease-reporting requirements set forth in the New Mexico Public Health Act.

(3) Nothing in this Order is intended to restrain or preempt local authorities from enacting more stringent restrictions than those required by the Order.

(4) This Order shall take effect on November 13, 2020 and remain in effect through November 30, 2020.

(5) The New Mexico Department of Health, the New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(6) Any and all State officials authorized by the Department of Health may enforce this Order by issuing a citation of violation, which may result in civil administrative penalties of up to $5,000 for each violation under NMSA 1978, Section 12-10A-19.

**I FURTHER ADVISE the public to take the following preventive precautions:**

- <u>New Mexico citizens should stay at home and undertake only those outings absolutely necessary for their health, safety, or welfare.</u>
- Retailers should take appropriate action consistent with this order to reduce hoarding and ensure that all New Mexicans can purchase necessary goods.
- Avoid crowds.
- Avoid all non-essential travel including plane trips and cruise ships.

ATTEST:

*Maggie Toulouse Oliver* (signature)
MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 13TH DAY OF NOVEMBER 2020

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

BILLY J. JIMENEZ
ACTING CABINET SECRETARY OF THE STATE OF NEW MEXICO DEPARTMENT OF HEALTH

8