# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Fred Dale Van Winkle**, | ) | Case No. 13-11743-t7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **Brian Van Winkle**, not in his personal capacity but solely as co–personal representative of the estate of Fred Van Winkle, and **Tammy Sprague**, not in her personal capacity but solely as co–personal representative of the estate of Fred Van Winkle, | ) | Adv. No. 20-01022 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **Belleview Valley Land Co.**, a New Mexico corporation, **John H. Williams**, and **Ellen B. Williams**, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS IN ORDER ENTERED JANUARY 22, 2021

**COME NOW** Defendants, **Belleview Valley Land Co.,** a New Mexico corporation (*hereinafter referred to as "Belleview"*), **John H. Williams** and **Ellen B. Williams** (*the Williams are hereinafter jointly referred in the singular to as "Williams"*)(*Williams and Belleview are jointly referred to as "Defendants"*) by and through their attorney, W. T. Martin, Jr., of Martin, Dugan & Martin, and respond the ***Order and Notice of Hearing*** entered by this Court on January 22, 2021 (Doc. 31). In the ***Order and Notice of Hearing***, this Court posed a series of questions that it wanted addressed at a hearing set for February 8, 2021 at 10:30 a.m. In furtherance of the hearing and in support of the oral argument that is to occur on February 8, 2021, Defendants present written responses to the questions

**Question No. 2a: Which entity attempted to redeem the subject Otero County, New Mexico property (the "Property") on or about April 20, 2015: Tammy Sprague, the probate estate of Fred Van Winkle, the bankruptcy estate, or someone else?**

Answer: The ***Petition for Redemption*** was filed on April 20, 2015 in Otero County Cause number D-1215-CV-2010-0105 by Tammy Sprague, Personal Representative of the Estate of Fred Dale Van Winkle, deceased. (Mot. For Summary Judgment Exhibit #6). The Redemption Funds to redeem or "purchase back" the real property from John and Ellen Williams, the foreclosure sale buyers, was deposited with the Otero County District Court and accepted by the Otero County District Court on April 21, 2015. (Mot. For Summary Judgment Exhibit #7). This all occurred after:

    a. The ***Order Lifting Stay as to Debtor's Otero County Property*** entered on December 4, 2013. (Doc. 33). (Mot. For Summary Judgment Exhibit #3)

1

b. The *Order Abandoning Assets Pursuant to 11 U.S.C. §554* entered on April 15, 2015. (Doc. 68). (Mot. For Summary Judgment Exhibit #5)

The Estate of Fred Van Winkle did not have the money to redeem the Otero County property. It only had about $1,200.00. (Mot. For Summary Judgment Exhibit #12, RFA 15 Pge. 3 of *Petitioner's Amended Reply to Plaintiffs' Response to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners* filed September 28, 2018 in the Otero County redemption matter. No D-1215-CV-2010-01054 ) [Also see Tammy Sprague's deposition of April 10, 2017 at page 38, lines 7-11, which is part of Mot. For Summary Judgment Exhibit #12, RFA 15)

The source of the Redemption Funds deposited into, and accepted by, the Court were funds borrowed by the heirs of Fred Van Winkle, not the Estate of Fred Van Winkle. (Mot. For Summary Judgment Exhibit #12, RFA 15 Pge. 3 of *Petitioner's Amended Reply to Plaintiffs' Response to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners* filed September 28, 2018 in the Otero County redemption matter. No D-1215-CV-2010-01054 ) [Also see Tammy Sprague's deposition of April 10, 2017 at page 33, lines 9-33 and 20-24, which is part of Mot. For Summary Judgment Exhibit #12, RFA 15)

**Question No. 2b: Is the probate estate of Fred Van Winkle a different entity than the Debtor, such that the attempted redemption, if successful, would have been done by a third party rather than the judgment debtor?**

Answer:   In the context of this case, the probate estate of Fred Van Winkle is different than the bankruptcy estate. In this case, the redemption funds were never

2

assets of the Debtor bankruptcy estate. The Debtor's estate did not have the funds to redeem. The redemption was accomplished by use of borrowed funds borrowed by others. Under New Mexico law, the redemption is complete with the filing of the Petition and the Redemption Funds to redeem or "purchase back" the real property being deposited and accepted by the Court. **NMSA §39-5-18** The New Mexico Court of Appeals has recently ruled that:

> ... the right of redemption may be exercised by either: (1) paying to the foreclosure sale purchaser the purchase price of the real property, plus statutory interest and taxes; or (2) by filing a petition for redemption in the district court and depositing the foreclosure purchase price plus statutory interest and taxes in the court registry. ... By whichever means property is redeemed, the right of redemption must be exercised timely within the redemption period, .... **The statute does not require any further action for a party to redeem.** [emphasis added]

The right of redemption is asserted by tendering a sum (redemption funds) calculated to the date of the tender, even if the trial court handling the redemption subsequently determines that additional sums are due. **W. Bank of Las Cruces v. Malooly**, 1995-NMCA-044, ¶ 28, 119 N.M. 743, 750, 895 P.2d 265, 272

Any subsequent hearing relates to determination if additional sums are due and issuance of the *Certificate of Redemption*. The redemption funds go to pay the purchasers the purchase price they paid for the property at the Special Master's Sale. (This is not a collection action by the purchasers of the property at the Special Master's Sale, rather it is the purchase price paid for the property by the party redeeming.) The redeemed property is then, as a matter of law, encumbered by the deficiency judgement lien and subject to foreclosure for the deficiency judgment on the *Final Judgment* that was taken and transcribed pre-petition.

3

Again, all this occurred post abandonment of the Otero County property and post abandonment of the redemption right. The voluntary actions all took place post abandonment of the Otero County property and post abandonment of the redemption right and do not result in a violation of the discharge injunction.

**Question 2c: After title to the Property passed to John and Ellen Williams on or about July 28, 2014, did it ever pass to Fred Van Winkle's probate estate? In particular, what was the status of title when the Court entered on June 30, 2015, in Adv. Pro. No. 15-1047, the Stipulated Order Staying State Court Litigation Pending This Court Addressing Adversary Complaint (doc. 7)?**

Answer: After foreclosure, there was a Special Master's Sale. John and Ellen Williams were the successful bidders. Title vested in John and Ellen Williams. This was on July 28, 2014. The amount John and Ellen Williams bid in at the Special Master's Sale went to reduce or was credited against the amount of the judgment. When the Redemption Petition was filed and Redemption Funds were tendered to, and accepted by, the Otero County District on April 21, 2015, the redemption was completed. Title to the property passed to the redemptor on April 21, 2015, subject to the **Deficiency Judgment**, which is a lien against the redeemed property. The Redemption Funds were the purchase price paid by the redemptor to obtain the real property from John and Ellen Williams. The Redemption Funds reimbursed John and Ellen Williams what they paid at the Special Master's Sale. The Redemption Funds are not credited against the judgment, they are a reimbursement to the purchaser of the purchase price paid at, or bid in, at the Special Master's Sale. Once the redemption occurred with title passing to the redemptor, the **Deficiency**

4

***Judgment*** lien attached to the property subjecting it to foreclosure for the unpaid ***Deficiency Judgment***. The ***Deficiency Judgment*** is a reduction of the original judgment as a result of the credit for the amount John and Ellen Williams paid for title to property at the Special Master's Sale.

John and Ellen Williams were the purchasers at the Special Master's Sale. At that point, title to the property vested in John and Ellen Williams. There was a ***Deficiency Judgment*** that was entered by the Otero County District Court that credited the sale price to the original judgment. The ***Deficiency Judgment***, itself, is a lien. [See: **Chapel v. Nevitt, 2009-NMCA-017, ¶ 35, 145 N.M. 674, 685, 203 P.3d 889, 900 which** holds that:

> "...a deficiency judgment is not a "prior lien or mortgage not foreclosed, paid by the purchaser" within the contemplation of Section 39–5–18(A)(1), such that it can be included in the redemption amount. Instead, where there is an outstanding deficiency judgment after a foreclosure sale, the deficiency judgment becomes a "lien on the debtor's real estate." *Constr. Eng'g & Mfg. Co.,* 91 N.M at 240, 572 P.2d at 1248. When the debtor "redeems foreclosed property, [the property] again becomes part of his real estate and [is] thus subject to the judgment lien and foreclosure." *Id.* Following redemption, "[a] foreclosure suit would then be the proper remedy to effect payment of the amount of the deficiency."]

The ***Deficiency Judgment*** is the reduced version of the original judgment credited by the amount paid at the Special Master's Sale.

When Tammy Sprague filed the Redemption Petition and the Redemption Funds were tendered to, and accepted by, the Otero County District, the redemption was completed. The Redemption Funds were payment for the acquisition of the property. Title passed, but the property was immediately subjected to the ***Judgment*** lien which was reduced by the price John and Ellen Williams paid at the Special Master's Sale.

5

The summarization of the title is as follows:

a. John and Ellen Williams purchased the Otero County property at the Special Master's sale. They had title.

b. A ***Deficiency Judgment*** was entered by the Court which became a lien that is the reduction from the original amount of the judgment lien based on what was bid in at the Special Master's Sale.

c. When the Petition for Redemption filed and the Redemption Proceeds were paid and accepted by the Court, the real property was redeemed with the Redemption Proceeds going toward paying John and Ellen Williams what they had paid at the Special Master's Sale.

d. With the redemption, the deficiency judgment lien which is the reduced amount of the original judgment lien amount, which was pre-petition, automatically and immediately, attached to the Otero County property with it being subjected to foreclosure. [ **Chapel v. Nevit**, *id.* explains the process.]

When ***Stipulated Order Staying State Court Litigation*** was entered:

a. The redemption had occurred and the reduced ***Deficiency Judgment*** lien had attached against the property with the redeemed property was subject to foreclosure. [The BAP recognized such in its decision finding the foreclosure did not violate the bankruptcy discharge injunction.]

**Question 2d: Did the judgment creditors' judgment lien ever attach or re-attach to the Property after the July 8, 2014, special master's sale?**

Answer: Yes. See **Chapel v. Nevitt**, 2009-NMCA-017, ¶ 35, 145 N.M. 674, 685, 203 P.3d 889, 900 and the BAP's decision in the adversary decision on Adv. Pro. No. 15-1047. Also see the analysis in the Answer to Question 2c.

**Question 2e: Did the judgment lien ever attach to the $73,200.94 tendered to the state court by Ms. Sprague as personal representative of the estate of Fred Van Winkle (the "Redemption Funds")? If so, please explain how the judgment lien came to attach to personal property.**

Answer: No. When the Petition for Redemption was filed and the Redemption Proceeds were paid and accepted by the Court, the real property was redeemed with the Redemption Proceeds going to repay John and Ellen Williams the amount that they had bid in at the Special Master's Sale. When the redemption funds were deposited with the Otero County District Court and accepted by the District Court. The Otero County District Court ruled that the probate estate "irrevocably" deposited the Funds into the Court's registry and "waived any title or interest in the Deposited Funds." The redemption funds were in effect the purchase price to be paid John and Ellen Williams to redeem the property. The Otero County District Court ruled the purchasers at the foreclosure sale have an absolute right to the redemption funds. (Mot. For Summary Judgment Exhibit #12).

Once the Sprague paid the redemption funds, she has done so at her own peril. **First State Bank of Taos v. Wheatcroft**, 1931-NMSC-047, ¶¶13, 18, 36 N.M. 88 "[O]ne who makes a voluntary payment to another has no right of restitution. **Cheesecake Factory, Inc. v. Baines**, 1998-NMCA-120, ¶6, 125 N.M. 622 Once redemption funds are tendered to, and accepted by, the Court, title and control of

7

the funds is with the Court, not the party depositing the funds. Monies tendered into the registry of the court "pass irrevocably to his adversary." **Weinchel v. Adamic, 125 Colo. 235, 242 P.2d 219 (1952)** "[N]ot only does the party paying it into court lose all right to it, but the court itself has no power to make an order in the same action, which, in effect, retransfers the title." **Mann v. Sprout**, 185 N.Y. 109. 77 N.E. 1018, 1019 (N.Y. C. App. 1906).

It is clear that bankruptcy estate funds were not utilized in the voluntary filing of the redemption petition and the voluntary depositing of redemption funds.

Nothing changes the fact that the redemption and depositing of the redemption funds occurred after the abandonment of the property and Tammy Sprague, as Personal Representative of the Estate, voluntarily sought and obtained the Trustee's abandonment of the right of redemption. The actions by Tammy Sprague, as Personal Representative of the Estate were all voluntary.

**Question 2f: If not, did the judgment creditors' attempt to get the Redemption Funds out of the state court registry and apply them to their deficiency judgment against Debtor constitute "an act to collect, recover or offset any such debt as a personal liability of the debtor"?** *See* **11 U.S.C. § 524(a)(2).**

Answer: No. The question mischaracterizes the process. The Redemption Funds were irrevocably turned over to the Otero County District Court for the purpose of paying John and Ellen Williams the amount they had bid in at Special Master's sale, which had been applied to reduce the judgment debt. Title to the Redemption Funds had passed to the Court with them being the payment for the redemption of the Otero County property. The Otero County District Court awarding the redemption

8

funds to John and Ellen Williams was not an action to collect, recover or offset a debt that was a personal liability of the Debtor. It was payment for the redemption of the property from John and Ellen Williams. The reasons are set forth above in the Answer to Question 2e. The payment of the redemption funds was voluntary. As stated above, that the redemption and depositing of the redemption funds occurred after the Otero County property had been abandoned and after the redemption right had been abandoned.

The payment of the Redemption Funds to John and Ellen Williams paid them for what they had paid at the Special Master's Sale, which reduced the judgment debt to the deficiency amount. This was not a collection action by the judgment creditor. Rather, it was voluntarily done payment to obtain the property. There is no violation of **11 U.S.C. § 524(a)(2).**

**Martin, Dugan & Martin**

By_____
W. T. Martin, Jr.
509 W. Pierce St.
P.O. Box 2168
Carlsbad, NM 88221-2168
(575) 887-3528
Fax (575) 887-2136
e-mail: martinlaw@zianet.com
Attorney for Defendants

## **CERTIFICATE OF SERVICE**

On February 8, 2021, opposing counsel was served by electronic filing and by e-mail.

**Martin, Dugan & Martin**

By_____
W. T. Martin, Jr.