UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                                     No. 13-11743 t7

       Debtor.

BRIAN VAN WINKLE and
TAMMY SPRAGUE,
Co-personal representatives,

       Plaintiffs,

v.                                                                                      Adv. No. 20-1022 t

BELLEVIEW VALLEY LAND CO.,
JOHN H. WILLIAMS, and
ELLEN B. WILLIAMS,

       Defendants.

## OPINION

Plaintiffs brought this proceeding against defendants John and Ellen Williams (the "Williamses") to recover damages for an alleged violation of the discharge injunction. The Williamses deny any violation and have moved for summary judgment. The dispute involves the application of the discharge injunction to New Mexico redemption law. The Court concludes that the Williamses' motion should be denied and that summary judgment in Plaintiffs' favor on the issue of liability may be appropriate.

1.      Facts.[1]

The Court finds that the following facts are not in genuine dispute:

---

[1] The Court takes judicial notice of its docket in this proceeding, the main case, and Cause No. D-1215-CV-2010-1054, filed in the Twelfth Judicial District Court, State of New Mexico. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

In 2008, Debtor Fred Van Winkle sued the Williamses in a dispute over certain real property he owned in Otero County, New Mexico (the "Property"). The Williamses counterclaimed. The upshot was a $243,944.31 money judgment in the Williamses' favor, entered in 2010. Interest accrued at 8.75%. The Williamses filed a transcript of the judgment in the Otero County records, creating a judgment lien on the Property. The Williamses then sued to foreclose the judgment lien.

Debtor filed a chapter 13 bankruptcy in 2011, staying the foreclosure. The case was dismissed without a discharge. Debtor then filed this chapter 7 case, receiving a discharge on August 26, 2013. On December 4, 2013, the Court modified the automatic stay to allow the Williamses to pursue their foreclosure action.

Debtor died in April 2014. His daughter, Tammy Sprague, was appointed personal representative[2] of his probate estate.[3] In that capacity she was substituted for Debtor in the foreclosure action.

A foreclosure judgment was entered on May 22, 2014. In July 2014, the Property was sold at a special master's sale. The Williamses were the sole bidders, credit bidding $67,000 of their judgment against Debtor. The state court approved the special master's report and title to the Property was conveyed to the Williamses by a special master's deed dated July 8, 2014. The state court also awarded the Williamses a deficiency judgment of $271,905.61.

On March 20, 2015, Sprague filed a motion in this case to compel the trustee to abandon Debtor's right to redeem the Property. The motion was unopposed and was granted. In April 2015 Sprague as personal representative filed a redemption petition in state court. Sprague deposited

---

[2] Brian Van Winkle, Debtor's son, was later named co-representative.
[3] Probate is apparently still ongoing. Sprague recently represented that probate had stalled because of the numerous bankruptcy proceedings.

about $73,200 (the "Redemption Funds") into the state court registry.[4] The deposit was made pursuant to New Mexico's redemption statute, and also to an April 21, 2015, court order authorizing the deposit. The order stated that the Redemption Funds were to be held "until the rights of all parties can be determined by further order of the [c]ourt."

The Williamses responded to the petition, arguing, inter alia, that "[p]etitioner may only redeem the Property if, prior to redemption," Sprague paid the entire deficiency judgment amount. The Williamses also filed a new complaint to foreclose their lien on the Property if the redemption were allowed, together with a motion for summary judgment on the new foreclosure complaint.

Sprague promptly sued the Williamses in this Court (adv. pro. 15-1047), alleging that the Williamses' actions violated the § 524(a)[5] discharge injunction. The Court ruled that they had, reasoning that the bankruptcy discharge transformed the Williamses' judgment and judgment lien into an *in rem* claim, so once the claim was paid through the foreclosure sale, it was entirely extinguished and could not reattach to the redeemed Property. In 2018, the Tenth Circuit BAP reversed this ruling, holding that New Mexico law was to the contrary.[6]

Following the 2018 BAP decision, Sprague attempted to assign the right of redemption from Debtor's probate estate to herself, Brian Van Winkle, and Brian's wife, as Debtor's heirs. Sprague then filed a motion in state court to substitute the three of them as the redemption petitioners. The state court denied the motion.

On September 19, 2018, the Williamses asked for a hearing on their long-dormant summary judgment motion on the new foreclosure complaint. The state court held a hearing March 11, 2019. On April 26, 2019, the state court entered a minute order conditionally granting the

---

[4] Sprague and/or Brian Van Winkle loaned the funds to Debtor's probate estate.
[5] All statutory references are to 11 U.S.C. unless otherwise indicated.
[6] For the Court's analysis, *see Sprague v. Williams*, 598 B.R. 297, 299 n.2 (Bankr. D.N.M. 2019).

motion. The court ruled: "in the event Defendants and/or Defendants-in-Intervention redeem the property herein, Plaintiffs' judgment lien is reinstated."

The minute order was followed by a longer order, entered July 19, 2019, drafted by the Williamses' counsel. The order stated in part:

> The hearing setting the final redemption amount is mandatory prior to issuance of the certificate of redemption.
> . . . .
> Plaintiffs requested orally at the hearing that the sums previously deposited by Defendants for the redemption be paid over to them. The Court will not rule on that request without proper motion, briefing and hearing.
> . . . .
> Defendants shall have 10 days from the date of this Order to file an election either (a) requesting issuance of a certificate of redemption and hearing to set the final amount or (b) withdrawing their request for issuance of a certificate of redemption. If Defendants fail to timely file the required election, Defendants are deemed to have elected option (b), withdrawal. In either case, the Court shall promptly set the matter for hearing and decide the remaining issues, including who is entitled to receive the initial deposited redemption amount.

Sprague did not file an election. The state court held a hearing on August 9, 2019, on the Redemption Funds. In an August 12, 2019, order, the state court ruled in part:

> Defendant is deemed to have elected withdrawal of the request for issuance of a certificate of redemption. . . . By election, Defendant forfeited and/or waived the right to issuance of the certificate of redemption and to reacquire legal title to the real property at issue pursuant to the redemption.

The order awarded the Redemption Funds to the Williamses.

The orders denying substitution, granting summary judgment, and awarding the Redemption Funds to the Williamses have all been appealed to the New Mexico Court of Appeals. The appeal is pending. In this proceeding, Plaintiffs argue that the Williamses' successful efforts to obtain the Redemption Funds violated the discharge injunction.

2. <u>Summary Judgment Standards</u>.

<em>-4-</em>

"A party may move for…[and t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056. "Where one party has invoked the power of the court to render a summary judgment against an adversary, Fed. R. Civ. P. 54(c) and 56, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment." *Peiffer v. Lebanon School Dist.*, 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citing *Nebraska Health Care Ass'n Inc. v. Dunning*, 575 F. Supp. 176 (D. Neb. 1983)); *see* Fed. R. Civ. P. 56(f)(1).

3.  <u>The Court Can Rule on the Alleged Discharge Injunction Violation</u>.

Relying on theories of law of the case/res judicata, the *Rooker-Feldman* Doctrine, and comity, the Williamses argue that the Court cannot address the merits of Plaintiffs' discharge injunction claim.

    A.    <u>Law of the Case/Res Judicata</u>. The Williamses first argue that the 2018 BAP decision allowed them to foreclose on the Property after Sprague redeemed it. The argument misses the point. Plaintiffs concede that the 2018 BAP decision would have permitted the Williamses' action, had Sprague redeemed the Property. Plaintiffs argue, however, that Sprague *did not* redeem the Property. Absent redemption, the Williamses had nothing except a discharged *in personam* debt, so taking the Redemption Funds violated the discharge injunction. This argument was never addressed by the BAP, this Court, or the state court. Claim preclusion principles therefore do not apply. *See, e.g., Nwosun v. General Mills Restaurant, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (no claim preclusion if the second suit is not based on the same cause of action).

B.      Comity. The Williamses next argue that comity prevents the Court from ruling in this proceeding. That is not right for two reasons. First, the state court never addressed whether the Williamses violated the discharge injunction, so comity is not an issue. Second, when considering a violation of the discharge injunction, "[a] bankruptcy court can find that a postpetition state court judgment is void despite the full faith and credit normally given to state court judgments." 4 Collier on Bankruptcy ¶ 524.02[1]; *see also In re Gray*, 573 B.R. 868, 875–79 (Bankr. D. Kan. 2017) (state court judgment for debt discharged in bankruptcy was a legal nullity and void ab initio, so bankruptcy court did not violate comity or preclusion doctrines); *In re Pavelich*, 229 B.R. 777, 783 (9th Cir. BAP 1999) ("The issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment."); *In re Hamilton*, 540 F.3d 367, 376 (6th Cir. 2008) (to same effect).

C.      *Rooker-Feldman*. The Williamses' final argument is that the *Rooker-Feldman* doctrine prohibits the Court from ruling. The argument must be overruled, again for two reasons. First, Plaintiffs have appealed the state court's order awarding the Redemption Funds to the Williamses. Because the order was not final and nonappealable, *Rooker-Feldman* does not apply. *See, e.g., In re Van Winkle*, 616 B.R. 896, 901 (Bankr. D.N.M. 2020) (*Rooker-Feldman* only applies to final, nonappealable state court judgments, citing *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006)). Second, the state court did not address the issue now before the Court. The Court has carefully reviewed the state court's orders and the arguments made by counsel in the state court action. No mention is made of, nor are there any rulings on, the discharge injunction. *Cf. In re Flanders*, 657 Fed. Appx. 808, 816-17 (10th Cir. 2016) (unpublished) (applying *Rooker-Feldman* because the state court ruled on the scope and effect of the discharge injunction).

The Court may rule on whether the Williamses violated the discharge injunction.

4.  <u>New Mexico Redemption Law</u>.

New Mexico's redemption statute provides in part:

A. After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in the foreclosure proceeding:
 (1) by paying to the purchaser, at any time within nine months from the date of sale, the amount paid at the sale, with interest from the date of sale at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser after the date of sale, with interest on the taxes, interest, penalties and payment made on liens or mortgage at the rate of ten percent a year from the date of payment; or
 (2) by filing a petition for redemption in the pending foreclosure case in the district court in which the order, judgment or decree of foreclosure was entered and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of that district court, at any time within nine months from the date of sale. Copies of the petition for redemption shall be served upon the purchaser of the real estate at the judicial foreclosure sale and upon all parties who appeared in the judicial foreclosure case; and
 (3) the former defendant owner shall have the first priority to redeem the real estate. If the former defendant owner does not redeem the real estate as provided in this subsection, each junior mortgagee or junior lienholder shall have a right to redeem the real estate. The order of priority of such redemption rights shall be the same priority as the underlying mortgages or liens, as set forth in the court order, judgment or decree of foreclosure or as otherwise determined by the court. All redemptions must be made within the time periods set forth in Paragraphs (1) and (2) of this subsection.
B. The purchaser of real estate at a foreclosure sale, upon being served with the petition for redemption of the property, shall answer the petition within thirty days after service of the petition.
C. The hearing shall be governed by the rules of civil procedure and shall be set upon the earlier of the filing of a redemption by the former defendant owner or the expiration of the period for filing a redemption. At the hearing, the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances. If more than one redemption is filed, the court shall also determine which redemption has priority pursuant to Subsection A of this section and which party is therefore entitled to redeem the property. At the conclusion of the hearing, the district court may order the clerk of the court to issue the certificate of redemption upon such terms and conditions as it deems just.

> D. As used in this section, the terms "owner", "junior mortgagee", junior lienholder" and "purchaser" include their respective personal representatives, heirs, successors and assigns.

NMSA § 39-5-18.[7]

The redemption statute does not say when a judicial redemption is complete and title passes to the redemption petitioner. The Court concludes that the most reasonable construction of the statute is that judicial redemption is not completed until the court has ruled on the petition after the hearing and, if the court approves the redemption, ordered the clerk of court to issue a certificate of redemption. Thus, for example, if two junior lienholders try to redeem within the time allotted and deposit money with the court clerk, the court would have to determine which one is entitled to redeem. NMSA § 39-5-18(A)(3). Presumably, the court would let one redeem and refund the other's deposit. Similarly, if a redemption petitioner deposited insufficient funds, the redemption would not be completed, if ever, until the court fixed the proper amount due and the

---

[7] Throughout, the parties have assumed that Debtor's probate estate was the proper party to redeem the Property. That assumption may be incorrect. Upon Debtor's death, his real property devolved to his heirs or devisees. *See* NMSA § 45-3-101(B); *see also Kerr v. Porvenir Corp.*, 889 P.2d 870, 874–75 (N.M. App. 1994) ("Property disposed of by will passes directly to the beneficiary under the will. It does not pass to the administrator and then to the beneficiary."); *Roberts v. Robert*, 158 P.3d 899, 902 (Ariz. App. 2007) (same; heir has the right to redeem inherited property sold at a tax lien sale). As Sprague and Brian Van Winkle inherited the Property, they took title when Debtor died and had the right to redeem it without an assignment from the probate estate. Further, the Williamses' judgment lien likely would not attach on redemption, as the Property would not be owned by the judgment debtor. *See, e.g., Turner v. Les File Drywall, Inc.*, 868 P.2d 652 (N.M. 1994).

redemption petitioner paid it.[8] The Court rejects the Williamses' argument that a redemption is "final," and title passes, when the petition is filed and proposed redemption funds are deposited.[9]

Here, Sprague filed her petition for redemption, deposited the Redemption Funds, and served the petition on the Williamses. The Williamses timely objected to the petition, arguing, inter alia, that the redemption deposit was inadequate. The state court did not rule on the dispute because the bankruptcy litigation intervened and the matter was stayed.

The parties went back to state court after the 2018 BAP decision. The state court held a hearing and ruled that Sprague "forfeited . . . the right . . . to re-acquire legal title to the [Property] . . . pursuant to the redemption." Thus, the state court ruled that the redemption never happened. Title never passed from the Williamses to Sprague.

5.  The Williamses' Violated the Discharge Injunction.

Debtor's discharge on August 26, 2013, "operate[d] as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" Section 524(a)(2). The Williamses' judgment lien became in rem only; any unsecured deficiency was discharged. *See* § 727(b); *see also In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990) (tax lien); *In re Montoya*, 95 B.R. 511, 514 (Bankr. S.D. Ohio 1988) (lien for condominium fees).

Had title to the Property passed to Sprague, then per the 2018 BAP decision the Williamses' judgment lien would have reattached to the Property. Because title did not pass, however, the

---

[8] Alternatively, a state court could deny the attempted redemption altogether, upon a finding that the redemption deposit was inadequate. *See Chapel v. Nevitt*, 145 N.M. 674, 683-84 (Ct. App. 2007) (attempted redemption disallowed because the redemption funds were not deposited).

[9] For further support, *see In re Van Winkle*, 2017 WL 562430, at *3 (Bankr. D.N.M.) ("The redemption remains pending in State Court, and Defendants still have title to the Subdivision Property."); *In re Van Winkle*, 583 B.R. 759, 764 (10th Cir. BAP 2018) ("The petition to redeem remains pending in the state court, and Appellants still hold title to the Otero Land.").

Williamses had no debt they could collect. The Redemption Funds were not subject to the Williamses' judgment lien (which only attaches to real property). *See* NMSA § 39-1-6. The Williamses' continued pursuit of the Redemption Funds was an act to collect the discharged debt as a personal liability of the Debtor, in violation of the discharge injunction. *See*, *e.g.*, *In re Sanchez*, 545 B.R. 55, 59 (Bankr. D.N.M. 2016) ("the discharge injunction 'prohibits efforts to collect a [prepetition] debt *as a personal liability of the debtor*[.]'") (quoting *In re Paul*, 534 F.3d 1303, 1309 n.6 (10th Cir. 2008)). Additionally, "actions that are facially permissible can nevertheless violate the discharge injunction if the effect of the actions is to coerce payment of discharged debts." *Id.* at 60 (citing *Paul*, 534 F.3d at 1308).

6. <u>The Williamses' Arguments to the Contrary Lack Merit</u>.

The Williamses make three arguments why their pursuit of the Redemption Funds did not violate the discharge injunction. None have merit.

    A. <u>Petition Filed Post-Discharge</u>. The Williamses first argue that no violation occurred because the redemption petition was filed post-discharge. This argument fails. The relevant inquiry is whether the Williamses tried to collect a discharged debt, not whether Sprague filed the redemption petition before or after the discharge injunction was entered.

    B. <u>Third Party Funds</u>. The Williamses next argue that there could be no discharge injunction violation because a third party provided the Redemption Funds. This argument likewise fails. The funds are owned by the probate estate—it borrowed them from Sprague and/or Brian Van Winkle.[10] The fact that the funds originated from a third party, who loaned them to the probate estate, is irrelevant.

---

[10] Additionally, if the third-party funding meant that the redemption petitioner was the third party, then the Williamses' judgment lien could not reattach to the Property once the redemption was completed. *See* note 8 supra.

C.  <u>Voluntary Payment</u>. Finally, the Williamses argue that Sprague voluntarily repaid the debt in accordance with § 524(f). This argument is frivolous. While Sprague was willing to pay the redemption price to get the Property, she had no desire to pay Debtor's discharged debt to the Williamses. This proceeding is strong evidence of that. In any event, redemptions do not pay debts secured by encumbered property; those debts are paid with foreclosure sale proceeds.

<u>Conclusion</u>.

Had Debtor's probate estate had redeemed the Property, the Williamses could have collected the Redemption Funds, conveyed the Property to the estate, and then re-foreclosed on the Property, per the 2018 BAP decision. That is not what happened, however. Instead, the Property was *not* redeemed, title did *not* pass to the probate estate, and the Williamses were left with no secured claim and no debt they could collect. Thus, when the Williamses sought and accepted the Redemption Funds, they violated the discharge injunction. By separate order, the Court will deny the Williamses' motion for summary judgment and give notice per Rule 56(f) that it is considering granting summary judgment on liability in Plaintiffs' favor.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 5, 2021
Copies to: Counsel of record