## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In Re Fred Dale Van Winkle,
     Debtor,

Brian Van Winkle and
Tammy Sprague, co-personal representatives
of the estate of Fred Dale Van Winkle,
     Plaintiffs,

v.

                                     Bankr. No. 13-11743 t7
                                     Adv. No 20-1022

John Williams, Ellen B. Williams, and     Chapter 7
Belleview Valley Land Co., Inc.
     Defendants.

·

# DEFENDANTS' RESPONSE TO COURT'S PROPOSAL TO GRANT SUMMARY JUDGMENT FOR THE PLAINTIFFS

**COME NOW, John Williams, Ellen B. Williams** and **Belleview Valley Land Co., Inc.** *(collectively, "Defendants")*, and file this Response to the Court's Opinion and Orders setting deadlines entered on March 5, 2021 to respond to this Court's proposal to grant summary judgment under Fed. R. Civ. P. 56(F) to Plaintiffs **Brian Van Winkle** ("Brian") and **Tammy Sprague** ("*Sprague*") (collectively, "*Plaintiffs*") and show:

## I.    SUMMARY OF RESPONSE

Bankruptcy courts may enforce the discharge injunction in § 524(a)(2). *In re Paul*, 534 F.3d 1303, 1306–07 (10th Cir. 2008). "But that equitable power cannot be exercised contrary to or in excess of the terms of the substantive Code provision being enforced." *Id*. "Thus, a bankruptcy court may sanction a party for violating the discharge injunction *only if* the party took some action ... "to collect, recover or offset any [discharged] debt *as a personal liability of the debtor*." *Id*. The concept of a "fresh start" is not immunity:

> This may seem an obvious point when stated in the abstract, yet it can easily be overlooked in the course of a bankruptcy court's practical effort to support a debtor's fresh start following discharge. A host of circumstances can affect a former debtor's financial comeback. But the concept of "fresh start" is just a general gloss on the purpose of § 524(a); *it is not a license for courts to go beyond the particular prohibitions specified in the statute to shield debtors from adverse contingencies*. However well-intentioned the effort in trying to facilitate a debtor's fresh start, a bankruptcy court may not enjoin and sanction a creditor with respect to conduct that does not violate § 524(a). *Id*. at 1307.

This Court closed this case on June 18, 2019. Thereafter, Brian requested a stay for the Estate of Fred Van Winkle (the "*Estate*"). (Ex. 35). Brian's Motion states, "Judge Counts has just recently allowed a Discharged debt set forth by this Bankruptcy court to be allowed in state court, in doing so, the state court has upset the balance provided by this court ...." **This has also put Redemption funds deposited with the state court at risk**." (Id., p. 3). This Court denied those Motions, holding it was "**powerless to grant relief**." (Ex. 36, Doc. No. 85). This Court ruled it was bound by the Bankruptcy Appellate Panel ("*BAP*") decision and the state court was "doing no more than what it is bound to do." (Id.). Defendants relied on that opinion.

The BAP ruled the redemption right was not an estate asset and the Defendants, in trying to enforce the Deficiency Judgment did not seek a debt *as a personal liability of the debtor*." *In re Van Winkle*, 583 B.R. 759, 770. That decision involved the same series of transactions as this case and is *res judicata*.

In pursuing their relief in the State Court, the Williamses were merely seeking to "implement the ruling of the Bankruptcy Appellate Panel, [which he] is bound to do." (Order, 8-8-19, Ex. 36). That case is on appeal. That court has primary jurisdiction, and the *Rooker-Feldman* and/or *Younger* doctrines preclude jurisdiction herein. Defendants will address those issues in a separate Motion to Dismiss. However, the issues are also barred by law of the case, collateral estoppel, and *res judicata*, which will be addressed herein.

"The discharge prohibits prepetition creditors only from collecting their **prepetition** debts. It is not a lifelong shield against other acts—including assertions of claims, and litigation—by those same creditors." *In re Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007). This case does not involve prepetition debts. The Estate tendered the sums into the state court registry, voluntarily, after the discharge. It is not even a debt. The tendered monies were the *res* in an *in rem* proceeding. Simply because the State Court awarded those sums to the purchasers at the foreclosure sale (post-bankruptcy), does not magically make the creditors liable to the Estate for violation of the discharge injunction. In *In re Paul,* 534 F.3d at 1308, the Tenth Circuit noted a bankruptcy court must never resolve the merits of a state court suit under the guise of the discharge injunction:

> Even when a less direct violation turns on application of the objective-coercion principle, **the bankruptcy court's analysis should not entail resolving the merits of a claim pending in another court**: the question, rather, is whether the objective effect of the claim is to coerce payment of a pre-petition debt. But when a bankruptcy court seeks to answer that question based on an adjudication of the merits of a creditor's claim, **that adjudication should be made by the court hearing the claim**. *Id.* at 1311.

Numerous grounds exist to prevent summary judgment herein. However, the most glaring is the new contempt standard in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801, 204 L. Ed. 2d 129 (2019). The question is not whether Defendants violated the discharge injunction. It is whether it was **"fairly debatable."** It was. *Id.*

## II.    SUMMARY OF STATE COURT PROCEEDINGS

Defendants provided a summary of the state court proceedings in their Motion to Dismiss, which is being filed simultaneously herewith, and Defendants refer the Court to that Motion, which is  incorporated. Defendants also incorporate the defenses in that Motion, to the extent they apply on summary judgment.

## III.    STATEMENT OF FACTS AND EXHIBITS

Defendants previously provided a statement of facts in their Motion for Summary Judgment (the "*MSJ*") filed on October 29, 2020 (Doc. No. 14) and 28 exhibits. In lieu of reciting the facts, Defendants incorporate that MSJ, accompanying brief, and exhibits. References to Exhibits 1-28 are those exhibits. Additional exhibits will be attached and numbered 29-37. Defendants will not further recite the facts, but instead will brief the facts in the argument and take exception to specific findings by this Court in its order:

a. **Who Loaned and/or Owned the Funds** – The Court suggests, "Sprague **and/or** Brian Van Winkle **loaned** the funds to Debtor's probate estate." (Order, n. 4). "And/or" is speculative. There is no evidence who "loaned" the money. No loan agreement was provided, nor evidence the Estate must pay the funds back. It was an investment by third parties, Brian **and/or** Sprague, taking a personal, calculated gamble.

The Court improperly proposes the Estate owned the funds. (Order, p. 10). In fact, prior to the State Judgment, the Estate assigned all interest to third-parties. (Ex. 17, pp 4-5). Plaintiffs previously admitted the heirs provided the funds and are the real parties in interest. (Ex. 33). The Estate had no interest.

Moreover, the State Court ruled the Estate "irrevocably deposited," "forfeited" and "waived" "title or interest in the Deposited Funds." (Ex. 19, ¶ 5-7). That is *res judicata* herein. *See infra.*

b. **Minute Order** – The Court improperly proposes to rely on the State Court's minute order. (Order, p. 3). That Minute Order was an interlocutory order, which was not binding. *O'Brien & Assocs., Inc. v. Carl Kelley Const., Inc., Ltd.*, No. 32,080, 2012 WL 5839060, at *2 (N.M. Ct. App. Oct. 31, 2012)(unpublished); *Levenson v. Haynes*, 1997–NMCA020, ¶ 10, 123 N.M. 106. The State Court superseded the "minute order" with its formal order, entered August 12, 2019. (Ex. 18). The new order corrected many findings, including assuring the judgment was only "*in rem*" and deleting reference to the Estate not yet having redeemed the property. The Court subsequently decided that last issue against the Plaintiffs. (Ex. 19).

c. **Did Sprague Redeem the Property** – This Court admits Plaintiffs lose if Sprague redeemed the property. (Order, p. 5). The parties asked Judge Counts to resolve that issue. (Ex. 29-30). The State Court then held, "Defendant subsequently redeemed the property..." (Ex. 19, ¶ 2). That is *res judicata*.

d. **Who Redeemed the Property** – The Court provided a suggestion in note 7 that perhaps Sprague and Brian exercised the redemption individually. (Order, p. 8). It is too late. If, in fact, they had the right to redeem, they did not exercise it within the required nine-month statutory period. NMSA § 39-5-18. Moreover, if they redeemed, no bankruptcy assets, nor the discharge injunction, are at issue. In fact, Tammy Sprague, personal representative for the probate estate, redeemed the property. (Ex. 6).

e. "**The State Court Ruled the Redemption Never Happened**." -- This Court proposes to rule the redemption never happened. (Order, p. 9). That is untrue. This Court reaches that conclusion by omitting words from Judge Counts' Order. He expressly ruled, "Defendant subsequently redeemed the Property at issue by filing a petition and depositing the stated sums. NMSA 1978, Section 39-5-18(A)(2)(2007)." (Ex. 19, ¶2). The State Court had previously ruled there were only two ways to redeem – one of which was by filing the petition and depositing the stated sums. (Ex. 18, ¶ C). Sprague chose that option. (Ex. 19, ¶ 2).

Defendants understand how this Court could be confused. It did not have the entire record. The primary issue the State Court was addressing in that August 12, 2019 Order was whether the petition and deposit automatically redeemed the property. Attached as Exhibit 29 is Plaintiff's Notice of Presentment of Order. The Williamses pointed out that, in a recent unpublished opinion (*Nationstar Mortgage LLC v. Chenoweth*, 2018 WL 2213641 (N.M. App., April 2, 2018), the Court held redemption is exercised by filing the petition and depositing the purchase price, plus taxes and interest. (Ex. 29, ¶ 5). *Nationstar* stated, "The statute does not require any further action for a party to redeem." Id. Defendants proposed an order that would permit the Court to decide later, after full briefing. (Ex. 29). Sprague submitted a competing response and order that would have allowed her to withdraw her petition and the redemption. (Ex. 30, Ex. B, ¶ 3). The State Court decided to reserve the matter for further briefing (Ex. 18, ¶ 2).

Defendants then filed their Amended Motion to Distribute Redemption Sums and Enter Final Judgment. (Ex. 31). That Motion requested the Court award the Williamses the funds because "The purchaser at the foreclosure sale is indisputably entitled to the redemption funds." (Ex. 31, p. 7).

Defendants argued, "Because the redemption funds were paid unconditionally into the Court's registry, those sums should be distributed to Plaintiffs, **as the purchasers** at the foreclosure sale." (Id.). Sprague opted to not file a Response, nor to even advise the Court which option she was exercising. The Court then ruled Sprague exercised the redemption by filing the petition and depositing the funds, irrevocably deposited the funds, and forfeited all rights to the funds. (Ex. 19, ¶ 2, 5-6). The Court clearly ruled.

f. **Debts the Williamses Could Collect** – The Court proposes to conclude that, once the redemption was forfeited, the "Williamses had no debt they could collect." (Order, p. 10). That is incorrect. The Williamses and Belleview had an *in rem* judgment. (Ex. 19, ¶ D). "Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its **right to the proceeds** from the sale of the debtor's property." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150 (1991). "Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a '**right to an equitable remedy**' for the debtor's default on the underlying obligation." Id. NOTE: These are two separate rights. "Either way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor." *Id*. Notably, in the prior adversary, this Court cited *Johnson* and recognized, "After bankruptcy, only *in rem* rights survive, and then only until the lien is foreclosed, to be replaced with **a right to payment from the proceeds**." *In re Van Winkle*, No. 13-11743 T7, 2017 WL 562430, at \*6 (Bankr. D.N.M. Feb. 10, 2017). Moreover, the Williams, as foreclosure purchasers, had a claim to the Redemption Funds. *In re LaMont*, 740 F.3d 397, 407 (7th Cir. 2014)(holding "purchaser has a right to payment from the money paid to redeem the property.").

g. **Voluntariness of Payments** – This Court improperly proposes to conclude Sprague's payment was not "voluntary," based on supposition of what she thought. There is no evidence of that intent. In fact, as proven below, the standard is objective. Also, this issue was decided by the State Court, and is *res judicata.* (Ex. 19, ¶¶ 5-7). **Moreover, deemed admissions preclude this finding**. (Ex. 27-28).

### IV.   ARGUMENT AND AUTHORITIES

## A.   Plaintiffs' Claims Are Barred by *Taggart*.

Plaintiffs must prove -- not Defendants disprove -- contempt.  There is no private right of action under

§ 524 for a creditor's violation of the discharge injunction. *In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013).

Instead, a debtor's sole remedy lies in contempt proceedings under § 105(a). *Otero* (citing *Paul*, 534 at 1307).

Our Supreme Court recently defined exactly what is required to prove contempt in *Taggart*, 139 S. Ct. at 1801.

Prior to *Taggart*, the federal courts were divided on what *mens rea* is required to hold a creditor liable

for contempt in violation of the discharge injunction.  The U.S. Supreme Court resolved the conflict in *Taggart*.

The Court held a creditor violates the discharge injunction **only** "when there is **no objectively reasonable**

**basis** for concluding that the creditor's conduct **might** be lawful under the discharge order." *Id*.   It is an

objective standard. *Id*. at 1802.    There must be no "fair ground of doubt" as to whether the discharge "might"

bar the creditor's conduct. *Id*.  at 1801-1804.    "[P]rinciples of basic fairness require that those enjoined

receive **explicit notice** of what conduct is outlawed before being held in civil contempt." I*d*. at 1802.

The *Taggart* standard is a "rigorous" one.  *In re Roth*, 935 F.3d 1270, 1278 (11th Cir. 2019).   There

must literally be "no fair ground of doubt" that the conduct "might" be lawful.  *Id*. (quoting *Taggart*, 139 S. Ct. at

1799); *In re Ahn*, 794 F. App'x 661 (9th Cir. 2020) (creditors had an objectively reasonable basis for concluding

their actions to amend judgment to include additional amounts were lawful in an *in rem* action).  Plaintiffs must

prove Defendants had "explicit notice" their conduct was forbidden. *Johnson*, at 1802.

In fact, this Court cannot find there is "no fair ground of doubt" that the actions "might not" violate the

discharge injunction.   In this Court's order on March 13, 2020, it listed ten questions "in this convoluted case"

that raise "questions about a **possible** violation of the discharge injunction."  *In re Winkle*, 616 B.R. 896, 901

(Bankr. D.N.M. 2020).   The fact that this Court expressed doubt as to the "possibility" of application of the

discharge injunction should be evidence enough that Plaintiffs cannot satisfy their rigorous burden.[1]

---

[1] Arguably, the *Taggart* refinements of the civil contempt standard did not otherwise alter a movant's threshold burden of going forward. The moving party still must show at the outset that the alleged contemnor: (1) knew the discharge injunction applied; and (2) intended the actions that violated the injunction. *In re*

One must only look at the subsequent history in *Taggart* to determine no violation occurred. On remand, the Ninth Circuit applied *Taggart* and held that no violation was possible because the debtor agreed to "**return to the fray**" of the state court foreclosure proceeding. *In re Taggart*, 980 F.3d 1340, 1349–50 (9th Cir. 2020). The standard, however, is more stringent than, "Did he return to the fray?" The Court said:

> The question for us, however, is not whether Taggart actually "returned to the fray" in the Oregon state court litigation. Nor is it whether the Creditors had an objectively reasonable basis for concluding that Taggart had "returned to the fray." Rather, **the question is whether the Creditors had some—indeed, any—objectively reasonable basis for concluding that Taggart might have "returned to the fray" and that their motion for post-petition attorney's fees *might* have been lawful**.

Id. Objective evidence supporting a belief the conduct "might" have been lawful defeats liability, *ipso facto*.

Other decisions hold that the debtor may be held liable post-petition, where he "pursued a whole new course of litigation," "commenced litigation," or "returned to the fray" voluntarily. *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir. 2005)("[B]y voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation."); *Shure v. Vermont*, 983 F.2d 1015, 1018 (11th Cir.1993) (holding debtor forfeited discharge argument when he chose to sue on an agreement post-bankruptcy); *Matter of Hadden*, 57 B.R. 187 (Bankr.W.D.Wis.1986).

Plaintiffs commenced post-discharge litigation by filing the Redemption Petition. When the State Court entered its order in 2015 permitting deposit of the Redemption Funds, it expressly ruled it would hold the funds "until the rights of all parties can be determined." (Ex. 7). When the parties stipulated in 2018 to return to State Court for "final" determination, they knew that would include the rights to the redemption funds. By agreed, stipulated order, Plaintiffs "returned to the fray." At a minimum, that is an "objectively reasonable basis" to conclude the creditor "might" proceed to final determination. Certainly, there is a "fair ground of doubt." *In re Macintyre*, No. AP 19-01136, 2020 WL 1651619, at *5 (10th Cir. BAP (Colo.) Apr. 3, 2020) (concluding creditor had objectively reasonable belief to request attorneys' fees be added to *in rem* judgment).

---

*Mellem*, No. 8:09-BK-18441-ES, 2021 WL 686665, at *4 (B.A.P. 9th Cir. Feb. 22, 2021). Plaintiffs cannot satisfy that standard either.

In *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533 (9th Cir. 1998), the debtor argued the discharge injunction prevented the creditor from recovering attorneys' fees in its state *in rem* suit. The court ruled against the debtor. The Court noted, ordinarily, that would be the rule. However, because the debtor asserted new rights and claims after bankruptcy, it was subject to receiving contrary rulings. The Court said,

> This is a case where the debtor, Siegel, had been freed from the untoward effects of contracts he had entered into. Freddie Mac could not pursue him further, nor could anyone else. **He, however, chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him.**
> … while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, **it did not give him carte blanche to go out and commence new litigation about the contract without consequences**.

Id. Like *Siegel*, the Estate used the redemption as a "weapon." The discharge injunction does not apply.

In fact, this Court previously ruled in August 2019 it was "powerless" to prevent the state court from ruling. (Order, 8-8-19, Doc. No. 85). Defendants "objectively" relied on this Court's own ruling. *See e.g., In re Loder*, 796 Fed. Appx. 698 (11th Cir. 2020) (creditor did not violate injunction for reasonable belief judgment included interest and costs). Practically, however, it is not Defendants' burden to disprove the right to sanctions. It is Plaintiffs' burden to prove the right. That is a burden Plaintiffs can never satisfy.

### B. Ruling for Plaintiffs Violates This Court's Stipulated Order.

Defendants and this Court are bound by stipulations. *L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 539 (10th Cir. 1983). On August 8, 2018, the parties stipulated, and this Court ordered, the parties would "complete the state court litigation and have a **final determination** of the rights of the parties vis-à-vis each other therein." (Ex. 32). In lieu of further briefing, Defendants refer to their Motion to Dismiss, pp. 4-6.

### C. Plaintiffs' Claims Are Barred By the State Court Decision And *Res Judicata*.

In fact, Plaintiffs' claims are barred by issue preclusion and the state court judgment. "The Debtor chose his forum. If he believed the state court erred in [the] foreclosure, his remedy was to appeal within the state courts." *In re Singleton*, 230 B.R. 533, 539 (B.A.P. 6th Cir. 1999)(holding debtor could not challenge state court foreclosure decisions through guise of adversary discharge proceeding). In effect, Plaintiffs

request this Court overrule Judge Counts and hold Defendants are not allowed to recover the proceeds of the redemption, even as **purchasers** at the foreclosure sale. That is an improper collateral attack. The "full faith and credit" statute requires a federal court give a state judgment the same preclusive effect as the judgment is given in the state court from which it issued – New Mexico. 28 U.S.C. § 1738; *Sedillo v. New Mexico State Highway & Transportation Dep't*, No. CV 02-965 WJ/LCS, 2004 WL 7337750, at *1 (D.N.M. May 14, 2004).

Res judicata and collateral estoppel apply in New Mexico, <u>**even if the case is being appealed**</u>. *Brunacini v. Kavanagh*, 1993-NMCA-157, ¶ 34, 117 N.M. 122, 128 (quoting with approval *Restatement (Second) of Judgment*, Section 13); *In re Jacobs*, No. 19-12591-J11, 2021 WL 408973, at *7 (Bankr. D.N.M. Feb. 4, 2021)(unpublished); *Gutierrez v. Schwander*, No. CV 06-0937 RB/WPL, 2008 WL 11451420, at *9 (D.N.M. July 7, 2008)(unpublished)(citing *Brunacini*); *Casias v. Sw. Med. Assocs.*, No. CIV. 04-0142 JB/ACT, 2005 WL 3662924, at *7 (D.N.M. Oct. 31, 2005)(unpublished); *Sedillo*, 2004 WL 7337750, at *1. All of those decisions, including *Jacobs* (issued by Bankruptcy Judge Jacobvitz), hold it is clear New Mexico follows the *Restatement (Second) of Judgment*, Section 13, and apply *res judicata* during an appeal of a final judgment. *In re Jacobs*; *Casias*, 2005 WL 3662924, at *7. The general federal rule is that "[t]he appealability of a judgment ... does not hinder its preclusive effect." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005).

"Under *res judicata* ... a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503–04 (10th Cir. 2002). "[T]he broad '*res judicata*' phrase refers to the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'" *Trujillo v. Rio Arriba Cty. ex rel. Rio Arriba Cty. Sheriff's Dep't*, 319 F.R.D. 571, 617–18 (D.N.M. 2016). Where the causes of action are not identical, the second aspect of *res judicata*, termed "issue preclusion," precludes parties from relitigating issues in a second, not identical cause of action. *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009)("The doctrine of issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.").

Under New Mexico law, issue preclusion requires: 1) the parties in the first suit must be the same or in privity with the parties in the second lawsuit; 2) the first and second suit assert different causes of action; 3) the issue or fact was "actually litigated" in the first suit; and 4) the issue was necessarily determined in the first suit. *In re Jacobs*, No. 19-12591-J11, 2021 WL 408973, at \*6 (Bankr. D.N.M. Feb. 4, 2021)(citing *Blea v. Sandoval*, 1988-NMCA-036, ¶ 18, 107 N.M. 554). The issue must have been actually litigated and necessarily determined in a final judgment. *State ex rel. Martinez v. Kerr-McGee Corp.*, 1995-NMCA-041, ¶ 13, 120 N.M. 118. Federal issue preclusion likewise applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009). All of those elements are met herein.

First, the issues are identical. To rule in the Williamses' favor, the State Court necessarily decided:

a. "[The Estate] subsequently redeemed the Property at issue by filing a petition and depositing the stated sums" (Ex. 19, ¶ 2).

b. "[The Estate] ... elected withdrawal of the request for issuance of a certificate of redemption." (Id., ¶ 4).

c. "By election, [the Estate] forfeited and/or waived the right to issuance of the certificate of redemption and to re-acquire legal title to the real property at issue pursuant to the redemption." (Id., ¶ 5)

d. "[The Estate] "irrevocably deposited" $73,200.94 (the "Deposited Funds") ... into the registry of the Court" (Id., ¶ 6).

e. "The Estate waived any title or interest in the Deposited Funds when it procured a Court Order authorizing deposit and then tendered the Deposited Funds into the court registry without condition." (Id., ¶ 7).

f. "The [Williamses] are entitled to receive the Deposited Funds, $73,200.94, plus the earned interest." (Id., ¶¶ 8, C).

This Court's 3-05-21 Order improperly proposes to make findings contrary to those actual rulings.

Second, the prior state action involved a different cause of action. The Plaintiffs did not seek recovery under the discharge injunction. Plaintiffs claim it is the state judgment, itself, which violates the injunction. Accordingly, the causes of action are different, relying on different actions to support the claims. Practically, however, if the causes of action are the same, claim preclusion – not issue preclusion – applies to bar the

claims.[2]   Third, the parties are the same and/or in privity.  Sprague is the personal representative in both suits. Brian is now the "co-personal representative" with Sprague, and clearly in privity.  Finally, Sprague had a fully and fair opportunity to litigate the issues. Defendants' Amended Motion raising the issues is Exhibit 31.   The Court held a hearing on August 9, 2019.  (Ex. 19, p. 2).  The Court then entered a final judgment.  (Id.).  *Res judicata* applies, and Plaintiffs are barred from recovering herein by issue preclusion (or claim preclusion).

This Court noted, "the 2018 BAP decision would have permitted the Williamses' action, had Sprague redeemed the Property."  (Order, p. 5).  In fact, the State Court found Defendant "redeemed the Property." (Ex. 19, ¶ 2).  The State Court further found the Estate waived title or interest in the Deposited Funds" and tendered the funds "without condition."  (Ex. 19, ¶ 7).  Those findings preclude a violation of the bankruptcy discharge.   *See In re Jacobs*, No. 19-12591-J11, 2021 WL 408973, at *6 (Bankr. D.N.M. Feb. 4, 2021)(unpublished)(holding state court foreclosure judgment barred re-litigation of factual issues pertaining to the rights of the parties in underlying state court foreclosure action, despite appeal, under New Mexico law); *Matter of Germer*, 107 B.R. 217, 221 (Bankr. D. Neb. 1989) (holding lifting of stay to proceed in foreclosure action precluded plaintiff returning to bankruptcy court to collaterally attack the state court judgment).

### D.   Plaintiffs' Claims Are Barred by the BAP Opinion Under the Doctrines of Law of the Case and *Res Judicata*.

"[T]he law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern **the same issues** in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir.1991). In its August 8, 2019, Order, this Court recognized it was "powerless" to readdress the issues. (Ex. 36).  The BAP Opinion applied state redemption law and held, "Appellants did not, in trying to enforce the Deficiency Judgment against the Otero Land, commit any "act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor." under § 524(a)(2)."

---

[2]   *Sandel v. Sandel*, 2020-NMCA-025, ¶ 17, 463 P.3d 510, 518 (affirming on *res judicata* grounds where collateral estoppel did not apply because the causes of action were not different under transactional test). Claim preclusion requires (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties are the same or in privity, and (4) the causes of action are the same. Id.   Those elements are essentially the same, except for the last, which requires the causes of action be the same.  Id.

583 B.R. at 770.    The BAP addressed whether Defendants' Complaint (Ex. 9) and Motion for Summary

Judgment (Ex. 10) violated the discharge injunction. *In re Van Winkle*, 583 B.R. at 770.   The BAP held:

> **...the filing of the postredemption foreclosure action was not in violation of § 524(a)(2) because, under New Mexico law, a deficiency judgment may become a postredemption lien on the real property once properly transcribed.**

The BAP Opinion establishes enforcement of the redemption statutes is a not a violation of the

discharge injunction. The BAP Decision is "law of the case" and is *res judicata* on the issues and claims

regarding the redemption and disposition of the redemption funds. *In re Spurlin*, No. 7-90-03958-ML, 1999 WL

35809883, at *3 (D.N.M. Jan. 21, 1999) ("Thus, re-litigation of the question of whether Jacob's claims were

post-petition and the issue of whether the claims should be tried in the state court action are barred by the

doctrine of law of the case."); *In re Parker*, 264 B.R. 685, 696–97 (noting where property interests are involved,

those interests are created and defined through state law).

The BAP evaluated New Mexico law that creates and defines the property interests. The Court

recognized that New Mexico's redemption law allows judgment lienholders to re-foreclose on real property

redeemed by the former real property owner for any balance due (deficiency). The Court found:

> ... redeemed real property "once again becomes part of the mortgagor's real estate subject to prior judgment liens." In New Mexico, judgment liens attach to real property acquired by a judgment debtor after the date a transcript of judgment is filed, including property lost at foreclosure but reacquired through redemption. However, nothing in the New  Mexico Supreme Court's interpretation of the law indicates property redeemed is newly acquired property—rather, the property "again becomes part of [a debtor's] real estate." ... **this statutory scheme ... allows repeated foreclosures**.

*In re Van Winkle*, 583 B.R. 759, 769–70.

The BAP defined and approved the New Mexico redemption process, and it was expected to be

followed.  Plaintiffs cannot usurp that opinion by waiving their redemption and demanding their money back.

This court and the parties herein are bound by the BAP opinion.  *Jester v. Wells Fargo Bank N.A.*, 297 F.

Supp. 3d 1233, 1243-444 (E.D. Okla. 2018) (holding claims of violation of discharge injunction were barred by

prior appeal to Tenth Circuit BAP arising out of the same transaction or occurrence). Under federal *res judicata*

principles, a final judgment on the merits of an action precludes the parties or their privies from relitigating

issues that "**were or could have been raised**" in that action. *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992). To demonstrate *res judicata*, the defendant bears the burden to prove (1) the prior suit ended with a judgment on the merits; (2) the parties are identical or in privity; (3) the prior suit was based on the same cause of action; and (4) the plaintiff had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mill Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).

All of those elements exist in this case. First, the BAP fully adjudicated the prior appeal, which resulted in a final judgment that was not appealed. The parties then stipulated the state court would fully resolve all issues remaining in the foreclosure action. Second, the parties are identical or in privity, being the Williamses and the Estate personal representatives. Third, the prior BAP appeal involved the same cause of action. See *Nwosun* (noting that a cause of action for claim preclusion purposes "includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."). Plaintiffs, once again, claim that proceeding with the foreclosure action violates the discharge injunction. Plaintiffs simply desire now to present a new legal theory that will usurp the trial court's jurisdiction. That is improper. "Inasmuch as the doctrine of *res judicata* precludes parties from relitigating issues that were or could have been raised, parties cannot defeat its application by simply alleging new legal theories." *Clark*, 953 F.2d at 1238.

The 10th Circuit applies a "transactional" approach to *res judicata*. *Hatch v. Boulder Town Council,* 471 F.3d 1142, 1149 (10th Cir.2006). "[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Clark,* 953 F.2d at 1238. Both cases allege the same cause of action (violation of the discharge injunction) arising out of the same "transaction" or "series of transactions," the underlying State foreclosure suit. Creatively, Plaintiffs waived their redemption in state court to usurp the BAP's ruling in 2018. Justice is not so blind. If Plaintiffs believed any part of the Foreclosure Complaint or ongoing state action violated the discharge injunction, they were required to raise that issue with this Court and the BAP.

13

Fourth, Plaintiffs had a full and fair opportunity to litigate the issues of the discharge injunction. The Complaint (Ex. 9) and Motion for Summary Judgment (Ex. 10) were filed long before the BAP Opinion, and were the basis of the BAP decision. Claim and/or issue preclusion applies. The claims should be dismissed.

### E.     Defendants Did Not Violate the Discharge Injunction.

"A bankruptcy court may sanction a party for violating the discharge injunction **only if** the party took some action prohibited by § 524(a)(2)—i.e., an action 'to collect, recover or offset any [discharged] debt ... of the debtor.'" *Paul*, 534 at 1307.    Discharge affects only pre-petition, *in personam*, debts of the debtor. *Johnson*, 501 U.S. at 82–83.    Plaintiffs bear "the burden of proving that the creditor willfully violated the discharge injunction **by clear and convincing evidence**." *In re Jester*, 2015 WL 6389290, at *5 (B.A.P. 10th Cir. Oct. 22, 2015) (holding creditors did not violate injunction for additional charges that were "associated with the ... *in rem* claim").  Plaintiffs have no evidence of a violation, much less "clear and convincing" evidence.

#### a.     Plaintiffs' Actions Were Voluntary.

11 U.S.C. § 524(f) provides that nothing prevents a debtor from "voluntarily repaying any debt."  The Court "<u>objectively</u> decides whether a payment is voluntary, focusing on the conduct of the creditor receiving the payments." *In re Wiley*, 224 B.R. 58, 72 (Bankr.N.D.Ill.1998); *In re Strotkamp*, No. 90-13772, 2001 WL 34674679, at *3 (Bankr. D. Kan. Oct. 16, 2001)(holding creditor could reasonably have assumed payments voluntary).   "The inquiry is objective." *Paul*, 534 F.3d at 1308. ("[T]he presence of some other procedural impropriety or error in connection with the creditor's action will not give rise to a violation of the discharge injunction if the objective effect is not to coerce payment of a discharged debt.").

This Court proposed to apply a subjective test, suggesting Sprague "had no desire to pay Debtor's discharged debt to the Williamses." (Order, p. 11).  There is no evidence of that subjective intent.  It is improper to just assume such intent.  Regardless, that is not the standard.  The court should not inquire into the "psyche" of the debtor to ascertain it motivation. *In re Hudson*, 168 B.R. 368, 370-72 (Bankr. S.D. Ill. 1994).  The courts uniformly apply an objective test, looking solely at whether the creditor influenced or

induced payment. *Venture Bank v Lapides*, 516 B.R. 565, 570 (D. Minn. 2014), *aff'd*, 800 F.3d 442 (8th Cir. 2015); *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1023 (8th Cir.2002)(debtors voluntarily executed second lease and agreed to roll excess usage charges into lease of second vehicle).

There is no evidence Defendants influenced or induced the payment. In fact, Defendants fought the redemption from the beginning. (Exs. 9 and 10). It is simply undisputed the Estate voluntarily filed the petition for redemption and paid the money into the court's registry, even procuring a court order to permit the payment. (Ex. 7). If that was not enough, the Plaintiffs admitted in the deemed requests for admissions: **(a) "the filing of the Redemption in the Otero County District was voluntary (No. 26) and (b) "the Estate's actions were voluntary and the Estate was not forced to redeem the real property" (No. 27).** (Exs. 27-28). Those admissions "conclusively establish" the issue. Fed. R. Civ. P. 36(b). That ends this case. *In re Strotkamp*, 2001 WL 34674679, at *3 (loan payments voluntary based on stipulated facts); *In re Paglia*, 302 B.R. 162 (Bankr. W.D. Pa. 2003) (creditor did not violate injunction where debtor executed new note on discharged debt to try to avoid collection on mother's annuity, which was "fair game").

Because the Estate unconditionally tendered the sums into the court registry, Plaintiffs have no right to return of those monies. Their sole right would have been to demand a hearing on the certificate of redemption and then follow through with payment of the ordered sums and procure the certificate, subject to re-foreclosure. Because Defendants elected not to proceed with issuance of the redemption certificate and re-foreclosure, the deposited sums were properly treated as voluntary payment to the purchasers.

The redemptioner pays his money "at his peril." *First State Bank of Taos v. Wheatcroft*, 1931-NMSC-047, ¶ 18, 36 N.M. 88. Notably, Plaintiffs got what they paid for. A right of redemption does not guaranty the debtor gets the property back free of any liens. *Chapel v. Nevitt*, 2009-NMCA-017, ¶ 41, 145 N.M. 674. Instead redemption serves two primary functions: (1) To provide the debtor time to procure financing to try to reclaim the property; and (2) to help increase the price at the foreclosure sale. *Brown*, 2004-NMCA-040, ¶ 26-27. Plaintiffs accomplished both of those objectives with the redemption. This Court previously characterized

the redemption right "akin to an option to purchase real estate." *In re Van Winkle*, 2017 WL 562430, at *7. In fact, Plaintiffs had equitable title and right to possession during the redemption period. Plaintiffs tied up the property for over four (4) years. They cannot be permitted to speculate the property would appreciate substantially in value and/or that they could procure favorable court rulings (in bankruptcy or this court) and then choose not to proceed – to the detriment of the purchaser and/or creditor. The deposited sums belonged to the Williamses as purchasers under New Mexico law and were already accounted for in the State Court's prior order dated July 28, 2014, reducing the creditor's deficiency amount to $271,905.61, plus interest.

In *Brown*, the court noted, "If a foreclosure price is inordinately low, the debtor can redeem and prevent the lender from gaining an unjust windfall, while still remaining obligated to pay the balance of his or her debt." *Id.*, ¶ 27. If Plaintiffs wanted to proceed with their redemption and assure a higher sales price, they could have done so. They did not. The tender of the redemption funds was final and irrevocable.

Moreover, the fact that the Estate or Sprague would not have paid the monies if they could have foretold the future and known the BAP would deny their claim and the state court would award the monies to the purchasers is irrelevant. "[T]o the extent the debtors' repayment was motivated by a mistaken belief formed independently of action by the [creditor], it may be said to be voluntary within the meaning of § 524(f). *In re Hudson*, 168 B.R. 368, 372 (Bankr. S.D. Ill. 1994) (holding payments by debtors under mistaken belief was still voluntary); *In re Strotkamp*, WL 34674679, at *4 (objective test and mistake by debtor would not excuse voluntary payment); *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1024 (8th Cir. 2002)(same).

This Court concluded, "Had Debtor's estate redeemed the Property, the Williamses could have collected the Redemption Funds, conveyed the Property to the estate, and then re-foreclosed on the Property, per the 2018 BAP decision." (Order, p. 11). The only reason that outcome did not occur was because the Estate voluntarily chose to forfeit the redemption process (and the fund) by not continuing. (Ex. 19, ¶¶ 3-4). That voluntary decision by the debtor cannot be manipulated into a violation of the discharge injunction. *In re*

*Bates*, 270 B.R. 455, 463–64 (Bankr. N.D. Ill. 2001) (holding owner has no personal obligation to pay redemption amount, "but the consequence of nonpayment is loss of the landowner's property").

### b. No Personal Liability of the Debtor Was Involved.

To violate the discharge injunction under § 524(a)(2), the creditor must seek recovery "*as a personal liability of the debtor.*" *In re Van Winkle*, 583 B.R. at 770 (quoting 11 U.S.C. § 524(a)(2)). "[T]he debtor must "prove not merely that [the creditor's] act is not what it appears to be, but that the act in question is one to collect a discharged debt *in personam.*" *Paul*, 534 F.3d at 1308. Plaintiffs cannot satisfy that burden.

The discharge injunction does not prevent a creditor from collecting on collateral securing the claim. *Johnson*, 501 U.S. 78, 84 ("[A] bankruptcy discharge extinguishe[s] only one mode of enforcing a claim— namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor in rem"); *In re Paul*, 534 F.3d at 1309 n.6. "Thus, a creditor may obtain *in rem* relief without violating the discharge injunction." *In re Fontaine*, 603 B.R. 94, 113 (Bankr. D.N.M. 2019); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986). That "in rem" relief includes all rights to payment from proceeds from the foreclosure. *Johnson,* 501 U.S. at 84; *In re Perma Pac. Properties*, 983 F.2d 964, 966 (10th Cir. 1992); *In re Williams*, 490 B.R. 236, 239 (Bankr. W.D. Ky. 2013)(creditor retains a liquidation preference from proceeds).

A judgment imposing obligations on persons is "*in personam*"; a judgment affecting interests in property is "*in rem.*" *Hanson v. Denckla*, 357 U.S. 235, 246, 78 S. Ct. 1228 (1958). When a court is deciding ownership of property in its control, it is "*in rem.*" 16 Tex. Jur. 3d Courts § 66. "**If jurisdiction is based on the court's power over property within its territory, the action is called '*in rem*' or '*quasi in rem*.**' The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner...." *Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S. Ct. 2569 (1977); *In re Macintyre*, 2020 WL 1651619, at *5 (stating rule and concluding creditor had objectively reasonable belief to request attorneys' fees be added to *in rem judgment*). Money deposited in the court's registry is *in rem. Maizel, Setoff and Recoupment in Bankruptcy,* 753 PLI/Comm 733, 839 (1997) ("Discharge of the debtor does

17

not eradicate *in rem* liability which may exist against assets, including monies*").* In fact, as proven in the Motion to Dismiss (p. 6), the state court had exclusive, "in rem" prior jurisdiction of the Redemption Funds.

According to our Supreme Court, upon discharge, the lien creditor retains an *in* rem claim, which includes the "right to payment in the form of its rights to the proceeds" in the foreclosure. *Johnson*, 501 U.S. at 84. The Redemption funds were proceeds in the foreclosure. The funds were tendered into the court's registry as part of the *in rem* proceeding and never became the personal liability of the debtor. *Miner v. Smith*, 53 Vt. 551, 552 (1881) (holding suit on equity of redemption was an *in rem* proceeding and did not involve the personal liability of the debtor). An action is, by definition, "*in rem*" when the funds are deposited into the registry of the court. *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 57 (10th Cir. 1977). "The court holds the property and the claimants compete in an effort to have it awarded." Id. It is *in rem*.

In August of 2019, the Tenth Circuit BAP reaffirmed that "an act taken *in rem* to enforce a prepetition lien against collateral in which the debtor has an interest is not enjoined by the discharge injunction." *In re Bednar*, No. AP 18-01096, 2019 WL 3928844, at *9 (B.A.P. 10th Cir. Aug. 20, 2019). In that case, the debtor creatively argued that "credit bidding up" the collateral somehow converted the case into an *in personam* action. The BAP disagreed. The Court explained:

> [T]he discharge injunction does not constitute a blanket prohibition against all actions undertaken by creditors after the entry of discharge. Actions to collect against the debtor personally are enjoined. In contrast, *in rem* actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction.

*In re Bednar*, 2019 WL 3928844, at *9 (quoting *In re Jester*, 2015 WL 6389290, at *5).

Plaintiffs took a calculated risk to redeem the property by payment AFTER the discharge. The state court could have ruled the funds must be paid to the creditor. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773 (1992)("Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor."). However, Judge Counts determined that, by statute and case law, those funds belonged to the purchasers (not the creditors). (See Ex. 31, which cites the law). No "personal liability" was involved. The suit remained an *in rem* proceeding, with the *res* being the real estate and redemption funds.

In fact, the Estate irrevocably relinquished title when it deposited the funds with the court. The funds were "*in custodial legis*," meaning "in the custody of the law." Black's Law Dictionary 885 (10th ed. 2014); *Nelson v. Furrer*, 373 Wis. 2d 766, 895 N.W.2d 855 (2017). The placement of property *in custodia legis* divests those who would otherwise own such property of title. *Davis v. Cox*, 356 F.3d 76, 94 (1st Cir.2004). Once property is placed *in custodia legis*, "the possession of such property could not be interfered with, without the consent of the court." *Historical Soc. of N.M. v. Montoya*, 1964-NMSC-132, ¶ 11, 393 P.2d 21, 25–26. At that point, the funds served as collateral and became the *res* in the *in rem* proceeding. *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 57 (10th Cir. 1977) (noting an action where the res is delivered to the registry of the court is an "*in rem*" action). No personal liability of the debtor was ever involved. *In re Isaacs*, 895 F.3d 904, 913 (6th Cir. 2018)("When a creditor forecloses on a lien, the debtor's personal liability is not at stake").

In *In re Paul*, 534 F.3d at 1308, the 10th Circuit noted "one would need very damning evidence indeed to justify a finding ... that [the creditor] was attempting not merely to enforce its *in rem* rights but also, or instead, to obtain payment from [the debtor] *in personam* on the prepetition debt." The Tenth Circuit quoted *In re Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007)*:* "[A]t worst, [the creditor] was enforcing the *in rem* rights incorrectly. But the rights being enforced were still rights ... outside the scope of the discharge." *Id*.

*Schlichtmann* was an escrow case, and the *res* was the escrowed funds. That is our case. Simply because the creditors hold lien rights against the debtor does not change the fact that the purchasers of the property held *in rem* rights to the escrow funds, which the State Court awarded. In fact, even if the state court awarded those funds to the Williamses as "creditors" as opposed to purchasers, would not change the outcome. The *Schlichtmann* Court stated:

> Debts that arose after the bankruptcy filing, even to creditors owed prepetition debts, were not affected by [the discharge]." ...
>
> The discharge prohibits prepetition creditors only from collecting their prepetition debts. It is not lifelong shield against other acts—including demands, threats, assertions of claims, and litigation—by those same creditors, even where these other acts are undertaken wrongfully and in bad faith. If an act is not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, ***even though undertaken by the holder of a discharged debt***. 37 B.R. at 97

### c. Only Third Party Assets Are Involved.

Section 524 expressly provides "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The discharge injunction does not apply to non-debtors and a creditor may not be enjoined from actions to collect funds of or assets of non-debtors. *In re Christian*, 180 B.R. 548 (Bkrtcy.E.D.Mo.1995); *In re Czuba*, 146 B.R. 225 (Bkrtcy.D.Minn.1992). "Although § 524(a)(2) prohibits actions brought to collect a discharged debt from the debtor, it permits suits—even those brought to collect on debts a debtor has discharged—that formally name the debtor as a defendant but are brought to collect from a third party." *In re Paul*, 534 F.3d at 1303.

Specifically, the discharge injunction does not preclude a determination of the debtor's liability in order to allow the claimant to access indemnification or payment from a third party or a "fund." *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 995 (N.D.111.1994), *affirmed* 40 F.3d 175 (7th Cir. 1994); *In re Walker*, 927 F.2d 1138 (10th Cir. 1991)(suit against debtor to establish right to recover under fund); *Shade v. Fasse (In re Fasse)*, 40 B.R. 198, 200 (Bankr.D.Colo.1984) (same). The redemption monies were such a "fund."

In fact, only third-party assets were involved. The bankruptcy discharge was in 2013. In April of 2015, this Court deemed the redemption abandoned and "removed [it] from the Debtor's bankruptcy estate." (Ex. 5). On April 21, 2015, the Estate procured the Order authorizing the Estate to tender into the court's registry the "amount of money necessary to redeem that real estate...." (Exhibit 7). Even if the redemption was part of the Estate (which it was not), the redemption funds certainly were not.

Moreover, the Estate procured the Redemption Funds from a third-party. Plaintiffs have not produced any loan papers or proof the Estate was obligated to return the funds. The parties affiliated with the Estate simply invested the money on hopes of a good return. Without evidence the Estate is in debt or obligated to return the funds, there is insufficient proof to determine the Estate had a legal interest in the funds. Even if the funds were bankruptcy assets at some point, however, they certainly were not at the time of judgment. In the Assignment, Exhibit 33, pp. 4-5, the Estate transferred the rights in the redemption and the redemption

funds to the Plaintiffs, individually. That assignment is dated August 17, 2018. The State Court entered its July 2019 Order and August 2019 Judgment in **2019**. (Ex. 19). There is no way those assets could have been estate assets in 2019. Defendants cannot be held liable for collecting assets of third-parties.

### d. No Pre-Petition Debt Was Involved.

Finally, the discharge injunction applies only to debts that arose pre-petition. *In re Schlichtmann*, 375 B.R. at 96. "**Debts that arose after the bankruptcy filing, even to creditors owed prepetition debts, were not affected by it**." *Id*. (holding creditor's tort claim that arose post-petition not affected).

This case concerns the terms of the redemption. It does not involve any "debt," *per se*. The tender of the funds into the state court's registry did not create a "debt." It created a fund in a purely *in rem* proceeding. Chronologically, the exercise of the redemption and deposit of the Redemption Funds -- which created the fund -- all occurred after the bankruptcy. Accordingly, even if one could characterize it as a "debt," it is not a pre-petition debt. Because only a post-petition debt, if any, is involved, summary judgment against Defendants is improper. *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 21 (1st Cir. 2002) (holding creditors did not violate discharge by accepting payment in redemption agreements executed post-discharge

A discharge injunction does not preclude collection for a debtor's post-petition use of the property. *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360 (9th Cir. 1994); *In re Barker*, 301 B.R. 892 (Bankr. D. Colo. 2003)(holding where property abandoned back to debtor, debtors still responsible for any capital gain tax exposure due to foreclosure). According to Section 727(b), the protection is only from "debts that arose before the date of the order for relief." *In re Neier*, 45 B.R. 740, 743 (Bankr. N.D. Ohio 1985) (holding acts were post-discharge and not subject to discharge). The court in *Neier* noted, "Somewhere the plaintiff has lost sight of the fact that a fresh start begins after the petition is filed, not at some arbitrary date selected by the debtor when he decides to get serious." Id. at 743. "It does not act as an injunction against a plaintiff asserting a claim for a debt incurred, **or cause of action that arose**, after the date of bankruptcy discharge." *Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006). To the extent the Williamses acted as

creditors at all (which is disputed, since they were "purchasers"), the claim arose post-petition. Every single fact related to the redemption – including acquisition, exercise, payment, withdrawal of the request for certificate of redemption and the Final Judgment – occurred post-petition. Those actions created the cause of action. Those claims cannot support a discharge violation. *See e.g., Hedges v. Resolution Trust Corp.*, 32 F.3d 1360 (9th Cir. 1994) (injunction did not preclude collection for debtor's post-petition property use).

The Final Judgment reads: "The Clerk is hereby ordered to disburse to Plaintiffs **John H. Williams and Ellen B. Williams** the Deposited Sums ($73,200.94)...." (Ex. 9, p. 3). The Williamses were the purchasers at the foreclosure sale. Their claims or causes of action to recover the redemption funds as purchasers could, by definition, only arise after the foreclosure, which occurred in 2014 -- post-petition. (Ex. 34). Belleview was a creditor of the Estate, but only the Williams purchased the property at the foreclosure sale. The Williams were entitled to the redemption funds – not as a result of being creditors of the Estate – but because they purchased the property at the foreclosure sale. The Estate received a full credit for the payment by the purchaser Williams upon confirmation of the foreclosure sale. (Ex. 34). That is not a violation.

Attached as Exhibit 31 are relevant pages of Defendants' Amended Motion to Distribute Redemption Sums and Enter Final Judgment (the "*Motion to Distribute*"). That Motion to Distribute expressly argued and cited the law supporting the conclusion that, "The purchaser at the foreclosure sale is indisputably entitled to receive the redemption funds." (Ex. 31, p. 8); *In re LaMont*, 740 F.3d 397, 407–08 (7th Cir. 2014)(citing numerous cases). Judge Counts adopted that finding and awarded the redemption funds to the purchasers, Mr. and Mrs. Williams. Judge Counts' Final Judgment expressly states, "Plaintiff's Motion is Granted for the reasons stated therein." (Ex. 19, ¶ A). This Court is not at liberty to ignore that language. In fact, Judge Counts' ruling was correct. This Court should not revisit that finding. *In re Hopp*, 606 B.R. 889, 899 (Bankr. D. Colo. 2019)(bankruptcy court may not re-visit ruling of state court on non-dischargeability under guise of injunction). If it is inclined to do so, however, the case law is overwhelming in support of Defendants.

New Mexico law clearly holds a redemption under Subsection (B) is effectuated by (1) filing of the Petition and (2) tender of the redemption funds. *Nationstar Mortgage LLC v. Chenoweth*, 2018 WL 2213641 (N.M. App., April 2, 2018) (unpublished opinion); *Chapel*, 2009-NMCA-017, ¶ 27 (holding "if the debtor chooses to redeem under subsection (A)(2) and not pay the purchaser directly… the debtor must (1) petition the district court and (2) deposit a sum of money in the court registry within nine months from the date of sale"). Upon substantial compliance with those two requirements, the redemption is effectuated and the debtor is entitled to a hearing setting the final redemption amount, including interest from the date of sale, taxes, etc. *Chapel*, ¶ 27, 36. The Estate filed its Petition and deposited the funds in April 2015. (Exs. 13 & 14). That effected the redemption. "**The statute does not require any further action for a party to redeem**." *Nationstar*, 2018 WL 2213641. Plaintiffs could have proceeded with their redemption and procured the property – subject to re-foreclosure as order by the BAP. However, they expressly chose not to do so. (Ex. 19, p. 2-3). The Trial Court ruled that, by withdrawing their request for a certificate of redemption, Plaintiffs forfeited their right to regain possession and legal title of the property. (Ex. 19, ¶ 5).

The Plaintiffs presumably forfeited their redemption request to avoid paying additional fees, taxes and interest. However, that did not revoke the payment. "The right to redeem foreclosed property merely protects the debtor's right to try to … regain possession of the property." *Chapel*, ¶ 41. "The general rule at common law and under some statutes is that a party pays money into court on a tender at their peril, and the tenderer cannot ordinarily withdraw it." 86 C.J.S. § 47. Monies tendered into the registry of the court "pass irrevocably to his adversary." *Weinchel v. Adamic*, 125 Colo. 235, 242 P.2d 219 (1952); *Mann v. Sprout*, 185 N.Y. 109, 77 N.E. 1018, 1019 (N.Y. Ct. App. 1906). "The payment into the court is then deemed as acceptance by the plaintiff of the amount tendered." Id. Notably, whether that is the law, that is how Judge Counts ruled.

Defendants previously accepted the tendered deposit in their Response to Petition for Redemption in May of 2015, and then again confirmed acceptance of the redemption payment in the Court's registry in their Amended Motion filed on July 24, 2019. (Ex. 31, p. 7). Whether Defendants had "accepted" the tender or not,

the Plaintiffs simply lacked any claim to the redemption sums. Because the redemption sums were paid unconditionally into the Court's registry, those sums were required to be **paid to the purchasers** at the foreclosure sale. *In re LaMont*, 740 F.3d 397, 407–08 (7th Cir. 2014)(citing numerous cases).

In New Mexico, the debtor may not "condition" a redemption. *Chapel*, ¶¶ 41-43; *Brown*, 2004-NMCA-040; *Union Esperanza Mining Co. v. Shandon Mining Co.*, 18 N.M. 153, 135 P. 78 (N.M. 1913). Because Plaintiffs lost in the BAP and presumably did not desire to pay the additional sums the trial court would have ordered owing to procure the redemption certificate, the Plaintiffs elected to withdrew their request for issuance of a certificate of redemption. That forfeited their right to regain legal title to the real property. However, that withdrawal could not convert their unconditional tender.

The redemptioner takes a "calculated risk" and pays his money "at his peril." *First State Bank of Taos v. Wheatcroft*, 1931-NMSC-047, ¶ 18, 36 N.M. 88; *FarmPro Servs., Inc. v. Finneman*, 2016 S.D. 72, ¶¶ 14-19, 887 N.W.2d 72, 77–79. A redemption "is to be considered as a payment for the mortgage or sale which is redeemed." 59A C.J.S. Mortgages § 1507. The purchaser has an "absolute interest" in and "right to payment" from the money paid on redemption. *In re Gonzalez*, 550 B.R. 711, 717 (Bankr. E.D. Pa. 2016); *In re LaMont*, 740 F.3d at 407–08 ("right to payment from the money paid to redeem the property"); *In re Hammond*, 420 B.R. 633, 635 (Bankr. W.D. Pa. 2009) ("The purchaser's only absolute interest in the property until the redemption period expires is to receive the money paid on redemption."). "[O]ne who makes a voluntary payment to another has no right to restitution." *Cheesecake Factory*, 1998-NMCA-120, ¶ 6.

Whether any of the above arguments are true or not, it is indisputable that there was "**fair ground of doubt**." *Taggart*. This Court cannot grant judgment on liability if it is even debatable. *Taggart*. To rule against Defendants on liability, this court must find all of the above arguments are frivolous. Clearly, they are not. Otherwise, this Court would never have sent the parties back to the state court to complete the case.

**WHEREFORE**, the proposed summary judgment for the Plaintiffs should **not** be granted. Instead, this Court should grant summary judgment for Defendants.

**Martin, Dugan & Martin**

By_____
        W. T. Martin, Jr.
        Kenneth D. Dugan
        509 W. Pierce St.
        P.O. Box 2168
        Carlsbad, NM 88221-2168
        (575) 887-3528
        Fax (575) 887-2136
        e-mail: martinlaw@zianet.com
        Attorneys for BVL & Williams

## CERTIFICATE OF SERVICE

I, W.T. Martin, Jr., certify that on March 26, 2021, I served copies of the foregoing pleading on opposing counsel of record by way of CM/ECF and e-mail:

Joel Alan Gaffney, 6565 Americas Pkway, Suite 200, Albuquerque, NM 87110 - Phone (505) 563-5508; e-mail is: joell@gaffneylaw.com

**Martin, Dugan & Martin**

By_____
        W. T. Martin, Jr.