FILED
12th JUDICIAL DISTRICT COURT
Otero County
7/24/2019 3:55 PM
KATINA WATSON
CLERK OF THE COURT
Sven Michael Sears

# TWELFTH JUDICIAL DISTRICT COURT
# COUNTY OF OTERO
# STATE OF NEW MEXICO

BELLEVIEW VALLEY LAND CO, a New Mexico corporation, )
and **John Williams** and **Ellen B. Williams**, husband )
and wife, )
                                                      Plaintiffs, )    No. CV-2010-01054

vs.

THE ESTATE OF FRED VAN WINKLE, deceased, )
                                                      Defendant. )

## PLAINTIFFS' AMENDED MOTION TO DISTRIBUTE REDEMPTION SUMS AND ENTER FINAL JUDGMENT

**Martin, Dugan & Martin**
W. T. Martin, Jr. & Kenneth D. Dugan
509 W. Pierce St.
P.O. Box 2168
Carlsbad, NM 88221-2168
(575) 887-3528
Fax (575) 887-2136
e-mail: martinlaw@zianet.com



**COME NOW Belleview Valley Land Co. ("BVL"), John Williams** and **Ellen B. Williams** *(collectively "Plaintiffs")*, by and through their attorneys, W. T. Martin, Jr., and Kenneth D. Dugan, of Martin, Dugan & Martin, and for Motion to Distribute Redemption Sums and Enter Final Judgment against the **Estate of Fred Van Winkle** and personal representative **Tammy Sprague** (collectively, *"Defendants"*) and state:

## I. SUMMARY OF MOTION

On July 19, 2019, this Court ordered Defendants to elect whether they will proceed with or withdraw the request for a certificate of redemption. This Court subsequently set August 9, 2019, as the date of final hearing. Plaintiffs anticipate Defendants will elect to withdraw their request for a certificate of redemption. In that event, the sole remaining issue will be release of the monies in the court's registry. In anticipation of Defendants' election, Plaintiffs file this motion requesting release to Plaintiffs of the monies in the Court's registry. Plaintiffs seek to assure Defendants have 15 days to file a response to this Motion, and therefore file it now, even before the election. If, on some outside chance, Defendants elect to proceed with the redemption, this Court may simply proceed in the August 9 hearing to set the final redemption amounts and enter an order conditioning the redemption on paying the additional funds and then ordering the property re-foreclosed and re-sold under the same prior terms. Again, it is highly unlikely that will be the outcome.

Plaintiffs file this "amended" motion to correct various errors in the original motion, to reference additional case authority recently located, and to make clear that Plaintiffs seek, above all else, to protect their right to maintain possession and legal title to the real property at issue.

## II. FACTUAL BACKGROUND

1. In August 2010, Plaintiffs obtained judgment against Fred Van Winkle in the amount of $243,944.31.

1

2. Following a foreclosure action, on May 22, 2014, Plaintiffs obtained judgment in foreclosure in this Court for $333,817.73 (plus continuing interest and possible attorneys' fees).

3. The subject property was then sold at a special master's sale.

4. Plaintiffs bid $67,000.00 at the special master's sale. That was the high (and only) bid, and Plaintiffs took title to the property by Special Master's Deed.

5. The Special Master's Report confirms the distribution of the $67,000.00 proceeds as follows:

   a. Special Master's Fee: $200.00;

   b. Publication Costs: $698.01;

   c. Attorneys' Fees and Costs: $23,758.48; and

   d. Plaintiffs: $42,343.51

   The Special Master confirmed the remaining deficiency was $271,905.61.

6. On July 28, 2014, this Court issued its Amended Order Approving Special Master's Report & Granting Deficiency Judgment, which order confirmed the sale and granted Plaintiffs a continuing *in rem* deficiency judgment on the Property in the amount of $271,905.61, plus interest.

7. Defendants did not appeal that Order, and therefore, waived any objections.

8. On August 8, 2014, Plaintiffs recorded their transcript of judgment with the Otero County Clerk, again perfecting their judgment lien on the Defendants' property in the amount of $271,905.61, plus interest.

9. On April 20, 2015, and within nine (9) months of the judgment, Defendant Estate of Fred Van Winkle filed its Petition for Redemption herein, demanding redemption of the property and seeking approval for payment of $73,200.94 into the Court's registry.

10. On April 21, 2015, this Court issued the order authorizing deposit of those redemption funds into the court registry.

11. Defendant Estate of Fred Van Winkle subsequently deposited $73,200.94 into the registry.

12. Plaintiffs now request disbursement of those sums to Plaintiffs.

13. Alternatively, Plaintiffs request payment to them of all owing sums prior to issuance of a Certificate of Redemption and conditioned on re-foreclosure and re-sale of the Property.

### III. MOTION FOR DISBURSEMENT, ACCOUNTING AND FINAL JUDGMENT

Regardless of which election Defendants may make, Plaintiffs are entitled to recover the redemption sums paid into the Court's registry and title to the Property.

A. <u>The Redemption Was Effective and Is Irrevocable.</u>

NMSA Section 39-5-18 provides:

> [T]he real estate may be redeemed by the former defendant owner of the real estate ...
>
> > (1) by paying to the purchaser, at any time within nine months from the date of sale, the amount paid at the sale, with interest from the date of sale at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser after the date of sale, with interest on the taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; OR
> >
> > (2) by filing a petition for redemption in the pending foreclosure case in the district court in which the order, judgment or decree of foreclosure was entered and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of that district court, at any time within nine months from the date of sale.

§39-5-18 NMSA 1978. That statute provides two methods of redemption.

"Succinctly stated, the right of redemption may be exercised by either: (1) paying to the foreclosure sale purchaser the purchase price of the real property, plus statutory interest and taxes; **or** (2) by filing a petition for redemption in the district court and depositing the foreclosure purchase price plus statutory interest and taxes in the court registry. Section 39–5–18(A). ... **The statute does not require any further action for a party to redeem**." Nationstar Mortgage LLC v. Chenoweth, 2018 WL 2213641 (N.M. App., April 2, 2018) (unpublished opinion) (emphasis added); Chapel v. Nevitt, 2009-NMCA-017, ¶ 27, 145 N.M. 674 (holding there are two methods of redemption, and "if the debtor chooses to redeem under subsection

3

(A)(2) and not pay the purchaser directly... the debtor must (1) petition the district court and (2) deposit a sum of money in the court registry within nine months from the date of sale"). Defendants opted to redeem under subsection (A)(2): i.e., filing a petition for redemption and depositing the stated sums. That filing and payment exercised the redemption as a matter of law. Nationstar; Chapel.

New Mexico courts have held that, "a sufficient tender made at the proper time and by the proper person, will always work a redemption." Jaynes v. Heron, 1942-NMSC-038, ¶32-34, 46 N.M. 431; Gammill v. Mann, 1937-NMSC-065, ¶ 8-10 (holding sufficient tender "will ipso facto work a redemption"). Defendants filed their petition to redeem and then procured court approval to tender the required redemption deposit. On April 21, 2015, this Court entered Defendants' requested Order Authorizing Deposit of Funds in Connection with Redemption of Real Estate. Defendants then deposited $73,200.94 into the Court's registry, as the amount necessary to redeem the real estate as of April 20, 2015. Plaintiffs filed a Response to Petition for Redemption on May 14, 2015, accepting the redemption deposit, and requesting that the Court condition issuance of the redemption certificate upon payment of the final owing amounts and upon re-foreclosure and re-sale of the property. Plaintiffs accept the tender by Defendants as complying with the statute to effectuate a redemption. Plaintiffs merely seek a final ruling on the effects of that redemption, including the rights to the deposit, additional sums owed, and re-foreclosure and re-sale.

Plaintiffs' judicial lien was not fully satisfied by the foreclosure on Fred Van Winkle's land. Defendants' redemption automatically reinstated Plaintiffs' prior judgment lien. Turner v. Les File Drywall, Inc. 1994-NMSC-010, ¶ 5, 117 N.M. 7 ("[O]nce a mortgagor redeems his foreclosed property, the property once again becomes part of the mortgagor's real estate subject to prior judgment liens on the mortgagor's property."); Langhurst v. Langhurst, 1945-NMSC-042, ¶ 8-10, 49 N.M. 329. Plaintiffs have the right to seek satisfaction of their judgment, *in rem*, from the former defendant owner. Id.

In order to regain legal title to the property pursuant to the redemption, the redemptioner must set the matter for hearing and request a certificate of redemption. NMSA § 39-5-19(C). The hearing setting the

4

final redemption amount is mandatory prior to issuance of the certificate of redemption. Chapel, ¶ 26. At the hearing, "the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances." §39-5-18 NMSA 1978. Defendants have not yet paid the full sums owing under that statute, including taxes and interest accruing since 2015, when they redeemed. W. Bank of Las Cruces v. Malooly, 1995-NMCA-044, ¶ 28, 119 N.M. 743 (holding interest accrues on redemption amount through date of final court order approving the redemption and setting the final amount).

If Defendants elect to move forward with issuance of a certificate of redemption, this Court should set the matter for hearing to determine the additional sums that must be tendered for issuance of the certificate. See Id., ¶ 26-32 (permitting court to award additional interest, taxes, insurance payments and other sums to "prevent unjust enrichment"). As stated above, Plaintiffs' judgment lien automatically reinstated. In the event Defendants tender the court-ordered additional payments, Plaintiffs shall be entitled to simultaneous foreclosure of their lien and the property should be placed for sale under the same terms and conditions previously imposed herein. See Chapel v. Nevitt, 2009-NMCA-017, ¶ 36, 145 N.M. 674 (holding at the hearing setting the redemption amount, the court would have issued a certificate of redemption and determined how the deposit was to be disbursed). Accordingly, in the event Defendants elect to continue to redeem the property and request a certificate of redemption, (a) Plaintiffs' judgment lien is reinstated; (b) Plaintiffs should be entitled to simultaneous re-foreclosure of their lien; and (c) the property should be sold under the same terms and conditions previously imposed herein.

Regardless of whether Defendants elect to proceed with the redemption certificate, this Court must decide how to distribute the monies in the registry of the court. Plaintiffs request that the Court disburse Plaintiffs all of the deposited funds. As noted above, Chapel and Nationstar both hold a redemption under Subsection (B) is effectuated by (1) filing of the Petition and (2) tender of the redemption funds. Upon substantial compliance with those two requirements, the redemption is effectuated and the debtor is entitled

5

to a hearing setting the final redemption amount, including interest from the date of sale, taxes, etc. Chapel, ¶ 27, 36. Defendants filed their Petition and deposited the funds in April 2015. That effected the redemption. "The statute does not require any further action for a party to redeem." Nationstar Mortgage LLC v. Chenoweth, 2018 WL 2213641.

Defendants presumably will elect to withdraw their redemption request to avoid paying additional fees, interest from the date of sale, taxes, etc. However, that withdrawal does not permit return of the redemption sums. "The right to redeem foreclosed property merely protects the debtor's right to *try* to ... regain possession of the property." Chapel, ¶ 41. By withdrawing their request for a certificate of redemption, Defendants forfeit their right to regain possession and legal title of the property. However, there simply is no method by which Defendants can procure the redemption funds.

"The general rule at common law and under some statutes is that a party pays money into court on a tender at their peril, and the tenderer cannot ordinarily withdraw it." 86 C.J.S. § 47. Monies tendered into the registry of the court "pass irrevocably to his adversary." Weinchel v. Adamic, 125 Colo. 235, 242 P.2d 219 (1952). "[N]ot only does the party paying it into court lose all right to it, but the court itself has no power to make an order in the same action, which, in effect, retransfers the title." Mann v. Sprout, 185 N.Y. 109, 77 N.E. 1018, 1019 (N.Y. Ct. App. 1906). "The payment into the court is then deemed as acceptance by the plaintiff of the amount tendered." Id.

In fact, Plaintiffs previously accepted the tendered deposit in their Response to Petition for Redemption in May of 2015; and hereby again confirm acceptance of the redemption payment in the Court's registry, subject to the Court's determination of additional sums owing under N.M.S.A. § 39-5-18 after the redemption deposit and subject to re-foreclosure and re-sale as already ordered by the Court. See Western Bank of Las Cruces v. Malooly, 1995-NMCA-044, ¶ 28 ("We see no reason why the right of redemption may not be asserted by tendering a sum calculated to the date of tender, even if the trial court subsequently determines additional sums are due.").

6

In the hearing on July 19, 2019, counsel for Defendants expressly admitted in open court the prior Petition for Redemption and tender of sums was "unconditional." The purchaser at the foreclosure sale is indisputably entitled to receive the redemption funds. In re LaMont, 740 F.3d 397, 407–08 (7th Cir. 2014)(citing numerous cases). Because the redemption sums were paid unconditionally into the Court's registry, those sums should be distributed to Plaintiffs, as the purchasers at the foreclosure sale.

In Chapel, the Court of Appeals cited several New Mexico cases expressly concluding that the debtor may not "condition" a redemption. Chapel, ¶¶ 41-43 (citing Brown v. Trujillo, 2004-NMCA-040, 135 N.M. 365 (holding debtor could not "condition" his petition and tender upon the purchaser's execution of a quitclaim deed to the property) and Union Esperanza Mining Co. v. Shandon Mining Co., 18 N.M. 153, 135 P. 78 (N.M. 1913)(holding debtor cannot impose any conditions upon his tender of money pursuant to the redemption statute)). The Chapel court ruled a debtor may not "condition[] his redemption of the property on the district court's assuring that there was a clear title." Chapel, ¶ 43. The Court forbid a redemption that is, "in effect, a conditional offer of redemption." Id.

Because Defendants lost in the bankruptcy court and presumably do not desire to pay any additional sums this court may order owing, Defendants may desire to withdraw their request for issuance of a certificate of redemption. That withdrawal, however, cannot convert their unconditional tender into a conditional tender. That is forbidden under Brown, Union and Chapel.

Thus, it is Plaintiffs' position that this Court has no choice but to order the redemption sums paid over to Plaintiffs. In theory, Plaintiffs could insist on the conclusion of the redemption and payment of the additional sums owing under the statute. If Defendants elect to withdraw their certificate of redemption, however, Plaintiffs are satisfied with a final judgment in Plaintiffs' favor tendering the redemption deposit to Plaintiffs, refusing the redemption certificate, quieting title to the property exclusively in Plaintiffs and setting the final deficiency amount.

7

### B. Defendants Took a Calculated Risk and May Not Rescind That Gamble

As noted above, New Mexico makes no provision for a redemptioner to procure return of tendered redemption funds. The redemptioner pays his money "at his peril." First State Bank of Taos v. Wheatcroft, 1931-NMSC-047, ¶ 18, 36 N.M. 88 (holding redemptioner who paid wrong party redemption did so "at his peril"). A redemption "is to be considered as a payment for the mortgage or sale which is redeemed." 59A C.J.S. Mortgages § 1507. The purchaser has an "absolute interest" in the money paid on redemption. In re Gonzalez, 550 B.R. 711, 717 (Bankr. E.D. Pa. 2016); In re LaMont, 740 F.3d 397, 407–08 (7th Cir. 2014)(holding, "purchaser has a right to payment from the money paid to redeem the property"); In re Hammond, 420 B.R. 633, 635 (Bankr. W.D. Pa. 2009) ("The purchaser's only absolute interest in the property until the redemption period expires is to receive the money paid on redemption."). A debtor takes a "calculated risk" in depositing sums into the court registry for a redemption and is <u>not</u> entitled to restitution simply because the tender does not result in clear title to the property. FarmPro Servs., Inc. v. Finneman, 2016 S.D. 72, ¶¶ 14-19, 887 N.W.2d 72, 77–79.

"[O]ne who makes a voluntary payment to another has no right to restitution." Cheesecake Factory, Inc. v. Baines, 1998-NMCA-120, ¶ 6, 125 N.M. 622. Because Defendants voluntarily and unconditionally tendered the redemption sums into the court registry, they simply have no right to return of those monies. Their sole right would be to demand a hearing on the certificate of redemption and then follow through with payment of the ordered sums and procure the certificate, subject to re-foreclosure. If Defendants elect not to proceed with issuance of the redemption certificate and re-foreclosure, the deposited sums are treated as payment on the lien and/or sale and should be ordered paid over to Plaintiffs.

The alternative would obviously be unacceptable. Defendants have tied up the property for over four (4) years. They cannot be permitted to speculate that the property would appreciate substantially in value and/or that they could procure favorable court rulings (in bankruptcy or this court) and then choose to

8

proceed because it is in their best benefit – to the detriment of the foreclosure purchaser and/or creditor. The statute makes the redemption effective and unconditional upon filing of the Petition and deposit of the required sums. Because nothing else was required, there simply is no way for Defendants to retroactively condition the redemption.

Notably, in this Court's Amended Order issued on July 28, 2014, this Court approved the sale and granted a deficiency judgment, after credit for the sale, in the amount of $271,905.61, plus interest. This Court ordered that deficiency judgment was "a lien on the debtor's [the Defendant's] real property" and is "collectible as provided in Chapel v. Nevitt...." (Amended Order, ¶ 6). Defendants did not deposit the redemption funds until 2015. The language in that Order and the citation to Chapel placed Defendants on notice prior to their deposit that this Court not only would order that the deficiency judgment reattaches simultaneous with the sale and any redemption, but that this Court had already ordered the lien reattached. In the face of that knowledge, Defendants still willingly risked losing their deposit by tendering it unconditionally. The Court in Chapel noted an order approving a foreclosure sale is a final order and must be appealed within 30 days, or all objections are waived. Chapel, ¶ 33. Rather than appeal that order (or even contest the order), Defendants began maneuvering outside this Court to usurp Plaintiffs' rights.

First, one day before the foreclosure sale, Defendants executed an Easement Deed for Ingress and Egress across the property in favor of Peter S. Joyce. On October 2, 2014, this Court entered an Order Voiding Deed and Granting Permanent Injunction, essentially nullifying that frivolous deed and transaction.

Second, Defendants sought to exercise the redemption. Defendants first filed a Motion to Compel Trustee's Abandonment of Assets Pursuant to 11 U.SC. § 554, pleading the right of redemption on the Property "is of no potential value to the estate." (Ex. A, ¶ 5). If Defendants believed the redemption had value, that was a misrepresentation to the Court and Plaintiffs. Plaintiffs did not object to that Motion, among other reasons, because this Court had already ordered the lien re-attached, and the redemption

9

right could not overcome the deficiency lien under New Mexico law. But, Defendants tried to usurp this Court's Order and the clear New Mexico law by appealing to the bankruptcy court.

Defendants filed an adversary proceeding in Bankruptcy Court seeking to hold Plaintiffs in contempt for violating the discharge injunction and to invalidate Plaintiff's revived judgment lien. Defendants alleged Plaintiffs' actions in repeated foreclosure of the property post-redemption violated the discharge injunction. The bankruptcy judge initially upheld those arguments and granted sanctions against Plaintiffs. On appeal, however, the Bankruptcy Appellate Panel ("BAP") reversed. The BAP held a "deficiency judgment may become a postredemption lien on real property once properly transcribed." (Ex. B, p. 14). The BAP ruled Plaintiffs did not violate the bankruptcy discharge and the transcribed deficiency judgment remains a valid lien on the Property, which may be foreclosed by Plaintiffs – notwithstanding the redemption. (Ex. B, pp. 14-15).

The Parties then returned to this Court to complete the re-foreclosure. Having lost in the BAP, Defendants now seek to convert their unconditional redemption into a "conditional" redemption, requesting return of the unconditional payment. This, they cannot do. Defendants took a calculated risk and lost.

Plaintiffs incurred hundreds of thousands of dollars in attorneys' fees fighting with Defendants. The bankruptcy adversary proceedings lasted years. Plaintiffs have not been able to sell the Property over the past five years, and it has simply sat vacant and deteriorating. When Defendants exercised their redemption, they had the right to demand possession of the Property. They did not. Instead, they ran to bankruptcy court and tried to nullify this Court's order granting the post-foreclosure judgment lien. Defendants exercised their right of redemption to preserve the right to regain legal title and procure a certificate of redemption. If Defendants now elect to waive their right to legal title and issuance of a certificate of redemption, that will not retroactively convert the unconditional tender. The deposited sums belong to Plaintiffs and have already been accounted for in this Court's prior order dated July 28, 2014, providing for a deficiency amount of $271,905.61, plus interest.

Notably, Defendants got what they bargained for. A right of redemption does not guaranty the debtor gets the property back free of any liens. Chapel, ¶ 41. Instead redemption serves two primary functions: (1) To provide the debtor time to procure financing to try to reclaim the property; and (2) to help increase the price at the foreclosure sale. Brown, 2004-NMCA-040, ¶ 26-27. Defendants accomplished both of those objectives with the redemption. They procured financing from Brian Van Winkle to redeem and they assured they could, if they so chose, force a re-foreclosure and re-sale of the property. In Brown, the court noted, "If a foreclosure price is inordinately low, the debtor can redeem and prevent the lender from gaining an unjust windfall, while still remaining obligated to pay the balance of his or her debt." Id., ¶ 27. In fact, Defendants wanted to get the property and wipe out the debt. That is not the purpose of a redemption. If Defendants would like to proceed with their redemption and assure a higher sales price, they may. But, regardless, the tender of the redemption funds is final and irrevocable.

Accordingly, if Defendants elect to withdraw their request for a certificate of redemption, this Court should order the monies in the Court's registry disbursed to Plaintiffs and render judgment for Plaintiffs declaring title in the Property to remain in the purchaser (Plaintiffs John and Ellen Williams) and confirming the *in rem* judgment deficiency lien of $271,905.61, plus accruing interest and attorneys' fees.

### C. Alternatively, Plaintiffs Should Receive all Owing Sums.

If Defendants elect to proceed with the certificate of redemption, Plaintiffs are entitled to recover the full amounts provided in NMSA § 39-5-18 from Defendants and to re-foreclosure and re-sale of the Property before the certificate is issued.[1] In that event, Plaintiffs plead that issuance of the certificate of redemption be conditioned upon payment by Defendants to Plaintiffs of the following items, the amounts which will be proved at the hearing on August 9, 2019:

---

[1] In fact, Defendants could insist on this remedy, since the redemption was already completed. However, Plaintiffs prefer prompt resolution and completion of this case, which would not occur with a further hearing on the damages. Notably, any judgment should be *in rem* only, to avoid bankruptcy discharge issues.

11

1. The "amount paid, with interest from the date of purchase at the rate of ten percent a year." NMSA § 39-5-18(A)(1); Chapel, ¶ 33. Interest accrues until the date of the final order confirming the redemption was proper and setting the final amount due. Malooly, 1995-NMCA-044, ¶ 28 (holding interest accrues on redemption amount through date of final court order approving the redemption and setting the final amount). Plaintiff paid $67,000 on July 8, 2014. The court confirmed the sale on July 28, 2014. This matter will be heard on August 9, 2019. The interest earned over those five years and thirteen days at 10% per annum is 50.0356%, or $33,523.86. Defendants' deposit of $73,200.94 included interest for 286 days of $5,249.86. Therefore, the owing interest through the date of hearing would be, $28,274.00.

2. "All taxes, interest and penalties thereon" that were paid by the purchaser. NMSA § 39-5-18(A)(1); Chapel, ¶ 34. Plaintiffs will prove this amount at the hearing.

3. "All payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser." NMSA § 39-5-18(A)(1); Chapel, ¶ 35.

4. Payments made to repair and maintain the Property. This court has equitable powers to require restitution to the purchaser for all payments made during the pendency of the redemption, under its statutory authority to issue the certificate of redemption "upon such terms and conditions as it deems just." NMSA § 39-5-18(D). The purchaser is entitled to rents and profits, but must account for waste. NMSA § 39-5-22. Therefore, the purchaser has the obligation to keep-up the property. If the redemption results in loss of title, the purchaser should be compensated for those expenses. W. Bank of Las Cruces v. Malooly, 1995-NMCA-044, ¶¶ 31-33, 119 N.M. 743 (holding court may order repayment of insurance and other costs paid by purchaser as necessary to "prevent unjust enrichment"). Plaintiffs will prove this amount at the hearing, which amount will likely exceed $25,000.

WHEREFORE, Plaintiffs plead that this Court issue a final judgment in accordance with the requests stated above, including particularly

(1) ordering the Court Clerk to distribute the funds in the Court registry to Plaintiffs;

(2) if the request for issuance of the certificate of redemption is withdrawn, entering a final judgment, *in rem*, on the remaining deficiency amount, $271,905.61.

(3) alternatively, if Defendants proceed with the hearing on the final redemption amount, setting the final redemption amounts payable to Plaintiffs and entering an order conditioning issuance of the certificate of redemption upon payment of the full owing amounts and re-ordering foreclosure and re-sale of the Property according to the prior terms of foreclosure and granting all proper and due credits.

(4) Such other relief as may be proper.

Martin, Dugan & Martin

By_____
W.T. Martin, Jr.
Kenneth D. Dugan
P.O. Box 2168
Carlsbad, NM 88221-2168
575-887-3528
575-887-2136 (facsimile)
e-mail: martinlaw@zianet.com
*Attorneys for BVL and the Williams*

13

Martin, Dugan & Martin certifies on the 24th day July, 2019, it filed the foregoing pleading electronically through the State of New Mexico's Odyssey File & Serve system, requesting that opposing counsel of record be served by electronic means, and faxed a copy of the Response to opposing counsel of record.

_____
W.T. Martin, Jr.

**Certificate of Conference**

Ken Dugan spoke with Kyle Moberly numerous times
On the subject of this Motion, but agreement could not be reached.
Defendants will not agree to Plaintiffs receiving the deposit.
Accordingly, this matter must be set for hearing.

_____
Kenneth D. Dugan

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,

Debtor.                                    No. 13-11743-j7

## MOTION TO COMPEL TRUSTEE'S ABANDONMENT OF ASSETS PURSUANT TO 11 U.S.C. §554

Debtor, a party in interest for purposes of this Motion, through undersigned counsel, files this Motion pursuant to 11 U.S.C. §554(b) and Bankruptcy Rule 6007(b) based on the following grounds:

1. Debtor filed for chapter 7 bankruptcy relief on May 21, 2013.

2. The Debtor disclosed his homestead on Schedule A of his schedules and statements.

3. The property is fully exempt and/or subject to liens. There is no equity in the property.

4. The Debtor recently amended schedule B to include a right of redemption which arose post-petition on property foreclosed in Otero County. It is arguable that the right of redemption is not property of the estate; however, Debtor requests that the trustee abandon the property that was subject to the liens including any redemption rights associated with the property. The right of redemption would require that the trustee redeem property with funds that he does not have available.

5. The Assets are burdensome and of no potential value to the estate.

PLAINTIFF'S
EXHIBIT
A

1

6. The Trustee has been contacted and takes no position in regard to this Motion.

WHEREFORE, Debtors respectfully request that the Court enter an Order granting this Motion which would allow the Debtor to enter an Order abandoning the assets.

Respectfully Submitted,

*S/electronically Filed 3.20.15*
R. "Trey" Arvizu, III
Attorney for Debtor
P.O. Box 1479
Las Cruces, NM 88004
(575)527-8600
(575)527-1199 (fax)
trey@arvizulaw.com

I CERTIFY that the foregoing was electronically filed with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on this 20th day of March, 2015,

and mailed via U.S. Mail to all parties listed in the bankruptcy court's mailing matrix.

*S/electronically submitted*

Case 20-01022-t    Doc 40-3    Filed 03/26/21    Entered 03/26/21 12:20:33 Page 17 of 20

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

April 3, 2018

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE FRED DALE VAN WINKLE,<br><br>Debtor. | BAP No. NM-17-031<br>BAP No. NM-17-032<br>BAP No. NM-17-033 |
| TAMMY SPRAGUE, personal representative of the estate of Fred Dale Van Winkle,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>JOHN WILLIAMS, ELLEN B. WILLIAMS, and BELLEVIEW VALLEY LAND CO., INC.,<br><br>Defendant – Appellants. | Bankr. No. 13-11743<br>Chapter 7<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of New Mexico

W.T. Martin, Jr. (Jennie D. Behles, Albuquerque, New Mexico with him on the brief) of Martin, Dugan & Martin, Carlsbad, New Mexico, Attorneys for Defendant – Appellants.

R. "Trey" Arvizu, III Las Cruces, New Mexico, Attorney for Plaintiff – Appellee.

Before **KARLIN**, Chief Judge, **NUGENT**, and **MOSIER**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

John Williams, Ellen Williams, and Belleview Valley Land Co., Inc. (the "Appellants") appeal three bankruptcy court rulings: (1) the *Order Denying*



*Motion to Dismiss for Lack of Jurisdiction*;[1] (2) the *Order Granting Partial Summary Judgment and Denying Other Relief*;[2] and (3) the *Final Judgment*,[3] which ordered Appellants to pay $50,000 in actual and punitive damages. Appellants contend the bankruptcy court erred in denying their motion to dismiss for lack of jurisdiction, failing to certify issues to the New Mexico Supreme Court, finding Appellants violated the discharge injunction and a court order, and awarding compensatory and punitive damages. Because we interpret New Mexico law to allow a judgment lien to reattach upon redemption by the owner of foreclosed property, we reverse the bankruptcy court's finding that Appellants violated the discharge injunction, affirm the finding that Appellants violated a court order, and remand for further findings regarding damages.

I.    Facts

In 2008, Fred Van Winkle (the "Debtor") brought an action against the Appellants to quiet title in Otero County, New Mexico. Appellants counterclaimed and in 2010 ultimately obtained a money judgment against the Debtor for $261,656 (the "Judgment Lien"). Appellants filed transcripts of that judgment in Otero, Roosevelt, and Lincoln Counties, New Mexico because the Debtor owned two tracts in Otero County (one seven acre tract and one thirty acre tract—the "Otero Land"), his residence, a condominium, in Lincoln County (the "Condo"), and a one-half interest in 311 acres in Roosevelt County.

The Debtor filed this Chapter 7 proceeding in May 2013. The Debtor claimed as exempt $60,000 in equity in the Condo under New Mexico's homestead exemption. In Schedule D (Creditors Holding Secured Claims), the

---

[1]    Appellants' App. at 358.

[2]    Appellants' App. at 950.

[3]    Appellants' App. at 1051. Although the Appellants appealed the three orders separately, the Bankruptcy Appellate Panel entered an *Order Joining Appeals* on July 7, 2017. BAP ECF No. 4.

-2-

Debtor listed both the first mortgage on the Condo in the amount of $12,000 in favor of First National Bank of Ruidoso (the "First Mortgage") as well as the Judgment Lien.

In September 2013, soon after receiving his discharge, the Debtor filed a motion to avoid the Judgment Lien on the Condo, seeking to avoid the lien to the extent it impaired the $60,000 homestead exemption allowed by New Mexico law. Appellants objected (as the record reveals they did at almost every turn), stating the obvious—that the Debtor could only exempt the $60,000 sought, and no more. Before the matter could be decided, the Debtor passed away (in April 2014).

The Debtor's daughter, Tammy Sprague, became the personal representative of his probate estate.[4] Sprague and the Appellants entered into a stipulated order resolving the *Motion to Avoid Judicial Lien* (the "Stipulated Order"). It valued the Condo at $100,000 and avoided the Judgment Lien to the extent it impaired the Debtor's $60,000 exemption—capping the Judgment Lien against the Condo to the remainder after payment of the First Mortgage and the $60,000 exemption.

### 1. Foreclosure of the Otero Land

In August 2013, Appellants obtained stay relief to allow them to complete the 2010 action to foreclose the Judgment Lien against the Otero Land. In May 2014, the New Mexico court entered a final judgment of foreclosure; that judgment expressly provided that no *in personam* deficiency could be entered against the Debtor.

The appointed special master conducted a sale of the Otero Land in July 2014. Appellants Ellen and John Williams were the high bidders, credit bidding $67,000 of the Judgment Lien. The special master recorded a deed conveying the Otero Land to the Williamses. Appellants requested the New Mexico court amend

---

[4] Even though the Debtor died in April 2014, we will continue to refer to him as "the Debtor," or as "Sprague," as appropriate for clarity.