# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In Re Fred Dale Van Winkle,
     Debtor,

**Brian Van Winkle** and
**Tammy Sprague,** co-personal representatives
of the estate of **Fred Dale Van Winkle,**
     **Plaintiffs,**

v.

**John Williams, Ellen B. Williams,** and
**Belleview Valley Land Co., Inc.**
     **Defendants.**

Bankr. No. 13-11743 t7
Adv. No 20-1022
Chapter 7

## DEFENDANTS' MOTION TO DISMISS AND SUPPORTING BRIEF FOR LACK OF JURISDICTION

     COME NOW, John Williams, Ellen B. Williams and Belleview Valley Land Co., Inc. *(collectively, "Defendants"),* and file this Motion to Dismiss and Supporting Brief for Lack of Jurisdiction against Plaintiffs **Brian Van Winkle** and **Tammy Sprague** ("*Plaintiffs*") and show:

### I.    SUMMARY OF MOTION

     This Court proposed to grant summary judgment on certain jurisdiction defenses in its recent Order entered on March 5, 2021 ("*Order*"). The Tenth Circuit has said such matters are properly handled by means of a motion to dismiss, rather than summary judgment. *In re Flanders*, 657 F. App'x 808, 822 (10th Cir. 2016). Accordingly, Plaintiffs file this separate Motion to Dismiss. Out of an abundance of caution, Plaintiffs will incorporate the arguments herein into its Response on the summary judgment issues. References to Exhibits 1-29 herein will be to the exhibits attached to Defendants' Motion for Summary Judgment (the "*MSJ*") filed on

October 29, 2020 (Doc. No. 14). References to Exhibits 29-37 shall be to exhibits attached to Defendants' Response to Court's Proposal to Grant Summary Judgment for the Plaintiffs, filed simultaneously herewith.

This Court closed this case on June 18, 2019. Thereafter, Plaintiff Brian Van Winkle ("*Brian*") filed his motions requesting intervention as personal representative for the Estate of Fred Van Winkle (the "*Estate*"), removal and/or stay of the district proceeding. (Ex. 35). This Court denied those Motions. (Ex. 36). In its Order on August 8, 2019, this Court ruled it was "**powerless to grant relief to the movant**." (*Id*., Doc. No. 85). This Court ruled the opinion of the Bankruptcy Appellate Panel ("*BAP*") is "the law of the case" and, "if, as it appears, the state court is simply implementing the ruling of the Bankruptcy Appellate Panel, then it is doing no more than what it is bound to do." (*Id*). Notably, Brian was trying to stop the very rulings that he now contests. If this Court was powerless to prevent the hearings (which it was), this Court certainly lacks power now to contest the rulings from those hearings.

In fact, the issues herein were previously resolved by the BAP. The BAP ruled the redemption right was not an estate asset and the Defendants, in trying to enforce the Deficiency Judgment against the Otero Land, did not commit any "act to collect, recover or offset any such [discharged] debt *as a personal liability of the debtor*." *In re Van Winkle*, 583 B.R. 759, 770. The BAP Opinion italicized those last 7 words. This Court then sent the parties back to the state court to complete the foreclosure and resolve all rights of the parties.

In pursuing their relief in the State Court, the Williamses were merely seeking to "implement the ruling of the Bankruptcy Appellate Panel, [which he] is bound to do." (Ex. 36). The matters Plaintiffs raise are now up on appeal in the New Mexico Court of Appeals. That court has prior and primary jurisdiction of those matters, and the *Rooker-Feldman* and/or *Younger* doctrines preclude jurisdiction herein. The issues are also barred by *res judicata*, which applies during an appeal in New Mexico. This Court should not wrestle jurisdiction away from the New Mexico Court of Appeals. Even if it could, there simply is no relief that could be granted to Plaintiffs, and the suit should be dismissed.

This Court expressly authorized the State Court to complete its proceedings. That state court did not then somehow lack jurisdiction to do exactly what this Court sanctioned and authorized it to do. In *In re Paul*, 534 F.3d 1303, 1308 (10th Cir. 2008), the Tenth Circuit criticized and rejected what this Court proposes to do:

> **Again, if a creditor's conduct in a non-bankruptcy case involves some impropriety or error outside the limited scope of the discharge injunction, the authority to evaluate and, if appropriate, to correct and/or sanction that conduct properly lies with the court hearing that case. The discharge injunction does not make bankruptcy courts overseers of subsequent litigation involving the debtor.**

*Id.* The Court noted a bankruptcy court must never resolve the merits of a state court suit under the guise of the discharge injunction:

> Even when a less direct violation turns on application of the objective-coercion principle, **the bankruptcy court's analysis should not entail resolving the merits of a claim pending in another court**: the question, rather, is whether the objective effect of the claim is to coerce payment of a pre-petition debt. But when a bankruptcy court seeks to answer that question based on an adjudication of the merits of a creditor's claim, **that adjudication should be made by the court hearing the claim**.

*Id.* at 1311.

This Court may not agree with the outcome of the State Court Suit. However, it simply lacks authority to change it, as it recognized when it denied Brian's request for an injunction to stop the State Court from ruling on the redemption funds after the State Court ruled on the Motion for Summary Judgment. (Ex. 36).

## II. SUMMARY OF STATE COURT PROCEEDINGS

A brief procedural history of the state court proceedings may be helpful:

From June 30, 2015 through August 8, 2018, the state court proceedings were stayed pending this Court's review of the discharge injunction challenges to the Defendants' actions in state court. Following the BAP ruling in this case, on August 8, 2018, this Court entered its Order Terminating Automatic Stay. (Ex. 32). **Based on the stipulation of the parties**, this Court terminated the agreed, automatic stay to permit the parties to "complete the state court litigation and have a **final determination** of the rights of the parties vis-à-

vis each other therein." (Exhibit 17). The parties expressly "stipulated," and this Court entered an order, allowing the state court to enter a "final determination of the rights of the parties." (Id.). It is not ambiguous.

Accordingly, the State District Court Judge Counts again resumed the Otero County suit. The Williams then set their Motion for Summary Judgment – which they had filed in 2015 before the BAP Opinion -- for hearing in the state court. The State Judge ruled for Defendants, issuing a minute order, that expressly asked Mr. Dugan to prepare the final, binding order. The parties then battled over the form of the order.

On June 10, 2019, Defendants proposed their form of order to the State Court. (Ex. 29). That Notice of Presentment identified for the Court that the "primary dispute centers on the scope of the ruling by the court as it will or may affect the withdrawal and/or distribution of the funds deposited in the Registry of the Court." (Ex. 29, p. 2). Defendants requested the court to enter an order that stated redemption is complete solely upon filing the petition and tendering the initial required amount. (Ex. 29, p. 3). Defendants proposed a two-step process, where the Court would require Sprague to make an election, and based on that election, the Court would rule on the disposition of the redemption funds. (Id., p. 3).

Sprague disagreed. Sprague filed the Estate's response on June 18, 2019. (Ex. 30). Sprague proposed an order that would expressly recognize her right to "withdraw her petition for redemption of the Property." (Ex. 30, Exhibit B, ¶3). The Estate's order further proposed that, if Sprague chose to withdraw her petition, "the clerk of this Court is hereby ordered to disburse to Defendant the funds that she deposited with the clerk." (Id.). Accordingly, the primary dispute was whether Sprague could withdraw her Petition and recover the deposited sums or could only withdraw her request for issuance of the certificate of redemption, thus forfeiting her right to the redemption funds.

The Court then held a presentment hearing on July 19, 2019, where both sides argued their respective orders. The Court rejected Plaintiffs' proposed order. Instead, the Court entered an order that only allowed Sprague to withdraw her request for issuance of the certificate of redemption, not the Petition. (See Ex. 19, ¶ 3). Judge Counts provided the Estate time to make an election, request the final hearing and pay the

additional owing sums. (Id., ¶ 3-4). The Court decided not to resolve the issue of the right to the deposited sums, without further "motion, briefing and hearing." (Id. ¶ 2). Judge Counts ruled the Estate "opted to redeem ... [by] filing a petition for redemption and depositing the stated sums." (Id., ¶ C). He did not give Sprague the option of withdrawing the Petition. Instead, Judge Counts gave Sprague the option of either requesting issuance of the certificate of redemption (and pay the additional sums owing under the statute) or withdrawing that request. (Id. ¶ 3). Judge Counts ruled that, following that election and further motion, he would then decide disposition of the redemption funds based on that election. (Id. 2-4).

Subsequently, Defendants filed their Amended Motion to Distribute Redemption Sums and Enter Final Judgment. (Ex. 31). The Estate filed no response to the Motion to Distribute. The Estate chose not to pay the additional sums and, instead, to forfeit its right to issuance of the certificate of redemption – which would have conferred legal title to Sprague. (Ex. 19, ¶ 3-4). Judge Counts then held another hearing on the disposition of the redemption funds on August 9, 2019. Judge Courts rejected Sprague's claim that she could withdraw the petition. It was too late to withdraw the redemption, itself. He ruled, "Defendant subsequently redeemed the Property at issue by filing a petition and depositing the state sums." (Id. ¶ 2). Judge Counts ruled the Estate's payment into the registry for the redemption was unconditional and irrevocable under New Mexico state law. (Ex. 19, ¶¶ 5-7). Because the Estate voluntarily forfeited its right to re-acquire legal title, Judge Counts was forced to decide under New Mexico law who was entitled to receive the redemption funds, which were paid into the Court's registry after the bankruptcy discharge. (Ex. 18, ¶ 2). Judge Counts ruled the purchasers at the foreclosure sale were entitled to the redemption funds. (Ex. 19, ¶¶ 8 and C). *It is that ruling that forms the basis of this case.* Following issuance of the final judgment by Judge Counts, the Estate appealed to the New Mexico Court of Appeals. That case is now pending on appeal.

### III.    ARGUMENT AND AUTHORITIES

This Court lacks subject matter jurisdiction of this case for several, independent reasons.

### A.    Ruling for Plaintiffs Violates This Court's Stipulated Order.

This Court cannot overlook or disregard stipulations by the parties. *L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 539 (10th Cir. 1983); *Cole v. Asarco Inc.*, No. 03-CV-327-GKF-TLW, 2011 WL 13077076, at *1 (N.D. Okla. Sept. 27, 2011).  On August 8, 2018, this Court entered the parties' stipulated, Order Terminating Automatic Stay.  (Exhibit 32).  The parties stipulated, and this Court ordered, that the parties would resume the Lincoln County and Otero County suits "to complete the state court litigation and have a **final determination** of the rights of the parties vis-à-vis each other therein." (Id.)  That stipulation and order are binding. *Kutz*.  Plaintiffs may not defeat that stipulation by now trying to usurp the jurisdiction and very rulings of that State Court that this Court sanctioned to finalize the rights of the parties.  Judge Counts and the parties were simply doing what this Court ordered them to do.

A state court judgment is subject to collateral attack if the state court lacked jurisdiction over the subject matter or the parties.  *Lake v. Capps*, 202 B.R. 751, 758 (9th Cir. BAP 1996).  Here, however, the parties stipulated to the jurisdiction of the state court to "complete" the state court litigation and make a "**final determination of the rights of the parties**."  This Court and the parties may not now challenge the jurisdiction of that court or its rulings. *In re Ottoman*, 621 B.R. 768, 787, 797 (Bankr. E.D. Mich. 2020) (Chapter 7 debtors waived right to complain of creditor's alleged violations of discharge injunction with filing and prosecution of post-petition eviction action by not raising the violations as a defense to eviction action, or bringing the alleged violations to bankruptcy court until after entry of final judgment); *Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179, 182 (S.D. Miss. 1986)(prior bankruptcy court order lifting stay to permit state foreclosure sale was *res judicata* and collateral estoppel to further action contesting state suit).

Our Tenth Circuit has expressly condemned bankruptcy courts for doing what this Court proposes to do. See *In re Paul*, 534 F.3d 1303, 1311 (10th Cir. 2008).  In *Paul*, the bankruptcy judge sought to give the

debtor a "free start" by usurping the state court's prior judgment under the guise of the discharge injunction. The Tenth Circuit forbid that outcome, stating:

> Whether the claims can be proven up is a question for the state court in which they are litigated. In essence, the bankruptcy court made a summary judgment ruling on the merits of matters outside its jurisdiction. We understand what the court was getting at: if the claims are indeed baseless, it might be concluded that the only possible function they serve is to coerce the Pauls into satisfying pre-petition claims Ms. Iglehart can no longer press directly (assuming baseless claims can have such coercive effect). But the merits of the state claims should be determined by the court in which they are asserted. If that court finds them groundless, then the bankruptcy court could, based on that disposition, properly do a coercion analysis for purposes of § 524(a)(2) sanctions. Deciding the merits of the claims as part of the § 524(a)(2) analysis, and then enjoining Ms. Iglehart from proceeding on them in the state suit, resulted in the bankruptcy court effectively **usurping** the adjudicative role of the state court.
>
> ...
>
> [T]he bankruptcy court's analysis should not entail resolving the merits of a claim pending in another court: the question, rather, is whether the objective effect of the claim is to coerce payment of a pre-petition debt. But when a bankruptcy court seeks to answer that question based on an adjudication of the merits of a creditor's claim, that adjudication should be made by the court hearing the claim.

*Id.* at 1311 & n. 8 (emphasis added). This Court authorized the State Court to proceed. The issue is decided.

Notably, the Estate deposited the redemption funds in the state court registry **prior to** agreeing to resuming the foreclosure action in the state court. The State Court had exclusive jurisdiction over that *res* – the Redemption Funds. There is no doctrine that can now deprive that state court of jurisdiction over the property put in its exclusive control – voluntarily by the Estate. The State Court was required to decide who would receive those funds. This Court may not now sit in judgment of that decision.

The "exclusive prior jurisdiction doctrine" provides that, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). "[W]here the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79 (1922). The primary purpose of this doctrine is to prevent jurisdictional disputes in concurrent proceedings. *In re Grand Jury Subpoena*, 267 F. Supp. 3d 741, 745 (N.D. Tex. 2016), *aff'd*, 866 F.3d 231 (5th Cir. 2017).

When the Estate tendered the Redemption Funds to the State Court and procured an order from that court providing that court would decide disposition of those funds (Ex. 7), it conferred exclusive jurisdiction on that court to decide the issue. Certainly, when the Estate agreed for the State Court to complete the foreclosure and finally determine the rights of the parties, the state court alone had exclusive jurisdiction. The Estate may not now contest that disposition of the *res* in a collateral attack.

### B.   This Court Lacks Jurisdiction Under the *Rooker-Feldman Doctrine*.

In fact, this court lacks jurisdiction to challenge the involved state court rulings under the *Rooker-Feldman* doctrine. The basis for this Court's suggestions herein that the Williamses violated the bankruptcy discharge is that the redemption was never completed and that the Estate did not waive or forfeit its right to the redemption funds. In fact, that reverses the express ruling of the state court pertaining to the post-bankruptcy redemption right and the deposited redemption funds. Those are issues over which the state court already exercised jurisdiction and entered final orders. Because a competent state court has already addressed the issue, this court simply lacks authority to wrestle away that jurisdiction under the *Rooker-Feldman* doctrine.

In the 2018 decision by the Bankruptcy Appellate Panel in this case (the "*BAP Decision*"), the Court noted the *Rooker-Feldman* doctrine "precludes federal district courts from exercising appellate jurisdiction over actually-decided claims in state courts" and "adjudicating claims inextricably intertwined with previously-entered state court judgments." *In re Van Winkle*, 583 B.R. 759 (10th Cir. BAP 2018). "This is because the Supreme Court is the only federal court empowered to exercise appellate jurisdiction to reverse or modify a state court judgment." *Id.* "The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court." *Besing v. Hawthorne*, 981 F.2d 1488, 1496 (5th Cir.).

The Tenth Circuit has continued to emphasize that the "*Rooker-Feldman* [Doctrine] precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment." *In re Jester*, No. BAP EO-15-002, 2015

WL 6389290, at *9–10 (B.A.P. 10th Cir. Oct. 22, 2015), *aff'd*, 656 F. App'x 425 (10th Cir. 2016); *In re Hopp*, 606 B.R. 889, 895 (Bankr. D. Colo. 2019). "What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment." *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018). We determine whether *Rooker-Feldman* applies by looking to the injury alleged in the plaintiff's federal complaint. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *In re Jester*, 2015 WL 6389290, at *9–10; *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). "**If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction**." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018); *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) ("A claim is inextricably intertwined if 'the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.'").

Even a cursory review of the Plaintiffs' Adversary Complaint shows they are simply trying to have this Court overrule Judge Counts' final judgment in state court awarding the redemption funds to the Williamses. (See Court Doc. No. 1, ¶¶ 25 & 35)(claiming Defendants violated the discharge by procuring an order in

the state court case that "purports to deem the Debtor's estate's request to redeem property ... withdrawn while simultaneously declaring that the funds paid into the court's registry ... must be paid over to the Williamses."). That is improper and violates *Rooker-Feldman*. *Issacs*, 895 F.3d at 912 (holding *Rooker-Feldman* doctrine deprived bankruptcy court of jurisdiction, following entry of state court foreclosure judgment, to address Chapter 13 debtor-mortgagor's claims pertaining to the state court's orders); *Jester v. Wells Fargo Bank N.A.*, 297 F. Supp. 3d 1233, 1242 (E.D. Okla. 2018) (finding bankruptcy court lacked jurisdiction to review the state court's final order in the foreclosure proceeding). A "party losing in state court is barred from

seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994).

The fact that Plaintiffs do not like the state court ruling is not adequate grounds to usurp that ruling. *In re Gianopolous*, 584 B.R. 598 (Bkrtcy. S.D.N.Y. 2018) (denying reopening of case to obtain order staying creditor from prosecuting state court action, which sought to enforce guaranty executed by debtor's brother and claimed that debtor fraudulently induced creditor to make loan); *In re Hepburn*, 27 B.R. 135 (E.D.N.Y. 1983) (case would not be reopened to provide for declaration that lease was at an end, as state courts, in a dispossessory proceeding, were able to apply the law of bankruptcy); *In re Jester*, No. 11-80627-TRC, 2014 WL 7408943, at *2 (Bankr. E.D. Okla. Dec. 30, 2014), *aff'd*, 2015 WL 6389290 (B.A.P. 10th Cir. Oct. 22, 2015), *aff'd*, 656 F. App'x 425 (10th Cir. 2016) (court lacked authority to reverse foreclosure judgment).

This Court's 3/5/21 Order proposes to overrule the *Rooker-Feldman* objection on two grounds. Both of those grounds are errant.

### 1. *Rooker-Feldman* Applies to Judgments that Cause The Injury.

The Court proposes to rule that *Rooker-Feldman* can never apply to a state court judgment that is on appeal. If that is the law, then the *Rooker-Feldman* doctrine is meaningless. Once a state court case is decided on appeal, *res judicata* and collateral estoppel would always bar a lower federal court from reversing it. *Rooker-Feldman* must mean more. In *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006), the Tenth Circuit held, "the distinction between Rooker–Feldman and *res judicata* must be preserved." The Court then explained its understanding of the *Rooker-Feldman* doctrine. The Court said, "We agree with Mr. Bolden. The *Rooker–Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments." Id. at 1139. This Court proposes to rule that it can review and reject the state-court judgment, so long as that judgment is still on appeal. The error to that conclusion is obvious. The New Mexico Court of Appeals, and ultimately the U.S. Supreme Court, review appeals from state court judgments – not this court. To create a

loophole to *Rooker-Feldman* that allows interim appellate review by this federal bankruptcy court would obviously be wrong.

So, how does one reconcile the language in *Guttman v. Khalsa,* 446 F.3d 1027, 1032 (10th Cir. 2006), that *Rooker-Feldman* "applies only to suits filed after state proceedings are final"? Simple. That case was discussing instances in which the state and federal court acquire concurrent jurisdiction before the state court enters its final judgment. The *Guttman* court was construing the language in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517 (2005), concerning "after the state proceedings ended." The *Exxon* decision addressed the question of "concurrent" state and federal cases, not a federal decision that was only filed after the state court judgment was rendered and claiming the state court judgment caused the injury. The Court in *Exxon* correctly limited *Rooker-Feldman* back to what it was intended to cover. The Court said:

> The *Rooker–Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments **rendered before the district court proceedings commenced** and inviting district court review and rejection of those judgments."

Id. at 1522–23 (quoted in *Guttman*, 446 F.3d at 1031-32). The *Guttman* Court construed the language in *Exxon* referencing "after the state proceedings are ended" to impose a requirement that the state court proceeding be "final." Id. at 1032. The question then is, when is a state court judgment "final."

As noted in Defendants' Response to Court's Proposal to Grant Summary Judgment for the Plaintiffs (p. 9), in New Mexico, state court judgments are final when the trial court enters the judgment, irrespective of any appeals. However, there is always a danger the that appellate courts could reverse the trial court's judgment. The *Rooker-Feldman* doctrine properly keeps the lower federal courts from usurping that role of the state courts of appeal. That is a different concept than *res judicata*, which has very specific elements that must be satisfied to support issue preclusion or claim preclusion. Undoubtedly, under *res judicata* principles, when all state court appeals are exhausted, *res judicata* applies under the Full Faith and Credit Clause. *Rooker Feldman* must mean more than that. This Court's proposed construction violates the mandate in

*Bolden* that *Rooker-Feldman* must retain some distinction from *res judicata*. More importantly, such a construction of *Exxon* re-writes the opinion to reverse the main point of the decision quoted and indented above. See *Bolden*, 441 F.3d at 1139 (10th Cir. 2006) ("The *Rooker–Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."). This Court should find a way to reconcile the positions.

The clearest way is to hold that the *Exxon* "ended" requirement applies to the type of case it was addressing, a case where the federal and state court suits were filed concurrently and before the state court judgment was rendered. In *Exxon*, there were "parallel state and federal litigation." 125 S.Ct. at 1526. The Court held that, "When there are parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." In that specific situation, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 1526–27. The Supreme Court said, "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked **concurrent** jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." Id. at 1527 (quoted in *Bolden*, 441 F.3d at 1142).

*Exxon* is properly limited to cases in which the federal and state court acquire **concurrent** jurisdiction before the state judgment is rendered. *Exxon* cannot be construed to prevent application of *Rooker-Feldman* in a case where the federal court seeks to acquire jurisdiction and sit in appellate-type review of the state court judgment only **AFTER** it was rendered. If the state court judgment is the source of the injury, *Rooker-Feldman* applies, regardless of whether that judgment is still subject to state court appeals.

In *In re Jester*, No. BAP EO-15-002, 2015 WL 6389290, at *9–10 (B.A.P. 10th Cir. Oct. 22, 2015), *aff'd*, 656 F. App'x 425 (10th Cir. 2016), the Tenth Circuit held that *Rooker-Feldman* bars a bankruptcy court from engaging in appellate review of "claims 'actually decided by a state court' and claims 'inextricably intertwined with a prior state-court judgment.'" Id. More specifically, the Court held the *Rooker-Feldman* doctrine applied because a determination of the case "would invariably require the bankruptcy court to review and reject the Foreclosure Judgment." The Court noted, "The Tenth Circuit has applied the *Rooker–Feldman*

doctrine to bar claims that are **inextricably intertwined** with foreclosure decisions." Id. at •9 and n.71 (citing *Dillard v. Bank of New York*, 476 F. App'x 690, 691–92 (10th Cir. 2012)(applying doctrine where plaintiff sought to undo foreclosure judgment) and *Orcutt v. Libel*, 381 F. App'x 866, 868 (10th Cir. 2010) (applying doctrine where plaintiffs were "seeking damages from the defendants for actions taken in compliance with those decisions")).

Numerous federal courts that have directly addressed the issue and conflict raised herein have held that, when the state court judgment causing the claimed damage is issued before the federal complaint is filed, the *Rooker-Feldman* doctrine applies to the "appealable trial court's judgment." *Sinclair v. Bankers Trust Co. of Cal.*, No. 5:05–CV–072, 2005 WL 3434827, at *2–4 (W.D.Mich. Dec.13, 2005); *Schuh v. Druckman & Sinel, L.L.P.*, No. 07 Civ. 366(LAK)(GWG), 2008 WL 542504, at *5 (S.D.N.Y. Feb. 29, 2008) ("That the [plaintiffs] are still in the process of appealing the state court decision is irrelevant to the *Rooker–Feldman* analysis."); *Melnitzky v. HSBC Bank USA*, 06 Civ. 13526(JGK), 2007 WL 1159639, at *8, 2007 U.S. Dist. LEXIS 28955, at *26 (S.D.N.Y. Apr. 17, 2007) ("[T]he fact that a federal plaintiff may still have time to appeal the challenged state court order or judgment within the state system does not affect the *Rooker–Feldman* analysis."); *Bush v. Danziger*, No. 06 Civ. 5529(PKC), 2006 WL 3019572, at *6 (S.D.N.Y. Oct. 23, 2006); *Galtieri v. Kelly*, 441 F.Supp.2d 447, 458 n. 9 (E.D.N.Y.2006); *Field Auto City, Inc. v. GMC*, 476 F.Supp.2d 545, 553 (E.D.Va.2007) ("Simply put, there is no sound reason to preclude the operation of *Rooker–Feldman* where a state trial court has rendered judgment, but state appeals are not yet complete when the federal action is filed."); *Lomnicki v. Cardinal McCloskev Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *6 n.11 (S.D.N.Y. July 26, 2007).

The courts conclude there simply is no reason to preclude application of the *Rooker-Feldman* doctrine to a *de facto* appeal of a state judgment, simply because it is still on appeal to the state appellate court:

> The persuasiveness of this view stems from the fact that the purpose of *Rooker–Feldman*, namely to prevent *de facto* appeals from state courts to lower federal courts, is best served by applying the doctrine to state trial court judgments as well as state appellate court judgments. Simply put, there is no sound reason to preclude the operation of *Rooker–Feldman* where a state trial court has rendered judgment, but state appeals are not yet complete when the federal action is filed.

13

*Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 552–53 (E.D. Va.), *aff'd*, 254 F. App'x 167 (4th Cir. 2007). "This purpose would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment." *Weber v. Mcgrogan,* No. CV147340CCCJBC, 2016 WL 3381233, at \*6 (D.N.J. June 9, 2016); *Caldwell v. Gutman, Mintz. Baker. & Sonnenfeldt. P.C.*, 701 F. Supp. 2d 340, 346-47 (E.D.N.Y. 2010) ("Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment").

This Court should follow that authority. Alternatively, the issue at hand is "final" under any applicable definition. The state court judgment on its face states it is a "final" judgment. (Ex. 19, ¶ E). Under New Mexico law, a judgment must be "final" to be appealable. *State v. Lohberger*, 2008-NMSC-033, ¶ 19, 144 N.M. 297. This judgment was final. *Lomnicki v. Cardinal McCloskey Servs.*, No. 04–CV–4548 (KMK), 2007 WL 2176059, at \*6 n. 11 (S.D.N.Y. July 26, 2007) ("The Court notes that this judgment was appealed, but that the judgment was final for *Rooker–Feldman* purposes."). The fact that it is also up on appeal in state court is irrelevant, since this Court did not acquire jurisdiction prior to it becoming "final" on August 12, 2019. The State Court ordered the monies disbursed to the Williams. That issue has ended. Only if this Court takes up jurisdiction and orders the Williams instead to pay back the monies will the issue not be ended. This Court should decline that invitation.

### 2. <u>The Fact the State Court Did Not Address the Discharge Issue Directly Is Irrelevant.</u>

This Court proposed to reject the *Rooker-Feldman* doctrine because "the state court did not address the issue now before the Court." (3-5-21 Order, p. 6). <u>That is not the rule.</u> "The *Rooker–Feldman* doctrine provides that lower federal courts, such as bankruptcy courts, lack jurisdiction to engage in appellate review of "claims 'actually decided by a state court' **and** claims 'inextricably intertwined with a prior state-court judgment.'" *Jester*, 2015 WL 6389290, at \*9. "*Rooker–Feldman* bars a federal claim, whether or not raised in

state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." Id. at 86–87. *Bolden*, 441 F.3d at 1141–42.

In *Orcutt*, the Tenth Circuit held that *Rooker-Feldman* applied to the plaintiffs' damages claims in federal court for actions taken by the defendants "in complicity with the state court's foreclosure decisions." 381 F. App'x. at 868. The Court ruled the plaintiff's complaints were "inextricably intertwined" with those foreclosure decisions because they "assert injuries based on the [state court decisions] and for [him] to prevail, would require the district court to review and reject those [decisions]." 381 F. Appx. at 868. Similarly, this Court cannot rule for Plaintiffs without reviewing and rejecting the state court's judgment. In fact, this Court's 3-5-21 Order expressly reviews and rejects the state court decision, including that,

(a) "[The Estate] subsequently redeemed the Property at issue by filing a petition and depositing the stated sums" (Ex. 19, ¶ 2);

(b) "[The Estate] "irrevocably deposited" $73,200.94 … into the registry of the Court" (Ex.19, ¶ 6); and

(c) "The Estate waived any title or interest in the Deposited Funds when it procured a Court Order authorizing deposit and then tendered the Deposited Funds into the court registry without condition." (Ex. 19, ¶ 7).

It is simply improper under *Rooker-Feldman* for this Court to review and reject those rulings.

Moreover, this Court's suggestion that the issue of the discharge was not raised below in the state court is incorrect. In its Response to the Motion for Summary Judgment, the Estate argued the bankruptcy discharge. (Ex. 37, pp. 3-7). The failure of the Estate to prevail is no grounds for this Court to reverse that decision. *See e.g.*, *In re Flanders*, 517 B.R. 245, 257–58 (Bankr. D. Colo. 2014), *aff'd*, No. AP 13-01456, 2015 WL 4641697 (10th Cir. BAP (Colo.) Aug. 5, 2015), *aff'd in part, remanded in part*, 657 F. App'x 808 (10th Cir. 2016) (distinguishing the interplay between the *Rooker-Feldman Doctrine* and 11 U.S.C. § 524(a)(1) from a situation "where a debtor raises and litigates the effect of his discharge in a state court proceeding and loses"). Only the U.S. Supreme Court – not this court – has jurisdiction to reverse the state court opinion. *Remer v. Burlington Area School Dist.*, 205 F.3d 990, 996, 142 Ed. Law Rep. 689 (7th Cir. 2000) ("[N]o matter how

erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.").

In fact, this Court cannot rule in Plaintiffs' favor without reversing the state court. *Rooker-Feldman* prohibits that outcome. *In re Flanders*, 657 F. App'x 808, 814 (10th Cir. 2016) (holding *Rooker–Feldman* doctrine precludes application of the bankruptcy discharge where the plaintiff's claims depend on a finding that the state court erred and entail relief from the orders). "The Rooker–Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Jester*, * 9. That is this exact case.

The application of the doctrine is perhaps best stated by a hypothetical by the 10ᵗʰ Circuit in *Bolden*:

> To illustrate, say a father was deprived of custody **of his child** by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was *otherwise contrary to federal law*, his suit would be barred by *Rooker–Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. 441 F.3d at 1145.

If we replace the above bold-print language "his child" with "his escrowed funds," the outcome is clear. Plaintiffs complain the state court judgment improperly deprived them of their claimed escrowed funds, "contrary to federal law." Only the Supreme Court of the United States has jurisdiction to address that issue, after the appeals in state court are final.

"[W]hen determining whether the *Rooker–Feldman* doctrine applies, "[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *In re Flanders*, No. AP 13-01456, 2015 WL 4641697, at *5 (10th Cir. BAP (Colo.) Aug. 5, 2015), *aff'd in part, remanded in part*, 657 F. App'x 808 (10th Cir. 2016). In this case, the sole injury claimed is loss of the redemption funds. The state court entered final judgment that the Estate irrevocably waived its right to those funds when it filed the redemption petition and deposited the funds

in the court's registry, which together rendered the redemption final. This Court can only award Plaintiffs relief if it reverses that ruling. By definition, the fundamental question quoted above must be answered, "yes." See *In re Ferren,* 203 F.3d 559, 559 (8th Cir. 2000)(holding *Rooker-Feldman* barred suit for violation of bankruptcy injunction where plaintiff sought recovery of proceeds from foreclosure distributed by state court); *In re Singleton,* 230 B.R. 533 (6th Cir. BAP 1999) (holding state court determination that bankruptcy order did not apply to other property of the debtor is not subject to attack due to *Rooker–Feldman*).

### C. Jurisdiction Is Improper Based on the *Younger* Abstention Doctrine.

Alternatively, the *Younger* abstention doctrine applies. The Supreme Court has made clear that for *Younger* purposes, "the State's trial-and-appeals process is treated as a unitary system." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 369, 109 S. Ct. 2506, 2518 (1989). "When, in a proceeding to which *Younger* applies, a state trial court has entered judgment, the losing party cannot, of course, pursue equitable remedies in federal district court while concurrently challenging the trial court's judgment on appeal." *Id.* at 2518. Accordingly, the fact that the state court proceeding is not "final" does not affect the *Younger* doctrine.

Under the *Younger* abstention doctrine, federal courts should not interfere with state court proceedings when a state forum provides an adequate avenue for relief. *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir.1999). *Younger* abstention is non-discretionary when the conditions are met. *Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com. of State of Utah,* 240 F.3d 871, 875 (10th Cir. 2001). A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state civil proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Amanatullah v. State Bd. of Medical Examiners,* 187 F.3d 1160, 1163 (10th Cir.1999). All of those elements are satisfied herein.

First, there is no question there is civil proceeding between these parties before the New Mexico Court of Appeals.  Second, the state court provides an adequate forum to address the claims.  In fact, Judge Counts already addressed these issues.  This Court lifted the stay and the parties agreed Judge Counts would resolve all issues in the foreclosure case.   Even if the state court was not an adequate forum, the parties stipulated to that forum.  Finally, there is no question that a foreclosure case involves important state interests, matters which traditionally look to state law for their resolution, and/or implicate key state policies.    State law, exclusively, governs foreclosures.   This Court is proposing to construe New Mexico's redemption statute, and, in fact, to contradict the state court's construction of the same statute.

The *Younger* abstention doctrine applies when the relief the plaintiff seeks in federal court would interfere with ongoing state judicial proceedings.  *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir.2004); *In re Franceschi*, 43 F. App'x 87, 89–91 (9th Cir. 2002).  "State proceedings are deemed 'ongoing' if the state-court suit was pending at the time of the federal suit's filing."   Id.    In fact, this suit interferes with the ongoing state court suit.   The state court ordered the Redemption Funds paid to the purchasers, the Williams.  Now, this Court proposes to award damages to Plaintiffs for those payments, effectively requiring the purchasers to turn those funds over to the Plaintiffs.   There is no way to view this case other than a reversal of the state court judgment.

*Younger* applies to bankruptcy proceedings.  *See Superior Court v. Heincy (In re Heincy)*, 858 F.2d 548, 549 (9th Cir.1988); *In re Franceschi*, 43 F. App'x 87, 89–91 (9th Cir. 2002) (affirming bankruptcy court's dismissal on basis of *Younger* abstention); *In re Miller*, 463 B.R. 143, n. 48 (10th Cir. BAP (Colo.) 2011), *rev'd on other grounds*, 666 F.3d 1255 (10th Cir. 2012).  Plaintiffs are seeking equitable relief from this Court, namely equitable relief under 11 U.S.C. § 105(a) to remedy a violation of the discharge injunction in § 524(a)(2). *In re Paul*, 534 F.3d 1303, 1306–07 (10th Cir. 2008).  Furthermore, the doctrine applies not only to requests for equitable relief but also extends to claims for monetary relief "when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392

F.3d 1223, 1228 (10th Cir. 2004); *Graff v. Aberdeen Enterprizes, II, Inc.*, No. 17-CV-606-TCK-JFJ, 2021 WL 951017, at *10 (N.D. Okla. Mar. 12, 2021). Clearly, a judgment by this court ruling payment of the Redemption Funds to the Williams violated the discharge injunction will have a preclusive effect on the pending state-court proceeding. Such a ruling could force the Williams to forfeit their appeal. Presumably, Plaintiffs will take the position that Defendants are violating the discharge injunction by claiming the right to the funds in the state court appeal. It is difficult to imagine any more preclusive effect. It is also difficult to imagine any greater interference with the jurisdiction of the state court.

Defendants refer the court particularly to *Salazar v. Indymac Bank, F.S.B.*, No. 12CV1182 MCA/RHS, 2013 WL 11955290, at *6–8 (D.N.M. Feb. 28, 2013)(unpublished). In *Salazar*, the court ruled *Younger* abstention applied to a federal case seeking to disrupt a state foreclosure action. The plaintiff filed the federal action on the date the state court was hearing a summary judgment motion. The court ruled the cases were ongoing, satisfying the first *Younger* element. Id. at *7. The Court held the second element was satisfied because the plaintiff "could have raised" the same defenses in the state court suit. Id. at *7. Finally, the Court ruled that the third element was satisfied because the state has an important interest in managing foreclosure actions and applying its state foreclosure laws. Id. at *7-8. The Court cited 7-8 federal decisions in support of that conclusion. *See, e.g., Beeler Prop., LLC v. Lowe Enter. Residential Investors, LLC*, No.07-CV-00149-MSK-MJW, 2007 WL 1346591, at *3 (D. Colo. May 7, 2007) (holding that "[a]ctions that challenge the [foreclosure] order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law"); *Mayeres v. BAC Home Loans*, No. 10-44816 MBK, ADV. 11-1516 MBK, 2011 WL 2945833, *4 (Bankr. D.N.J. Jul 21, 2011) (abstaining under *Younger* doctrine because "matters presented in the Complaint are clearly the subject of a pending state foreclosure matter .... Additionally, the State of New Jersey has an important interest in determining title to real property located and governed by state law."); *Beck v. Wells Fargo Bank*, No. 10–4652, 2011 WL 3664287 (E.D. Pa. Aug. 19, 2011) (abstaining from actions seeking to enjoining state foreclosure because "[t]he state has an

important interest in resolving disputes related to real property located within its jurisdiction, as such disputes implicate matters primarily governed by state law" and "failure to abstain would unduly interfere with the state court's ability to manage the mortgage foreclosure action, a proceeding which 'traditionally is handled in state court.' *Nat'l City Mortgage Co. v. Stephen*, 09–1731, 647 F.3d 78, 2011 WL 2937275, at *7 (3d Cir. July 22, 2011)"). The Tenth Circuit, in fact, has recognized that a federal suit challenging a state-court foreclosure sale "could [not] pass muster" under the *Younger* abstention doctrine. *DCR Fund I, LLC v. TS Family Ltd. P'ship*, No. 05-6232, 261 Fed.Appx. 139, 145-46, 2008 WL 196298, **5-6 (10th Cir. Jan. 24, 2008) (holding that the district court properly refused to consider the defendants' request for injunctive relief to halt a foreclosure sale and claims for conspiracy, abuse of process, and conversion associated with that sale).

*Salazar* is correct. "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *See Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997) (quoting *Younger*, 401 U.S. 1137 (1971)). Ruling in this case will certainly interfere with the state court proceeding. Because the *Younger* abstention doctrine applies, this court should dismiss the case.

### D. Jurisdiction is Improper Based on Comity and/or Discretionary Abstention.

Even if this Court could exercise jurisdiction, it should decline to do so based on comity to state courts and/or the discretionary abstention doctrine. "The federal courts' duty of comity to the state courts is the focus of discretionary abstention." *In re Notary*, 547 B.R. 411, 419 (Bankr. D. Colo. 2016).

As identified above, the parties stipulated and this Court entered an order mandating that the State Court proceed with the foreclosure action. The state court followed that instruction and entered a final judgment. If there was some issue the state court was not allowed to address, Plaintiffs waived that argument by their stipulation and failure to object. The state court judgment is now up on appeal. This Court authorized the state court to proceed, and the state court simply did what it was required to do under state law. There is no basis for this federal court to usurp that state court ruling – even if this Court thinks it was wrong.

The federal courts have developed a list of relevant factors to consider when deciding whether to abstain. *1 Norton Bankr.L. & Prac.3d § 8.6 (Thompson/West 2010); In re Notary*, 547 B.R. 411, 419 (Bankr. D. Colo. 2016).   Those factors favor abstention herein:

1. **The effect or lack of effect on the efficient administration of the estate if a court abstains** – This case has been fully administered and is already closed.  *Notary,* 547 B.R. at 419.  Exercise of jurisdiction herein will be inefficient.

2. **The extent to which state law issues predominate over bankruptcy issues** – Because the BAP has already ruled on the redemption and discharge issues, there simply are no "bankruptcy" issues remaining to be resolved.  Regardless, the primary issue is interpretation of the New Mexico redemption statute and when the redemption became irrevocable.  That is a state law question.

3. **The difficulty or unsettled nature of the applicable state law** – The primary issue is the entitlement to the redemption funds upon waiver of the request for a redemption certificate. That is purely a state law question.

4. **The presence of a related proceeding commenced in the state court or other nonbankruptcy court** – The state court appeal is still pending in state court.

5. **The jurisdictional basis, if any, other than 28 U.S.C.A. § 1334** – Absent federal bankruptcy jurisdiction, there would be no basis for federal jurisdiction herein.  *In re Notary.*

6. **The degree of relatedness or remoteness of the proceeding to the main bankruptcy case** – There is little to no relatedness to the "main" bankruptcy case.  It was final and closed.  Also, the sole remaining issues are state law issues.

7. **The substance rather than form of an asserted "core" proceeding** – This is simply another attempt at wrestling away jurisdiction from the state court (i.e., forum shopping).

8. **The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court** – That was already done, and the state court was required to proceed.  It would be improper to usurp that separation and re-take jurisdiction in the bankruptcy court.

9. **The burden on the bankruptcy court's docket** – This case was closed.  Re-opening this case has become burdensome on this court's docket.  That is especially true since the claims are frivolous and already being handled by the New Mexico Court of Appeals.

10. **The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties** – There simply is no doubt that the Plaintiffs are merely forum shopping. Brian tried to remove the case to this court while the motions were pending. Now that Judge Counts ruled against them, he is merely trying again.  That is improper.

11. **The existence of a right to a jury trial** – There is no right to a jury trial on the proposed complaint.

12. **The presence in the proceeding of nondebtor parties** – The debtor has not joined in this Motion. The proposed complaint involves only non-debtor parties.

13. **Any unusual or other significant factors**. The fact that the Defendants and Judge Counts were merely doing what the BAP ordered they may do is conclusive in this case.

In *In re Notary*, 547 B.R. 411, the Court abstained from exercising jurisdiction for alleged violations in seeking to foreclose judgment liens in state court. The court said, "The Attorneys' efforts in the state courts involve their efforts to foreclose their Judgment Liens. Those liens have been wholly unaffected by the Debtor's bankruptcy case and the Attorneys are free to take whatever measures are available to them in the state courts to realize on those liens." *Id.* at 419. That quote summarizes this case.

Similarly, Defendants have only exercised their rights under New Mexico state law to foreclose their judgment liens. On August 8, 2018, this Court ordered the parties to seek a final determination of their rights in the Lincoln and Otero County suits. (Ex. 32). Those court-ordered activities should not now be usurped by exercise of bankruptcy jurisdiction.

In its 3-5-21 Order, this Court noted a bankruptcy court <u>can</u> find a prior state judgment to be void. (3-5-21 Order, p. 6). That is true. However, not in this circumstance. The ability to declare a judgment void for violating the discharge injunction comes from Section 524(a)(1), which provides:

(a) A discharge in a case under this title–

(1) voids any judgment at any time obtained, <u>to the extent that such judgment is a determination of the personal liability of the debtor</u> with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived.

§ 524(a)(1)(emphasis added). "The plain language of § 524(a)(1) provides that any judgment is void if it is a determination *of the personal liability* of a debtor <u>with respect to a discharged debt</u>." *In re Morrow*, 613 B.R. 786, 798 (Bankr. N.D. Okla. 2020).

The underlying state court judgment did not make a determination of personal liability of the debtor. To the contrary, the State Court ruled the Final Judgment was *in rem.* (Ex. 19, ¶ D). The fact that the "*res*" included money in the registry of the court does not change the fact that it was "*in rem,*" and there was no determination of the personal liability of the debtor. Accordingly, there is no authority to claim the underlying judgment was "void."

Certainly, Judge Counts did not determine the funds were required to be paid "with respect to a discharged debt." To the contrary, Judge Counts determined the Estate forfeited the funds when they paid them into the court's registry and that the purchaser at the foreclosure was entitled to the "*res,*" the funds, as a result of New Mexico foreclosure law. No court could reasonably conclude that Judge Counts' judgment was a "determination of the personal liability of the debtor with respect to any debt discharged."

This Court cited *In re Pavelich*, 229 B.R. 777, 783 (B.A.P. 9th Cir. 1999). (3-5-21 Order, p. 6). In that case, the Court was careful to note that the discharge order does not void all state court judgments. The court said, "Statutory voidness and the statutory injunction under § 524(a) are limited to the discharge itself, and do not affect the determination whether particular debts are excepted from the discharge." Id. State courts have concurrent jurisdiction under 28 U.S.C. § 1334(b) to determine whether a particular debt is excepted from discharge or, in bankruptcy parlance, nondischargeability. Id. "A state court's erroneous determination that specific debts... are excepted from discharge would be viewed as mere legal error on a matter over which it has subject matter jurisdiction." Id. Accordingly, the judgment cannot be viewed as void, and must be challenged "through ordinary direct review processes." Id. at 784. "Thus, on matters of nondischargeability of particular debts, the state courts have jurisdiction both to decide whether they are excepted from discharge and to get it wrong." *Id*.

At worst, the state district court decided the question of nondischargeablity, which it had jurisdiction to decide. Defendants raised the issue in the state court that the discharge injunction applies. (Ex. 37). The State Court ruled against Plaintiffs, finding the Estate forfeited the rights to the redemption funds when it deposited

the monies into the court registry. Having lost, Plaintiffs may not now contest the subject matter jurisdiction of that state court judgment. The state court had the right to "get it wrong." *Spencer v. Gypsy Oil Co.*, 142 F.2d 935, 937 (10th Cir. 1944) (jurisdiction of the subject matter includes power to decide the case incorrectly). Practically, however, the state court got it right, and the judgment should not be usurped.

Accordingly, this court lacks jurisdiction, authority and/or power to overturn the state court ruling. Even if this Court could overturn that ruling, it certainly should not.

**WHEREFORE**, the proposed summary judgment for the Plaintiffs should **not** be granted. Instead, this Court should dismiss this suit, without prejudice on jurisdiction grounds. Defendants should receive such other relief to which they are entitled.

**Martin, Dugan & Martin**

By_____

W. T. Martin, Jr.
Kenneth D. Dugan
509 W. Pierce St.
P.O. Box 2168
Carlsbad, NM 88221-2168
(575) 887-3528
Fax (575) 887-2136
e-mail: martinlaw@zianet.com
Attorneys for BVL & Williams

## CERTIFICATE OF SERVICE

I, W.T. Martin, Jr., certify that on March 26, 2021, I served copies of the foregoing pleading on opposing counsel of record by way of **CM/ECF** and e-mail:

Joel Alan Gaffney, 6565 Americas Pkway, Suite 200, Albuquerque, NM 87110 -
Phone (505) 563-5508; e-mail is: joell@gaffneylaw.com

**Martin, Dugan & Martin**

By_____

W. T. Martin, Jr.