UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In Re Fred Dale Van Winkle,
    Debtor,

Brian Van Winkle and
Tammy Sprague, co-personal representatives
of the estate of Fred Dale Van Winkle,
    Plaintiffs,
v.                                          Bankr. No. 13-11743 t7
                                     Adv. No 20-1022
John Williams, Ellen B. Williams, and   Chapter 7
Belleview Valley Land Co., Inc.
    Defendants.

# DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS AND SUPPORTING BRIEF

COME NOW, John Williams, Ellen B. Williams and Belleview Valley Land Co., Inc. *(collectively, "Defendants")*, and file this Second Motion for Summary Judgment under Fed. R. Civ. P. 56(F) Against Plaintiffs **Brian Van Winkle** ("Brian") and **Tammy Sprague** ("*Sprague*") (collectively, "*Plaintiffs*") and Supporting Brief and show:

I.     **SUMMARY OF MOTION**

On October 29, 2020, Defendants filed their first Motion for Summary Judgment (the "*First MSJ*"). That First MSJ sought judgment on only limited grounds. On March 5, 2021, this Court denied that First MSJ, and then proposed to grant summary judgment for Plaintiffs on liability. The Court provided Defendants 30 days to file a response. Defendants filed their Response to Court's Proposal to Grant Summary Judgment for Plaintiffs on March 26, 2021, Document Number 40 ("*Response to MSJ*"). That Response to MSJ was much more comprehensive than the First MSJ. In drafting and researching that Response to MSJ, Defendants discovered additional arguments that should have been made in their First MSJ. To protect their rights and the record, Defendants file this Second MSJ. This Second MSJ is merely an incorporation of all of the evidence and arguments from the Response to MSJ. If the Court agrees with the Response, this Second MSJ should be granted and the suit dismissed. References to exhibits are explained in Section III below.

Bankruptcy courts may enforce the discharge injunction in § 524(a)(2). *In re Paul*, 534 F.3d 1303, 1306–07 (10th Cir. 2008). "But that equitable power cannot be exercised contrary to or in excess of the terms of the substantive Code provision being enforced." *Id*. "Thus, a bankruptcy court may sanction a party for violating the discharge injunction ***only if*** the party took some action ... "to collect, recover or offset any [discharged] debt *as a personal liability of the debtor.*" *Id*. The concept of a "fresh start" is not immunity:

> This may seem an obvious point when stated in the abstract, yet it can easily be overlooked in the course of a bankruptcy court's practical effort to support a debtor's fresh start following discharge. A host of circumstances can affect a former debtor's financial comeback. But the concept of "fresh start" is just a general gloss on the purpose of § 524(a); ***it is not a license for courts to go beyond the particular prohibitions specified in the statute to shield debtors from adverse contingencies***. However well-intentioned the effort in trying to facilitate a debtor's fresh start, a bankruptcy court may not enjoin and sanction a creditor with respect to conduct that does not violate § 524(a). *Id*. at 1307.

This Court closed this case on June 18, 2019. Thereafter, Brian requested a stay for the Estate of Fred Van Winkle (the "*Estate*"). (Ex. 35). Brian's Motion states, "Judge Counts has just recently allowed a Discharged debt set forth by this Bankruptcy court to be allowed in state court, in doing so, the state court has upset the balance provided by this court ...." **This has also put Redemption funds deposited with the state court at risk**." (Id., p. 3). This Court denied those Motions, holding it was "**powerless to grant relief**." (Ex. 36, Doc. No. 85). This Court ruled it was bound by the Bankruptcy Appellate Panel ("*BAP*") decision and the state court was "doing no more than what it is bound to do." (Id.). Defendants relied on that opinion.

The BAP ruled the redemption right was not an estate asset and the Defendants, in trying to enforce the Deficiency Judgment did not seek a debt *as a personal liability of the debtor.*" *In re Van Winkle*, 583 B.R. 759, 770. That decision involved the same series of transactions as this case and is *res judicata*.

In pursuing their relief in the State Court, the Williamses were merely seeking to "implement the ruling of the Bankruptcy Appellate Panel, [which he] is bound to do." (Order, 8-8-19, Ex. 36). That case is on appeal. That court has primary jurisdiction, and the *Rooker-Feldman* and/or *Younger* doctrines preclude jurisdiction herein. Defendants will address those issues in a separate Motion to Dismiss. However, the issues are also barred by law of the case, collateral estoppel, and *res judicata*, which will be addressed herein.

"The discharge prohibits prepetition creditors only from collecting their **prepetition** debts. It is not a lifelong shield against other acts—including assertions of claims, and litigation—by those same creditors." *In re Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007). This case does not involve prepetition debts. The Estate tendered the sums into the state court registry, voluntarily, after the discharge. It is not even a debt. The tendered monies were the *res* in an *in rem* proceeding. Simply because the State Court awarded those sums to the purchasers at the foreclosure sale (post-bankruptcy), does not magically make the creditors liable to the Estate for violation of the discharge injunction. In *In re Paul,* 534 F.3d at 1308, the Tenth Circuit noted a bankruptcy court must never resolve the merits of a state court suit under the guise of the discharge injunction:

> Even when a less direct violation turns on application of the objective-coercion principle, **the bankruptcy court's analysis should not entail resolving the merits of a claim pending in**

2

**another court**: the question, rather, is whether the objective effect of the claim is to coerce payment of a pre-petition debt. But when a bankruptcy court seeks to answer that question based on an adjudication of the merits of a creditor's claim, **that adjudication should be made by the court hearing the claim**. *Id.* at 1311.

Numerous grounds exist to prevent summary judgment herein. However, the most glaring is the new contempt standard in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801, 204 L. Ed. 2d 129 (2019). The question is not whether Defendants violated the discharge injunction. It is whether it was **"fairly debatable."** It was. *Id.*

## II. SUMMARY OF STATE COURT PROCEEDINGS

Defendants provided a summary of the state court proceedings in their Motion to Dismiss, which was filed on March 26, 2021, Document No. 41. In lieu of repeating those matters, Defendants refer the Court to that Motion, which is incorporated. Defendants also incorporate the defenses in that Motion, to the extent they apply on summary judgment.

## III. STATEMENT OF FACTS AND EXHIBITS

Defendants previously provided a statement of facts in their First MSJ, filed on October 29, 2020 (Doc. No. 14) and 28 exhibits. In lieu of reciting those facts, Defendants incorporate that First MSJ, accompanying brief, and exhibits. References to Exhibits 1-28 are those exhibits. Additional exhibits were attached to the Response to MSJ filed on March 26, 2021, and numbered 29-37. The First MSJ and the Response to MSJ set forth many of the facts that support judgment. The purpose of this Second MSJ is to merely apply the law to those undisputed facts. However, for sake of clarity and completeness, Defendants provide the following recitation of undisputed facts:

1-4. Defendants incorporate the facts in paragraphs 1-4, and the respective subparagraphs, recited on pages 1-8 in the First MSJ.

5. The Estate of Fred Van Winkle ("*Estate*") voluntarily filed the petition for redemption and paid the money into the court's registry, even procuring a court order to permit the payment. (Exs. 6-7).

   a. **"The filing of the Redemption in the Otero County District was voluntary** (Ex. 27, Deemed Admission No. 26).

b. **"The Estate's actions were voluntary and the Estate was not forced to redeem the real property."** (Ex. 27, Deemed Admission No. 27).

6. In commencing the post-discharge litigation by filing the Redemption Petition and then returning to the State Court for final determination, the Plaintiffs "returned to the fray" and waived and/or forfeited any objection to the State Court exercising jurisdiction and finally resolving title and ownership to the Redemption Funds.

    a) When the State Court entered its order in 2015 permitting deposit of the Redemption Funds, it expressly ruled it would hold the funds "until the rights of all parties can be determined." (Ex. 7).

    b) Plaintiffs not only did not object to that language, but, in fact, provided that order to the Court.

    c) On August 8, 2018, the parties stipulated, and this Court ordered, the parties would "complete the state court litigation and have a final determination of the rights of the parties vis-à-vis each other therein." (Ex. 32).

    d) When the parties stipulated in 2018 to return to State Court for "final" determination, they knew or should have known that would include the rights to the Redemption Funds.

    e) By agreed, stipulated order, Plaintiffs "returned to the fray." (Ex. 32).

    f) At a minimum, that is an "objectively reasonable basis" to conclude the creditor "might" proceed to final determination.

    g) Certainly, there is a "fair ground of doubt."

7. Prior to the state court entering its State Judgment, the Estate assigned all of its interest in the redemption and/or the redemption funds to third-parties. (Ex. 17, pp 4-5).

    a) Plaintiffs previously admitted the heirs provided the funds and are the real parties in interest. (Ex. 33).

b) At the time the State Court Judgment was entered, the Estate no longer had an interest in the Redemption Funds or the right of redemption. (Id.).

8. In its Final Judgment entered on August 12, 2019 (the "*State Court Final Judgment*"), the State Court, Judge Counts, expressly held:

   a) "[The Estate] subsequently redeemed the Property at issue by filing a petition and depositing the stated sums" (Ex. 19, ¶ 2).

   b) "[The Estate] ... elected withdrawal of the request for issuance of a certificate of redemption." (Id., ¶ 4).

   c) "By election, [the Estate] forfeited and/or waived the right to issuance of the certificate of redemption and to re-acquire legal title to the real property at issue pursuant to the redemption." (Id., ¶ 5)

   d) "[The Estate] "irrevocably deposited" $73,200.94 (the "Deposited Funds") ... into the registry of the Court" (Id., ¶ 6).

   e) "The Estate waived any title or interest in the Deposited Funds when it procured a Court Order authorizing deposit and then tendered the Deposited Funds into the court registry without condition." (Id., ¶ 7).

   f) "The [Williamses] are entitled to receive the Deposited Funds, $73,200.94, plus the earned interest." (Id., ¶¶ 8, C).

9. The State Court Final Judgment is *res judicata* under principles of issue preclusion herein:

   a. The parties in the first suit are the same or in privity with the parties in the second lawsuit;

   b. The first and second suit assert different causes of action;

   c. The issues and fact set forth in the prior paragraph (8) were "actually litigated" in the first suit; and

   d. The issues and facts were necessarily determined in the first suit.

10. Moreover the prior decision of the Bankruptcy Appellate Panel filed on April 3, 2018, Document No. 62, in BAP Appeal No. 17-31 (the "*BAP Opinion*") is *res judicata* under claim preclusion herein:

5

a. The parties in the first suit are the same or in privity with the parties in the second lawsuit;

   b. The first and second suit assert the same cause of action (i.e., the discharge injunction);

   c. The issues and fact set forth in the prior paragraph (8) were "actually litigated" in the first suit;

   d. The issues and facts were necessarily determined in the first suit; and

   e. Sprague failed to appeal the BAP Opinion, and it is a final judgment.

11. After the foreclosure sale and purchase of the property by the Williamses, the Defendants as creditors still retained a "'right to payment' in the form of [their] right to the proceeds from the sale of the debtor's property." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150 (1991).

12. "Alternatively, the [Defendants'] surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." Id.

13. "Either way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor."

14. On June 18, 2019, Brian Van Winkle, on behalf of the Estate, filed a motion with this court requesting a stay of the state court Otero County foreclosure action. (Ex. 35).

   a) Brian's motion states, "Judge Counts has just recently allowed a Discharged debt set forth by this Bankruptcy court to be allowed in state court, in doing so, the state court has upset the balance provided by this court …. This has also put Redemption funds deposited with the state court at risk." (Id., p. 3).

   b) This Court denied those Motions, holding it was "powerless to grant relief." (Ex. 36, Doc. No. 85).

c) This Court ruled it was bound by the Bankruptcy Appellate Panel ("BAP") decision and the state court was "doing no more than what it is bound to do." (Id.).

d) That ruling by this Court, at a minimum, is objective evidence that makes if fairly debatable whether the Defendants "might" proceed with collecting the Redemption Funds.

15. In pursuing their relief in the State Court, the Williamses were merely seeking to "implement the ruling of the Bankruptcy Appellate Panel, [which that court] is bound to do." (Ex. 36, Order, 8-8-19).

16. The Defendants did not seek recovery from the debtor estate "as a personal liability of the debtor."

a) The Estate irrevocably relinquished title to the Redemption Funds when it deposited them into the State Court's registry.

b) Plaintiffs took a calculated risk to redeem the property by payment AFTER the discharge.

c) The Estate then further took a calculated gamble when it unilaterally withdrew its request for issuance of the certificate of redemption.

    a. Plaintiffs could have proceeded with their redemption and procured the property – subject to re-foreclosure as order by the BAP.

    b. However, they expressly chose not to do so. (Ex. 19, p. 2-3).

    c. The Trial Court ruled that, by withdrawing their request for a certificate of redemption, Plaintiffs forfeited their right to regain possession and legal title of the property and forfeited any rights, if any remained, to the Redemption Funds. (Ex. 19, ¶ 5).

d) The State Court awarded the Redemption Funds to the Williamses as purchasers of the property at the foreclosure sale, not as creditors of the debtor Estate. (Exs. 18, 19, 31)

e) The State Court could have ruled the funds must be paid to the creditor. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773 (1992)("Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor.").

f) However, Judge Counts determined that, by statute and case law, those funds belonged to the purchasers (not the creditors).

   a. The Motion to Distribute expressly argued and cited the law supporting the conclusion that, "The purchaser at the foreclosure sale is indisputably entitled to receive the redemption funds." (Ex. 31, p. 8); *In re LaMont*, 740 F.3d 397, 407–08 (7th Cir. 2014)(citing numerous cases).

   b. Judge Counts adopted that finding and awarded the redemption funds to the purchasers, Mr. and Mrs. Williams. Judge Counts' Final Judgment expressly states, "Plaintiff's Motion is Granted for the reasons stated therein." (Ex. 19, ¶ A).

   c. The Final Judgment reads: "The Clerk is hereby ordered to disburse to Plaintiffs John H. Williams and Ellen B. Williams the Deposited Sums ($73,200.94)...." (Ex. 9, p. 3).

g) The Williamses were the purchasers at the foreclosure sale. Their claims or causes of action to recover the redemption funds as purchasers could, by definition, only arise after the foreclosure, which occurred in 2014 -- post-petition. (Ex. 34).

h) Belleview was a creditor of the Estate, but only the Williams purchased the property at the foreclosure sale.

i) The Williams were entitled to the redemption funds – not as a result of being creditors of the Estate – but because they purchased the property at the foreclosure sale.

   a. Defendants previously accepted the tendered deposit in their Response to Petition for Redemption in May of 2015, and then again confirmed acceptance of the redemption

payment in the Court's registry in their Amended Motion filed on July 24, 2019. (Ex. 31, p. 7).

    b. Whether Defendants had "accepted" the tender or not, the Plaintiffs simply lacked any claim to the redemption sums.

    c. Because the redemption sums were paid unconditionally into the Court's registry, those sums were required to be paid to the purchasers at the foreclosure sale. *In re LaMont*, 740 F.3d 397, 407–08 (7th Cir. 2014)(citing numerous cases).

j) The Estate received a full credit for the payment by the purchaser Williams upon confirmation of the foreclosure sale. (Ex. 34).

17. In seeking recovery of the Redemption Funds, the Defendants were merely taking actions to collect funds and/or assets of third-parties, not the debtor Estate.

    a. As noted above, on August 17, 2018, the Estate had already assigned all interest in the Redemption and the Redemption Funds to third-parties. (Ex. 33, pp. 4-5).

    b. The State Court did not enter the Final Judgment until August 2019. (Ex. 19).

18. No pre-petition debt is involved in this case.

    a) The Redemption Funds at issue were tendered by the Estate post-petition.

    b) The Redemption Funds were not a "debt," but were the *res* that sustained the State Court's exclusive jurisdiction over those funds.

19. Based upon the facts recited in paragraphs 1-18 above, there was a "fair ground of doubt" as to whether Defendants "might" seek recovery and procure the Redemption Funds and/or engage in the activities at issue herein.

20. Certainly, Defendants arguments are no frivolous and without basis in fact or law, such that liability may be found under *Taggart*.

## IV. ARGUMENT AND AUTHORITIES

Defendants are entitled to summary judgment because there are no material issues of fact and judgment is proper as a matter of law on the following grounds. In lieu of specifically repeating the bases of summary judgment, Defendants will reference the prior briefing in their Response to MSJ, which is incorporated by reference.

### A. Plaintiffs' Claims Are Barred by *Taggart*.

As set forth on pages 6-8 of the Response to MSJ, Plaintiffs' claims are barred because Plaintiffs cannot satisfy the *mens rea* requirement for a contempt finding based on the discharge injunction, as set forth in *Taggart*, 139 S. Ct. at 1801. The U.S. Supreme Court held a creditor violates the discharge injunction **only** "when there is **no objectively reasonable basis** for concluding that the creditor's conduct **might** be lawful under the discharge order." *Id.* In fact, Plaintiffs cannot prove that there was not "fair ground of doubt" as to whether the discharge "might" bar the creditor's conduct. *Id.* at 1801-1804. "[P]rinciples of basic fairness require that those enjoined receive **explicit notice** of what conduct is outlawed before being held in civil contempt." *Id.* at 1802. Because Defendants did not receive any such "explicit notice," and, in fact, were led to believe that their conduct was legal (among other bases, by this Court and by Plaintiffs), Plaintiffs' claims must be dismissed.

### B. Ruling for Plaintiffs Violates This Court's Stipulated Order.

As set forth on pages 4-6 of Defendants' Motion to Dismiss (Doc. No. 41), which is incorporated by reference, Plaintiffs' claims should be dismissed because on August 8, 2018, the parties stipulated, and this Court ordered, the parties would "complete the state court litigation and have a **final determination** of the rights of the parties vis-à-vis each other therein." (Ex. 32). That stipulation provided the state court exclusive, primary, and *in rem* jurisdiction, which cannot now be usurped and which is binding on the parties.

### C. Plaintiffs' Claims Are Barred By the State Court Decision And *Res Judicata*.

As set forth on pages 8-11 of Defendants' Response to MSJ, Plaintiffs' claims are barred by *res judicata*, collateral estoppel, issue preclusion and/or claim preclusion based upon the state court judgment.

### D. Plaintiffs' Claims Are Barred by the BAP Opinion Under the Doctrines of Law of the Case and *Res Judicata*.

As set forth on pages 11-14 of Defendants' Response to MSJ, Plaintiffs' claims are barred by the Bankruptcy Appellate Panel's Opinion in the underlying bankruptcy case under principles of law of the case and *res judicata*.

### E. Defendants Did Not Violate the Discharge Injunction.

As set forth on pages 14 to 24 of the Response to MSJ, Plaintiffs' claims are barred because Plaintiffs cannot satisfy the elements of a claim for violation of the discharge injunction, including the specific elements noted below.

#### a. Plaintiffs' Actions Were Voluntary.

As set forth on pages 14 to 17 of Defendants' Response to MSJ, as a matter of law, Plaintiffs' actions and payments at issue were voluntary under 11 U.S.C. § 524(f).

#### b. No Personal Liability of the Debtor Was Involved.

As set forth on pages 17 to 19 of Defendants' Response to MSJ, as a matter of law, no personal liability of the debtor was involved, as required by § 524(a)(2). "[T]he debtor must "prove not merely that [the creditor's] act is not what it appears to be, but that the act in question is one to collect a discharged debt *in personam*." *Paul*, 534 F.3d at 1308. Plaintiffs cannot satisfy that burden.

#### c. Only Third Party Assets Are Involved.

As set forth on pages 20 to 21 of Defendants' Response to MSJ, as a matter of law, no violation of the discharge injunction may be found because the redemption funds at issue were, at worst, debts and/or funds of third-parties, not the debtor. 11 U.S.C. § 524(e). The discharge injunction does not apply to non-debtors and a creditor may not be enjoined from actions to collect funds of or assets of non-debtors. *In re Christian*, 180 B.R. 548 (Bkrtcy.E.D.Mo.1995); *In re Czuba*, 146 B.R. 225 (Bkrtcy.D.Minn.1992). "Although § 524(a)(2)

prohibits actions brought to collect a discharged debt from the debtor, it permits suits—even those brought to collect on debts a debtor has discharged—that formally name the debtor as a defendant but are brought to collect from a third party." *In re Paul*, 534 F.3d at 1303.

### d. No Pre-Petition Debt Was Involved.

As set forth on pages 21 to 24 of Defendants' Response to MSJ, as a matter of law, Plaintiffs may not recover herein because no pre-petition debt was involved. The discharge injunction applies only to debts that arose pre-petition. *In re Schlichtmann*, 375 B.R. at 96. **"Debts that arose after the bankruptcy filing, even to creditors owed prepetition debts, were not affected by it."** *Id*. (holding creditor's tort claim that arose post-petition not affected). This case does not involve a "debt," and certainly not a "pre-petition" debt.

**WHEREFORE**, the proposed summary judgment for the Plaintiffs should **not** be granted. Instead, this Court should grant summary judgment for Defendants.

Martin, Dugan & Martin

By_____
W. T. Martin, Jr.
Kenneth D. Dugan
509 W. Pierce St.
P.O. Box 2168
Carlsbad, NM 88221-2168
(575) 887-3528
Fax (575) 887-2136
e-mail: martinlaw@zianet.com
Attorneys for BVL & Williams

## CERTIFICATE OF SERVICE

    I hereby certify that on March 26, 2021, I served copies of the foregoing pleading on opposing counsel by electronic filing.

                              **Martin, Dugan & Martin**

By_____
           W. T. Martin, Jr.