Ron Holmes

Partner

rholmes@davismiles.com

320 Gold Ave. SW

Ste. 1111

Albuquerque, NM 87102

Tel:     (505) 268-3999

Fax:     (505) 243-6448

This e-mail message (including attachments) is privileged and confidential, and is only for the use of the individual or entity named therein. If you are not the intended recipient, any use, distribution or copying of this communication or attachments is prohibited. If you are not the intended recipient, please forward this communication to us info@davismiles.com and delete it from your system.

Please consider the environment before printing this email.

From: Brian Van Winkle [mailto:brianvw62@icloud.com]

Sent: Wednesday, August 25, 2021 9:02 AM

To: Ron Holmes <rholmes@davismiles.com>

Cc: Tammy Sprague <gtsprague@comcast.net>

Subject: Re: Yesterday's mediation with Mr. Fish (59253-001)

** External Sender ** Cyber Security Reminder: Send suspicious messages to phishing@davismiles.com.

Ron,

Please inform Mr. Fish what we are considering so he does not move forward In recording the agreement as is.

It was his own statement that he wanted the negotiations done in a way that allowed a satisfactory completion/agreement of the subject to both parties. Tammy and I would like to take today to discuss our options. I truly feel that the timing of the second lien on the Roosevelt property should have allowed us to Remove the Roosevelt property from the negotiating list. This would have changed my decision and the outcome of the negotiation agreement. I will contact you after Tammy and I have had time to discuss the situation.

Thank you,

Brian.

Sent from my iPhone

On Aug 25, 2021, at 8:04 AM, Ron Holmes <rholmes@davismiles.com> wrote

Tammy and Brian – it is natural to have buyer's remorse following a mediation. I was worried you would overthink this on your ride home. I had suggested you put on your favorite music and not think about this too much. Each of you is focusing on what you gave up instead of what you gained.

The deal you made is still a good deal for both of you. You must see the bigger picture. You cannot and should not focus on the strength of your case before Thuma because that is only one element of the overall picture. Instead, you each need to focus on the victories, including the fact your aunt does not have to be subject to a foreclosure of the property and then a partition of the property. This may not have the same value compared to $73k sitting in a trust account but it does have value. It has no "money" value to it but it will cost her in terms of fees to defend the multiple actions, and it will cost you too to assert the defenses you state below. I don't think that is a slam dunk by any means. And again, this means the Williams are still in scorched earth litigation against your family. They will over paper you and your aunt to death. Maybe quite literally. She does not need that stress, nor do you. You also were able to get that property for what amounts to $46k. That is a bargain.

You also get the Condo for $40k. That was no small feat. That condo is worth north of $200k in this market and you come out way ahead in my assessment.

They also have to write you a $50k check from the redemption funds.

Yes, it is very possible you could have gotten Thuma to rule that retaining the $73k was a violation of the discharge injunction and you could seek attorney's fees and sanctions. This is still an unknown amount and Fish said he didn't think it was a slam dunk since the case is still pending in State Court, where the Court of appeals is weighing in on the decision.

Brian - I gave you counsel, sometimes strong counsel, to consider the bigger picture and not have tunnel vision on the Thuma outcome. You made a good decision.

A mediation is in its basic sense is a compromise of positions. You get something, they get something. I can completely understand you don't want them to get anything. That too is natural and makes total sense to me consider the long history of this dispute, but that is not how mediation works. Also, you need to see the bigger picture of not ever having to deal with the Williams ever again. This was Thuma's vision as to why he sent you to mediation. I agree with him as this was the only way to end this once and for all. This is huge in terms of stress, time and money. Please reconsider your positions.

It is my opinion you are both bound by the mediation agreement. You cannot simply withdraw it at this point because you want to. As such, I cannot file a motion for summary judgment because that violates the agreement. If you wish to attempt to set aside the agreement (no small task) then I must withdraw from the representation. I do not wish to withdraw but that would be required under the circumstances.

Please advise as to how you wish for me to proceed. I need to file the motion to approve the settlement with the Bankruptcy Court or I need to file a motion to withdraw. I see those as my only two options at this point.

Ron

Ron Holmes

Partner

rholmes@davismiles.com

320 Gold Ave. SW

Ste. 1111

Albuquerque, NM 87102

Tel:     (505) 268-3999

Fax:     (505) 243-6448

This e-mail message (including attachments) is privileged and confidential, and is only for the use of the individual or entity named therein. If you are not the intended recipient, any use, distribution or copying of this communication or attachments is prohibited. If you are not the intended recipient, please forward this communication to us info@davismiles.com and delete it from your system.

Please consider the environment before printing this email.

From: Brian Van Winkle [mailto:brianvw62@icloud.com]

Sent: Wednesday, August 25, 2021 9:02 AM

To: Ron Holmes <rholmes@davismiles.com>

Cc: Tammy Sprague <gtsprague@comcast.net>

Subject: Re: Yesterday's mediation with Mr. Fish (59253-001)

** External Sender ** Cyber Security Reminder: Send suspicious messages to phishing@davismiles.com.

Ron,

 Please inform Mr. Fish what we are considering so he does not move forward In recording the agreement as is.

 It was his own statement that he wanted the negotiations done in a way that allowed a satisfactory completion/agreement of the subject to both parties. Tammy and I would like to take today to discuss our options. I truly feel that the timing of the second lien on the Roosevelt property should have allowed us to Remove the Roosevelt property from the negotiating list. This would have changed my decision and the outcome of the negotiation agreement. I will contact you after Tammy and I have had time to discuss the situation.

Thank you,

Brian.

Sent from my iPhone

 On Aug 25, 2021, at 8:04 AM, Ron Holmes <rholmes@davismiles.com> wrote

1

Tammy and Brian – it is natural to have buyer's remorse following a mediation. I was worried you would overthink this on your ride home. I had suggested you put on your favorite music and not think about this too much. Each of you is focusing on what you gave up instead of what you gained.

The deal you made is still a good deal for both of you. You must see the bigger picture. You cannot and should not focus on the strength of your case before Thuma because that is only one element of the overall picture. Instead, you each need to focus on the victories, including the fact your aunt does not have to be subject to a foreclosure of the property and then a partition of the property. This may not have the same value compared to $73k sitting in a trust account but it does have value. It has no "money" value to it but it will cost her in terms of fees to defend the multiple actions, and it will cost you too to assert the defenses you state below. I don't think that is a slam dunk by any means. And again, this means the Williams are still in scorched earth litigation against your family. They will over paper you and your aunt to death. Maybe quite literally. She does not need that stress, nor do you. You also were able to get that property for what amounts to $46k. That is a bargain.

You also get the Condo for $40k. That was no small feat. That condo is worth north of $200k in this market and you come out way ahead in my assessment.

They also have to write you a $50k check from the redemption funds.

Yes, it is very possible you could have gotten Thuma to rule that retaining the $73k was a violation of the discharge injunction and you could seek attorney's fees and sanctions. This is still an unknown amount and Fish said he didn't think it was a slam dunk since the case is still pending in State Court, where the Court of appeals is weighing in on the decision.

Brian - I gave you counsel, sometimes strong counsel, to consider the bigger picture and not have tunnel vision on the Thuma outcome. You made a good decision.

A mediation is in its basic sense is a compromise of positions. You get something, they get something. I can completely understand you don't want them to get anything. That too is natural and makes total sense to me consider the long history of this dispute, but that is not how mediation works. Also, you need to see the bigger picture of not ever having to deal with the Williams ever again. This was Thuma's vision as to why he sent you to mediation. I agree with him as this was the only way to end this once and for all. This is huge in terms of stress, time and money. Please reconsider your positions.

It is my opinion you are both bound by the mediation agreement. You cannot simply withdraw it at this point because you want to. As such, I cannot file a motion for summary judgment because that violates the agreement. If you wish to attempt to set aside the agreement (no small task) then I must withdraw from the representation. I do not wish to withdraw but that would be required under the circumstances.

Please advise as to how you wish for me to proceed. I need to file the motion to approve the settlement with the Bankruptcy Court or I need to file a motion to withdraw. I see those as my only two options at this point.

Ron

2

06/10/2021 THU 16:01    FAX                                                    ☑001

```
                        ********************
                           FAX TX REPORT
                        ********************

                          TRANSMISSION OK

         JOB NO.                    2826
         DESTINATION ADDRESS        15758872136
         SUBADDRESS
         DESTINATION ID
         ST. TIME                   06/10 16:00
         TX/RX TIME                 00'40
         PGS.                       4
         RESULT                     OK
```



**Davis Miles McGuire Gardner, PLLC**
Attorneys *at* Law
320 Gold Avenue, Southwest Suite, 1111
Albuquerque, New Mexico 87102
Telephone: (505) 948-5050
Facsimile: (505) 243-6448
www.davismiles.com

**Ron Holmes**
Direct Dial: (505) 268-3999
rholmes@davismiles.com

June 10, 2021

**VIA FAX ONLY AT 575-887-2136**

W. T. Martin, Jr.
Martin, Dugan & Martin
P.O. Box 2168
Carlsbad, NM 88221-2168

     Re:    Brian Van Winkle et. al vs. Belleview Valley Land Co, et al. – 20-01022-T
     Our Matter: 59253-001

Dear Mr. Martin:

Please be advised this firm has been retained by Brian Van Winkle, as personal representative of the
Estate of Fred Dale Van Winkle ("Estate"), to represent the estate's interests in the pending
Bankruptcy Adversary Action under cause number 20-01022-T.

While I am just getting into the case, it has come to my attention that a Transcript of Judgment ("TJ")
was filed with the Roosevelt County Clerk on February 5, 2021, attempting to collect on the deficiency
judgment entered in the Twelfth Judicial District Court litigation. A copy of the TJ is attached hereto
for your review. It is my opinion the filing of the TJ violates 11 U.S.C. §524 as an attempt to collect
on a discharged debt. I have read Judge Thuma's opinion entered on March 5, 2021, regarding your
clients' continued attempts to collect on the Estate's discharged debts and it appears this is another
attempt to do so. The TJ was filed on February 5, 2021 and the opinion was entered on March 5,
2021, one month later. It is quite possible your clients have not directed you to release the TJ
following the Court's opinion. I am willing to believe that is plausible under the circumstances, but it is

Efficiency Act 48-1A-1 et. seq. that if the TJ is in fact improper then my client intends to seek redress under both the New Mexico Statutes and Title 11 of the United States Code.

If you have any questions regarding this matter please contact me directly.

Sincerely,

Ron Holmes
Attorney for Brian Van Winkle, Personal Representative

\\ProLaw02\ProLawFiles\ProLawDocuments\59253\59253-001\Drafts\5726828.docx

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                                    No. 13-11743 t7

     Debtor.

BRIAN VAN WINKLE and
TAMMY SPRAGUE,
Co-personal representatives,

     Plaintiffs,

v.                                                       Adv. No. 20-1022 t

BELLEVIEW VALLEY LAND CO.,
JOHN H. WILLIAMS, and
ELLEN B. WILLIAMS,

     Defendants.

## OPINION

     Plaintiffs brought this proceeding against defendants John and Ellen Williams (the "Williamses") to recover damages for an alleged violation of the discharge injunction. The Williamses deny any violation and have moved for summary judgment. The dispute involves the application of the discharge injunction to New Mexico redemption law. The Court concludes that the Williamses' motion should be denied and that summary judgment in Plaintiffs' favor on the issue of liability may be appropriate.

1.    Facts.[1]

     The Court finds that the following facts are not in genuine dispute:

---

[1] The Court takes judicial notice of its docket in this proceeding, the main case, and Cause No. D-1215-CV-2010-1054, filed in the Twelfth Judicial District Court, State of New Mexico. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

In 2008, Debtor Fred Van Winkle sued the Williamses in a dispute over certain real property he owned in Otero County, New Mexico (the "Property"). The Williamses counterclaimed. The upshot was a $243,944.31 money judgment in the Williamses' favor, entered in 2010. Interest accrued at 8.75%. The Williamses filed a transcript of the judgment in the Otero County records, creating a judgment lien on the Property. The Williamses then sued to foreclose the judgment lien.

Debtor filed a chapter 13 bankruptcy in 2011, staying the foreclosure. The case was dismissed without a discharge. Debtor then filed this chapter 7 case, receiving a discharge on August 26, 2013. On December 4, 2013, the Court modified the automatic stay to allow the Williamses to pursue their foreclosure action.

Debtor died in April 2014. His daughter, Tammy Sprague, was appointed personal representative[2] of his probate estate.[3] In that capacity she was substituted for Debtor in the foreclosure action.

A foreclosure judgment was entered on May 22, 2014. In July 2014, the Property was sold at a special master's sale. The Williamses were the sole bidders, credit bidding $67,000 of their judgment against Debtor. The state court approved the special master's report and title to the Property was conveyed to the Williamses by a special master's deed dated July 8, 2014. The state court also awarded the Williamses a deficiency judgment of $271,905.61.

On March 20, 2015, Sprague filed a motion in this case to compel the trustee to abandon Debtor's right to redeem the Property. The motion was unopposed and was granted. In April 2015 Sprague as personal representative filed a redemption petition in state court. Sprague deposited

---

[2] Brian Van Winkle, Debtor's son, was later named co-representative.

[3] Probate is apparently still ongoing. Sprague recently represented that probate had stalled because of the numerous bankruptcy proceedings.

-2-

Case 20-01022-t    Doc 36    Filed 03/05/21    Entered 03/05/21 14:08:05 Page 2 of 11
Case 20-01022-t    Doc 63-1    Filed 09/20/21    Entered 09/20/21 16:13:40 Page 8 of 40

about $73,200 (the "Redemption Funds") into the state court registry.[4] The deposit was made pursuant to New Mexico's redemption statute, and also to an April 21, 2015, court order authorizing the deposit. The order stated that the Redemption Funds were to be held "until the rights of all parties can be determined by further order of the [c]ourt."

The Williamses responded to the petition, arguing, inter alia, that "[p]etitioner may only redeem the Property if, prior to redemption," Sprague paid the entire deficiency judgment amount. The Williamses also filed a new complaint to foreclose their lien on the Property if the redemption were allowed, together with a motion for summary judgment on the new foreclosure complaint.

Sprague promptly sued the Williamses in this Court (adv. pro. 15-1047), alleging that the Williamses' actions violated the § 524(a)[5] discharge injunction. The Court ruled that they had, reasoning that the bankruptcy discharge transformed the Williamses' judgment and judgment lien into an *in rem* claim, so once the claim was paid through the foreclosure sale, it was entirely extinguished and could not reattach to the redeemed Property. In 2018, the Tenth Circuit BAP reversed this ruling, holding that New Mexico law was to the contrary.[6]

Following the 2018 BAP decision, Sprague attempted to assign the right of redemption from Debtor's probate estate to herself, Brian Van Winkle, and Brian's wife, as Debtor's heirs. Sprague then filed a motion in state court to substitute the three of them as the redemption petitioners. The state court denied the motion.

On September 19, 2018, the Williamses asked for a hearing on their long-dormant summary judgment motion on the new foreclosure complaint. The state court held a hearing March 11, 2019. On April 26, 2019, the state court entered a minute order conditionally granting the

---

[4] Sprague and/or Brian Van Winkle loaned the funds to Debtor's probate estate.

[5] All statutory references are to 11 U.S.C. unless otherwise indicated.

[6] For the Court's analysis, *see Sprague v. Williams*, 598 B.R. 297, 299 n.2 (Bankr. D.N.M. 2019).

motion. The court ruled: "in the event Defendants and/or Defendants-in-Intervention redeem the property herein, Plaintiffs' judgment lien is reinstated."

The minute order was followed by a longer order, entered July 19, 2019, drafted by the Williamses' counsel. The order stated in part:

> The hearing setting the final redemption amount is mandatory prior to issuance of the certificate of redemption.
> . . . .
> Plaintiffs requested orally at the hearing that the sums previously deposited by Defendants for the redemption be paid over to them. The Court will not rule on that request without proper motion, briefing and hearing.
> . . . .
> Defendants shall have 10 days from the date of this Order to file an election either (a) requesting issuance of a certificate of redemption and hearing to set the final amount or (b) withdrawing their request for issuance of a certificate of redemption. If Defendants fail to timely file the required election, Defendants are deemed to have elected option (b), withdrawal. In either case, the Court shall promptly set the matter for hearing and decide the remaining issues, including who is entitled to receive the initial deposited redemption amount.

Sprague did not file an election. The state court held a hearing on August 9, 2019, on the Redemption Funds. In an August 12, 2019, order, the state court ruled in part:

> Defendant is deemed to have elected withdrawal of the request for issuance of a certificate of redemption. . . . By election, Defendant forfeited and/or waived the right to issuance of the certificate of redemption and to reacquire legal title to the real property at issue pursuant to the redemption.

The order awarded the Redemption Funds to the Williamses.

The orders denying substitution, granting summary judgment, and awarding the Redemption Funds to the Williamses have all been appealed to the New Mexico Court of Appeals. The appeal is pending. In this proceeding, Plaintiffs argue that the Williamses' successful efforts to obtain the Redemption Funds violated the discharge injunction.

2.   Summary Judgment Standards.

"A party may move for…[and t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056. "Where one party has invoked the power of the court to render a summary judgment against an adversary, Fed. R. Civ. P. 54(c) and 56, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment." *Peiffer v. Lebanon School Dist.*, 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citing *Nebraska Health Care Ass'n Inc. v. Dunning*, 575 F. Supp. 176 (D. Neb. 1983)); *see* Fed. R. Civ. P. 56(f)(1).

3.      The Court Can Rule on the Alleged Discharge Injunction Violation.

Relying on theories of law of the case/res judicata, the *Rooker-Feldman* Doctrine, and comity, the Williamses argue that the Court cannot address the merits of Plaintiffs' discharge injunction claim.

A.      Law of the Case/Res Judicata. The Williamses first argue that the 2018 BAP decision allowed them to foreclose on the Property after Sprague redeemed it. The argument misses the point. Plaintiffs concede that the 2018 BAP decision would have permitted the Williamses' action, had Sprague redeemed the Property. Plaintiffs argue, however, that Sprague *did not* redeem the Property. Absent redemption, the Williamses had nothing except a discharged *in personam* debt, so taking the Redemption Funds violated the discharge injunction. This argument was never addressed by the BAP, this Court, or the state court. Claim preclusion principles therefore do not apply. *See, e.g., Nwosun v. General Mills Restaurant, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (no claim preclusion if the second suit is not based on the same cause of action).

B. Comity. The Williamses next argue that comity prevents the Court from ruling in this proceeding. That is not right for two reasons. First, the state court never addressed whether the Williamses violated the discharge injunction, so comity is not an issue. Second, when considering a violation of the discharge injunction, "[a] bankruptcy court can find that a postpetition state court judgment is void despite the full faith and credit normally given to state court judgments." 4 Collier on Bankruptcy ¶ 524.02[1]; *see also In re Gray*, 573 B.R. 868, 875–79 (Bankr. D. Kan. 2017) (state court judgment for debt discharged in bankruptcy was a legal nullity and void ab initio, so bankruptcy court did not violate comity or preclusion doctrines); *In re Pavelich*, 229 B.R. 777, 783 (9th Cir. BAP 1999) ("The issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment."); *In re Hamilton*, 540 F.3d 367, 376 (6th Cir. 2008) (to same effect).

C. *Rooker-Feldman*. The Williamses' final argument is that the *Rooker-Feldman* doctrine prohibits the Court from ruling. The argument must be overruled, again for two reasons. First, Plaintiffs have appealed the state court's order awarding the Redemption Funds to the Williamses. Because the order was not final and nonappealable, *Rooker-Feldman* does not apply. *See, e.g., In re Van Winkle*, 616 B.R. 896, 901 (Bankr. D.N.M. 2020) (*Rooker-Feldman* only applies to final, nonappealable state court judgments, citing *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006)). Second, the state court did not address the issue now before the Court. The Court has carefully reviewed the state court's orders and the arguments made by counsel in the state court action. No mention is made of, nor are there any rulings on, the discharge injunction. *Cf. In re Flanders*, 657 Fed. Appx. 808, 816-17 (10th Cir. 2016) (unpublished) (applying *Rooker-Feldman* because the state court ruled on the scope and effect of the discharge injunction).

The Court may rule on whether the Williamses violated the discharge injunction.

4.    New Mexico Redemption Law.

New Mexico's redemption statute provides in part:

A. After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in the foreclosure proceeding:

(1) by paying to the purchaser, at any time within nine months from the date of sale, the amount paid at the sale, with interest from the date of sale at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser after the date of sale, with interest on the taxes, interest, penalties and payment made on liens or mortgage at the rate of ten percent a year from the date of payment; or

(2) by filing a petition for redemption in the pending foreclosure case in the district court in which the order, judgment or decree of foreclosure was entered and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of that district court, at any time within nine months from the date of sale. Copies of the petition for redemption shall be served upon the purchaser of the real estate at the judicial foreclosure sale and upon all parties who appeared in the judicial foreclosure case; and

(3) the former defendant owner shall have the first priority to redeem the real estate. If the former defendant owner does not redeem the real estate as provided in this subsection, each junior mortgagee or junior lienholder shall have a right to redeem the real estate. The order of priority of such redemption rights shall be the same priority as the underlying mortgages or liens, as set forth in the court order, judgment or decree of foreclosure or as otherwise determined by the court. All redemptions must be made within the time periods set forth in Paragraphs (1) and (2) of this subsection.

B. The purchaser of real estate at a foreclosure sale, upon being served with the petition for redemption of the property, shall answer the petition within thirty days after service of the petition.

C. The hearing shall be governed by the rules of civil procedure and shall be set upon the earlier of the filing of a redemption by the former defendant owner or the expiration of the period for filing a redemption. At the hearing, the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances. If more than one redemption is filed, the court shall also determine which redemption has priority pursuant to Subsection A of this section and which party is therefore entitled to redeem the property. At the conclusion of the hearing, the district court may order the clerk of the court to issue the certificate of redemption upon such terms and conditions as it deems just.

Case 20-01022-t  Doc 63-1  Filed 09/20/21  Entered 09/20/21 16:13:40 Page 13 of 40

D. As used in this section, the terms "owner", "junior mortgagee", junior lienholder" and "purchaser" include their respective personal representatives, heirs, successors and assigns.

NMSA § 39-5-18.[7]

The redemption statute does not say when a judicial redemption is complete and title passes to the redemption petitioner. The Court concludes that the most reasonable construction of the statute is that judicial redemption is not completed until the court has ruled on the petition after the hearing and, if the court approves the redemption, ordered the clerk of court to issue a certificate of redemption. Thus, for example, if two junior lienholders try to redeem within the time allotted and deposit money with the court clerk, the court would have to determine which one is entitled to redeem. NMSA § 39-5-18(A)(3). Presumably, the court would let one redeem and refund the other's deposit. Similarly, if a redemption petitioner deposited insufficient funds, the redemption would not be completed, if ever, until the court fixed the proper amount due and the

---

[7] Throughout, the parties have assumed that Debtor's probate estate was the proper party to redeem the Property. That assumption may be incorrect. Upon Debtor's death, his real property devolved to his heirs or devisees. *See* NMSA § 45-3-101(B); *see also Kerr v. Porvenir Corp.*, 889 P.2d 870, 874–75 (N.M. App. 1994) ("Property disposed of by will passes directly to the beneficiary under the will. It does not pass to the administrator and then to the beneficiary."); *Roberts v. Robert*, 158 P.3d 899, 902 (Ariz. App. 2007) (same; heir has the right to redeem inherited property sold at a tax lien sale). As Sprague and Brian Van Winkle inherited the Property, they took title when Debtor died and had the right to redeem it without an assignment from the probate estate. Further, the Williamses' judgment lien likely would not attach on redemption, as the Property would not be owned by the judgment debtor. *See, e.g., Turner v. Les File Drywall, Inc.*, 868 P.2d 652 (N.M. 1994).

redemption petitioner paid it.[8] The Court rejects the Williamses' argument that a redemption is "final," and title passes, when the petition is filed and proposed redemption funds are deposited.[9]

Here, Sprague filed her petition for redemption, deposited the Redemption Funds, and served the petition on the Williamses. The Williamses timely objected to the petition, arguing, inter alia, that the redemption deposit was inadequate. The state court did not rule on the dispute because the bankruptcy litigation intervened and the matter was stayed.

The parties went back to state court after the 2018 BAP decision. The state court held a hearing and ruled that Sprague "forfeited . . . the right . . . to re-acquire legal title to the [Property] . . . pursuant to the redemption." Thus, the state court ruled that the redemption never happened. Title never passed from the Williamses to Sprague.

5.    The Williamses' Violated the Discharge Injunction.

Debtor's discharge on August 26, 2013, "operate[d] as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" Section 524(a)(2). The Williamses' judgment lien became in rem only; any unsecured deficiency was discharged. *See* § 727(b); *see also In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990) (tax lien); *In re Montoya*, 95 B.R. 511, 514 (Bankr. S.D. Ohio 1988) (lien for condominium fees).

Had title to the Property passed to Sprague, then per the 2018 BAP decision the Williamses' judgment lien would have reattached to the Property. Because title did not pass, however, the

---

[8] Alternatively, a state court could deny the attempted redemption altogether, upon a finding that the redemption deposit was inadequate. *See Chapel v. Nevitt*, 145 N.M. 674, 683-84 (Ct. App. 2007) (attempted redemption disallowed because the redemption funds were not deposited).

[9] For further support, *see In re Van Winkle*, 2017 WL 562430, at *3 (Bankr. D.N.M.) ("The redemption remains pending in State Court, and Defendants still have title to the Subdivision Property."); *In re Van Winkle*, 583 B.R. 759, 764 (10th Cir. BAP 2018) ("The petition to redeem remains pending in the state court, and Appellants still hold title to the Otero Land.").

-9-

Williamses had no debt they could collect. The Redemption Funds were not subject to the Williamses' judgment lien (which only attaches to real property). *See* NMSA § 39-1-6. The Williamses' continued pursuit of the Redemption Funds was an act to collect the discharged debt as a personal liability of the Debtor, in violation of the discharge injunction. *See, e.g.*, *In re Sanchez*, 545 B.R. 55, 59 (Bankr. D.N.M. 2016) ("the discharge injunction 'prohibits efforts to collect a [prepetition] debt *as a personal liability of the debtor*[.]'") (quoting *In re Paul*, 534 F.3d 1303, 1309 n.6 (10th Cir. 2008)). Additionally, "actions that are facially permissible can nevertheless violate the discharge injunction if the effect of the actions is to coerce payment of discharged debts." *Id.* at 60 (citing *Paul*, 534 F.3d at 1308).

6.     The Williamses' Arguments to the Contrary Lack Merit.

The Williamses make three arguments why their pursuit of the Redemption Funds did not violate the discharge injunction. None have merit.

A.     Petition Filed Post-Discharge. The Williamses first argue that no violation occurred because the redemption petition was filed post-discharge. This argument fails. The relevant inquiry is whether the Williamses tried to collect a discharged debt, not whether Sprague filed the redemption petition before or after the discharge injunction was entered.

B.     Third Party Funds. The Williamses next argue that there could be no discharge injunction violation because a third party provided the Redemption Funds. This argument likewise fails. The funds are owned by the probate estate—it borrowed them from Sprague and/or Brian Van Winkle.[10] The fact that the funds originated from a third party, who loaned them to the probate estate, is irrelevant.

_____

[10] Additionally, if the third-party funding meant that the redemption petitioner was the third party, then the Williamses' judgment lien could not reattach to the Property once the redemption was completed. *See* note 8 supra.

C.    Voluntary Payment. Finally, the Williamses argue that Sprague voluntarily repaid the debt in accordance with § 524(f). This argument is frivolous. While Sprague was willing to pay the redemption price to get the Property, she had no desire to pay Debtor's discharged debt to the Williamses. This proceeding is strong evidence of that. In any event, redemptions do not pay debts secured by encumbered property; those debts are paid with foreclosure sale proceeds.

### Conclusion.

Had Debtor's probate estate had redeemed the Property, the Williamses could have collected the Redemption Funds, conveyed the Property to the estate, and then re-foreclosed on the Property, per the 2018 BAP decision. That is not what happened, however. Instead, the Property was *not* redeemed, title did *not* pass to the probate estate, and the Williamses were left with no secured claim and no debt they could collect. Thus, when the Williamses sought and accepted the Redemption Funds, they violated the discharge injunction. By separate order, the Court will deny the Williamses' motion for summary judgment and give notice per Rule 56(f) that it is considering granting summary judgment on liability in Plaintiffs' favor.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 5, 2021
Copies to: Counsel of record

-11-

Case 20-01022-t   Doc 36   Filed 03/05/21   Entered 03/05/21 14:08:05   Page 11 of 11
Case 20-01022-t   Doc 63-1   Filed 09/20/21   Entered 09/20/21 16:13:40   Page 17 of 40

From: **brian van winkle** brianvw62@gmail.com
Subject: **Fwd: Roosevelt County Transcript of Judgment**
Date: **Jun 4, 2021 at 6:28:16 PM**
To: **Minnie The Pearl** arminder18@msn.com
Bcc: **brianvw62@gmail.com**

**Sent from my iPhone**

**Begin forwarded message:**

**From:** Joel Gaffney <joel@gaffneylaw.com>
**Date:** March 22, 2021 at 5:17:01 PM MDT
**To:** Mr Brian Dale Van Winkle <brianvw62@gmail.com>, Tammy Sprague
<gtsprague@comcast.net>, hvanwinkle505@comcast.net
**Subject: Roosevelt County Transcript of Judgment**

Good afternoon,

It has been brought to my attention that the Williamses and Belleview
recorded a transcript of judgment regarding their deficiency judgment in
Roosevelt County on February 5. This could arguably be yet another
instance of violating the discharge injunction. I intend to raise it in the
pleading that I will file in reply after the Defendants respond to the Court's
indication that it is considering summary judgment as to liability against
them. Their pleading is due to be filed by April 5 and my response will be
due 14 days later.

I'm attaching here for your reference the portion of that pleading
addressing that claim. I will likely flesh it out in more detail, but I wanted
you to see it beforehand.

--
Joel Alan Gaffney

Shareholder
Gaffney Law, PC
PO Box 3460
Albuquerque, NM 87110
c: (505) 226-1748
f: (505) 213-0629

*W*

Reply to R...bility.docx
22 KB

Hello Joel,

 How does everything look going forward?  Do we need to meet?  Do we
have a preliminary court date hearing set?

 Thanks
Brian.

Sent from my iPhone

On Dec 24, 2019, at 11:38 PM, Joel Gaffney <joel@gaffneylaw.com>
wrote:

Brian,

Attached here is the reply I intend to file to the Response filed by Belleview
and the Williamses. If you have any comments or proposed changes,
please send them to me by noon on Friday to I can discuss them with you
before I file this document.

--
Joel Alan Gaffney
Shareholder
Gaffney Law, PC
6565 America's Parkway #200
Albuquerque, NM 87110
o: (505) 563-5508
c: (505) 226-1748
f: (505) 213-0629
<Reply to Motion to Reopen.docx>
<Reply to Motion to Reopen Exhibit A.pdf>

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,     Case No. 13-11743-t7

    Debtor.

## REPLY TO RESPONSE TO MOTION TO REOPEN CASE

COMES NOW BRIAN VAN WINKLE ("**Van Winkle**") and TAMMY SPRAGUE ("**Sprague**" and, collectively with Van Winkle, "**Movants**"), by and through their undersigned counsel GAFFNEY LAW, PC (Joel Alan Gaffney, Esq.), for their Reply to the "Response to Motion to Reopen Case," (Document #99) filed by John Williams ("**Mr. Williams**"), Ellen B. Williams ("**Mrs. Williams**" and, collectively with Mr. Williams, the "**Williamses**"), and Belleview Valley Land Co., Inc. ("**Belleview**" and, collectively with the Williamses, "**Objectors**") on December 5, 2019. In further support of their Motion, Movants hereby state as follows:

### SUMMARY OF ARGUMENT

1. Objectors raise several arguments in their Response, but the Response is replete with technical and procedural errors and those arguments are largely immaterial to the matter at issue in the Motion and should be deferred until a proper motion is filed by Objectors in the Movants' contemplated adversary proceeding. The only argument that is material to the issue of whether this case should be reopened, whether Movants have standing to bring the motion, is one in which the Objectors completely mischaracterize the facts. Movants filed this Motion and seek to commence an adversary proceeding on behalf of the estate of their late father, the Debtor, which estate is still being administered in the Twelfth Judicial District Court of New Mexico, Lincoln County. The letters of administration referenced in the proposed adversary complaint, which was attached to the Motion, are attached hereto as **Exhibit A**.

### MOVANTS HAVE STANDING TO BRING THIS MOTION

2. Objectors' argument that Movants lack standing to bring this Motion is incorrect. Objectors do not even dispute that a debtor has standing to file a motion to reopen their bankruptcy case. (*See* Document #99, page 6) *see also Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995). The public docket of this case shows that Movants are each appearing in this case as "Debtor's Designated Representative . . ., as co-responsible party for the Estate of Fred Dale Van Winkle," and not in their individual capacities. The caption of the Movants' proposed adversary complaint, and Paragraph 10 of same, clearly show that Movants propose to bring an adversary proceeding not in their individual capacities, but rather as co-personal representatives of the Estate of Fred Dale Van Winkle. (*See* Document #97). Nevertheless, Objectors spend three pages, including an 18-line footnote, arguing that Movants lack standing to bring the motion because they "are not a debtor, creditor, or trustee of the debtor."

### NO OTHER ISSUES ARE PROPERLY BEFORE THE COURT

3. Movants filed the Motion requesting the Court reopen this case to permit them to file an adversary proceeding on behalf of the estate of the Debtor, who is now deceased. Objectors filed a document titled "Response to Motion to Reopen Case" that has the caption of an adversary proceeding that has concluded rather than of the bankruptcy case, that identifies the Objectors confusingly as "Defendants," and that contains 102 pages of documents that appear to be labeled "Plaintiff's Exhibit" 1 through 17. It is unclear what these additional documents are intended to show with respect to the motion to reopen. Instead, they appear to be addressed toward a hypothetical adversary complaint that has not yet been filed.

4. It would be inappropriate for the Court to consider such issues at this time. The Motion attached a proposed complaint for illustrative purposes, but clearly indicated that the actual complaint that is filed could differ from the one attached. Movants requested the case be reopened so that they could file a complaint similar to the one attached to the Motion. Movants

appreciate being given advance notice of the Objectors' intended response to the complaint, it would not be proper for the Court to rule on a motion to dismiss, a motion to withdraw the reference, or a motion to abstain from hearing the complaint, before there is an actual complaint that has been filed.

5. Once this case has been reopened, Movants may file an adversary complaint that, while similar to the one attached to the Motion, differs in ways that meaningfully alter the analysis of Objectors' proposed hypothetical responsive pleadings. The concept of ripeness exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967). The Court should decline the invitation to engage in a game of hypotheticals, and delay ruling on any issues other than the Motion to Reopen itself until such time as those matters are ripe for determination.

## THE PROPOSED COMPLAINT IS NOT FRIVOLOUS

6. The Movants' proposed adversary complaint raises an issue that is appropriate for this Court to consider. Movants' proposed complaint seeks nothing more or less than monetary sanctions for the Objectors' alleged violations of the debtor's discharge order. The complaint does not seek to stay any proceedings currently pending in state court or to modify any judgments that have been issued by a state court. The Movants seek only a determination whether the Objectors' conduct has violated the debtor's discharge and, if so, an appropriate money judgment for the damages caused by that violation.

7. The Movants have already assured Objectors' counsel that, when the case is reopened, the adversary complaint that is ultimately filed will not include counsel as a defendant. Objectors acknowledge having received that assurance, but commit three pages of their response to addressing the merits of that issue nonetheless.

WHEREFORE, Movants respectfully request that this Court reopen this bankruptcy case.

Respectfully submitted,
GAFFNEY LAW, PC

*s/ Joel Alan Gaffney*

By:    Joel Alan Gaffney, Esq
6565 America's Parkway # 200
Albuquerque, NM 87110
(505) 563-5508

joel@gaffneylaw.com

*Attorneys for Movants*

2
Reply to Response to Motion to Reopen

# EXHIBIT A - 2 PAGES

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE, and,          Case No. 13-11743-t7

          Debtor.

BRIAN VAN WINKLE, not in his personal
capacity but solely as co-personal representative
of the estate of Fred Van Winkle, and

          Adv. No. 20-01022-t
TAMMY SPRAGUE, not in her personal
capacity but solely as co-personal representative
of the estate of Fred Van Winkle,

          Plaintiffs,

     v.

BELLEVIEW VALLEY LAND CO., a New
Mexico corporation, JOHN H. WILLIAMS,
and ELLEN B. WILLIAMS,

          Defendants.

## REPLY TO DEFENDANT'S RESPONSE TO COURT'S
## NOTICE OF POTENTIAL SUMMARY JUDGMENT AS TO LIABILITY

COMES NOW BRIAN VAN WINKLE ("**Van Winkle**"), not in his personal capacity but
solely as co-personal representative of the estate of Fred Van Winkle ("**Debtor**") and TAMMY
SPRAGUE ("**Sprague**" and, collectively with Van Winkle, the "**Plaintiffs**"), not in her personal
capacity but solely as co-personal representative of the estate of the Debtor, by and through their
undersigned counsel GAFFNEY LAW, PC (Joel Alan Gaffney, Esq.), for their Reply to
Defendant's Response to Court's Notice of Potential Summary Judgment as to Liability (the
"**Response**"), filed on April 5, 2021 by Belleview Valley Land Co., a New Mexico corporation
("**Belleview**"), John H. Williams ("**Mr. Williams**"), and Ellen B. Williams ("**Mrs. Williams**,"
collectively with Mr. Williams, the "**Williamses**") (the Williams and Belleview are collectively
referred to herein as "**Defendants**"). In support of their Reply, Plaintiffs hereby state as follows:

1. Specific responses to the allegations made my Defendants in their Response will be
incorporated here.
    ### Defendants Have Continued to Violate the Discharge During this Litigation

2. On February 5, 2021, Defendants, through their counsel, recorded a transcript of their
July 28, 2014 deficiency judgment against "Tammy Sprague, Personal Representative of the
Estate of Fred Dale Van Winkle, Deceased – Estate of Fred Dale Van Winkle, deceased," with
the Roosevelt County Clerk in New Mexico ("**TOJ Recording**"). A true and correct copy of the
recorded transcript of judgment is attached here as [an Exhibit].

3. The estate of Fred Dale Van Winkle owns no real property in Roosevelt County, New
Mexico. On information and belief, Defendants are aware that their judgment debtor owns no
real property in Roosevelt County, New Mexico.

4. At the time he commenced his Chapter 7 case, Fred Dale Van Winkle owned a one-

half interest in a tract of land in Roosevelt County, New Mexico ("Roosevelt Tract"). (Main Bk Case Document #1, p8). Defendants did not file proof of any claim, let alone a claim secured by this property, in the bankruptcy case.

5. On October 15, 2014, the Court approved the trustee's sale of the Roosevelt Tract to Tammy Sprague, individually. The trustee had given notice of the proposed sale to all creditors (including Defendants) on September 19, 2014. (Main Bk Case Document ##38, 39, 44). Defendants did not object to the sale, nor did they assert a secured claim in the Roosevelt Tract at that time.

## ARGUMENT

### Laches Prevent Defendants from Claiming the TOJ Recording is Mere Ministerial Act to Renew Prepetition Lien

6. The doctrine of Laches has four elements: 1) conduct by one party giving rise to a claim by a second party; 2) delay on the part of the second party, who had notice of the conduct giving rise to a claim; 3) lack of knowledge on the part of the first party that the second party intended to assert the claim; and 4) injury or prejudice to the first party if the second party is permitted to assert the claim now. *See Collado v. City of Albuquerque*, 132 N.M. 133, 140 (N.M. Ct. App. 2002).

7. Here, each of the elements is met, as follows:

   a. Sprague's purchase of the Roosevelt Tract from the trustee gave rise to Defendant's potential claim that any judgment lien attached to the Roosevelt Tract was enforceable against the Sprague or the tract notwithstanding the transfer.

   b. Defendants, who received notice of the sale in September 2014, never instituted an action to foreclose on a judgment lien against the Roosevelt Tract and delayed taking any action related to it until more than six years after the sale was approved. They did not even seek payment from the Trustee for any amount, let alone their secured claim against the Roosevelt Tract.

   c. Because of how aggressively Defendants have enforced their judgment liens in other counties, the fact that they never enforced any claims in Roosevelt County led Sprague to believe they intended not to enforce any claim in Roosevelt County.

   d. If Defendants are permitted to assert a judgment lien against the Roosevelt Tract under these circumstances, Plaintiffs (including Sprague) will incur significant legal fees litigating the enforceability and extent of Defendants' lien.

WHEREFORE, the Plaintiffs respectfully request that this Court grant the Plaintiffs summary judgment as to liability on all matters previously briefed, schedule an inquest to determine the amount of damages appropriate under the circumstances, and either permit the Plaintiffs to file an Amended Complaint to assert claims regarding the Roosevelt Tract or include damages related to the Roosevelt Tract in the inquest.

Respectfully submitted,
GAFFNEY LAW, PC

*s/ Joel Alan Gaffney*

By:      Joel Alan Gaffney, Esq
         PO Box 3460
         Albuquerque, NM 87190
         (505) 266-1748

joel@gaffneylaw.com

*Attorneys for Plaintiffs*

FILED
12th JUDICIAL DISTRICT COURT
Lincoln County
10/30/2019 3:36 PM
KATINA WATSON
CLERK OF THE COURT
Ashley Ventura

STATE OF NEW MEXICO
COUNTY OF LINCOLN
TWELFTH JUDICIAL DISTRICT COURT

BRIAN VAN WINKLE,

     Plaintiff,

v.

                                  Cause No. D-1226-CV-2019-00184
                                  Judge Daniel A. Bryant

TAMMY SPRAGUE, personal representative
of the ESTATE OF FRED VAN WINKLE, deceased,

     Defendant.

## LETTERS OF ADMINISTRATION

TO WHOM IT MAY CONCERN:

     Notice is now given that **BRIAN VAN WINKLE** and **TAMMY SPRAGUE** have been appointed to serve as the co-personal representatives of the estate of **FRED VAN WINKLE**, and have qualified as such by filing with the court statements of acceptance of the duties of that office.

     The co-personal representatives have all of the powers and authorities provided by law and specifically, by Section 45-3-715 NMSA 1978, and the concurrence of Brian Van Winkle and Tammy Sprague shall be required on all acts connected with the administration and distribution of the estate, except to the extent permitted by NMSA 1978, Section 45-3-717(A), and except as follows:

     1.    Brian Van Winkle shall have the exclusive authority to make any and all decisions regarding filing an action to remove from the Twelfth Judicial District Court of the State of New Mexico to a federal court the redemption proceeding that Tammy Sprague commenced as personal representative of the estate in the case of *Belleview Valley Land Co. et al. v. Tammy Sprague, Personal Representative of the Estate of Fred Van Winkle, deceased*, which the Court identifies as

Case No. D-1215-CV-2010-01054, and, if that proceeding is removed to a federal court, to make any and all decisions regarding the prosecution of that proceeding.

2.      Tammy Sprague shall have the exclusive authority to make any and all decisions regarding the prosecution or defense of any litigation concerning the estate in a state court, including with respect to the redemption proceeding described above if it is not removed to a federal court or if it is remanded to a state court after its removed to a federal court and with respect to the foreclosure action filed against the estate in the Twelfth Judicial District Court of the State of New Mexico in the case of *Belleview Valley Land Co. et al. v. Estate of Fred Van Winkle, deceased*, which the Court identifies as Case No. D-1215-CV-2010-01054.

Issued this __30TH__ day of October 2019.

KATINA WATSON
CLERK OF THE DISTRICT COURT

By:      /s/ Ashley Ventura
         Deputy Clerk

*\\Lawofficeserver\e\Dox\CLIENT\1072\001\00019458.WPD*

June 14th, 2021 hearing Judge Thuma

If you have read the opinion of judge Thuma, the following will be easier to follow.
During depositions, our attorney neglected to do his job in court and was repremanded
by Judge Thuma and asked if he had Mal-practice insurance. He also asked
Mr. Gaffney if he was competent enough to represent the Estate or if he had any
existing mental problems that would prevent him from performing his duties.
The judge asked me if I would like to seek new council and I told him I was at the
mercy of the court. I gave Mr. Gaffney a Ten Thousand dollar retainer to represent
the estate.

Tammy Sprague, who oversees the legal issues in District Court for the Estate
informed me that our New Mexico District Court appeals attorney( Redemption appeal)
, Katherine Wray...
..."Has had to begin briefing our appeal in state court in the event that this issue is not
resolved in Federal Court by judge Thuma. She has Delayed as long as she is
comfortable and when she began preparing the brief on June 1st, she discovered
that the digital recordings of our hearings under appeal are missing.
We will be having to file a delay if they dont turn up in the next couple of days."

I am also missing important email exchanges between myself and my Attorney
Joel Gaffney. The following exchange between Brian Van Winkle And the Estates Attorney
Mr. Joel Gaffney was fowarded to Three different different individuals that acted as advisors
to read. These individuals can be contact to verify the email exchanges that are now missing
from my phone. if they have not also had their servers email wiped clean of these threads .
Also, my phone will be offered as evidence if needed by the court to verify for
investigation thru digital forensics the following statements if requested by
the court.

Prior to the last opinion Given by Judge Thuma , both my sister, Tammy Sprague
and I, made Numerous request both written and verbally prior to the hearing
requesting to Mr. Gaffney to include pertinent evidence of an illegal Property lien that
had been placed on The estates Heirs piece of property in Roosevelt County by the
Defendants. This Lien evidence is proof beyond the shadow of a doubt that The Defendants
were pursuing a discharged debt in personam. This a second Violation of the  B.C Discharge.
The first was a sanction awarded the estate for 50K for discharge violations.
Immediatly after this hearing that the opinion you just read was from derived from,
I went and lodged a complaint with Judge Thumas office.
I asked that the court note that I was not represented in the energy that I was
expecting to be and was not happy with my legal representation by Mr. Gaffney in court.
The following week I contacted Mr. Gaffney Through E-mails and had the Roosevelt
County Clerks office Directly Email to him the illegal in-personam Lien Documents
on the Heirs Property that had been placed there by Mr. Williams.

June 14th, 2021 hearing Judge Thuma

Mr. Gaffney informed me he did not find any merit in the idea and would not bother
the court with a special request that would allow him to turn them into the court and
flatly would not be requesting it to be submitted to the court to be on record.

I exchanged 8-10 emails in an attempt to explain the importance of the lien documents
to Mr. Gaffney to no avail. Mr. Gaffney sent me back several intensive legal briefs that
he sited as cause to not pursue futher action with the court which made no sense to me.

It was at this time that I informed Mr. Gaffney that I had lodged a complaint to
the Court after his last performance for not presenting the correct evidence as requested
by the Estates Representitives, and that if he refused to do as the estate Representitives
requested and make the Roosvelt Co. property Lien by Mr. Williams Known to the Court,
i was going to do it Pro-Se, that following week.

Mr. Gaffney Replied back that after re-examining the documents sent to him from the
Roosvelt County Clerks Office, He had made an error and would prepare a document
representing  the estates wishes concerning the lien and present it to the court.

Mr. Gaffney Prepared a draft ( attached) and said we had to wait 14 days to reply.
The reason Being that Mr. Williams was being given time to answer to Judge Thumas
Request to show proof why he should not rule for Summary Judgement in the Estates favor.
I received a dated and stamped copy of what he submitted ( or Did He even submit it?).
I have been expecting to hear an opinion from Judge Thuma for a while now.
The E-mail threads of our written exchanges has been wiped from my server.
Mr. Gaffney Emailed Me a Court Time stamped and dated copy of what he turned into the
court concerning the Lien in personam evidence, My Email Copy along with our conversation
thread disappeared, much like the States Appealant evidence.

 The Estate is Not Even Aware if Mr. Gaffney presented the evidence to the court .
Theres concern that the court may not even be aware of the Roosvelt County Property Lien and
additional In Personam pursuit of a discharged debt by Mr. Williams.

theres the need on monday , June 14th, 2021, to request that The Judge give a Summary
Judgement
as he promised in his last opinion and to take into consideration the Roosvelt County property lien
which

proves in personam persuit to collect a discharged debt.


I need an attorney to either represent me in front of Judge Thuma and present this
existing , almost ready material, Or assist me to prepare a
Pro-Se document to present to the court.



Brian Van Winkle

—06-/-09-/-21—

Estate representitive for the Estate of Fred Van Winkle in Federal Court.

FILED
12TH JUDICIAL DISTRICT COURT
OTERO COUNTY NM
8/8/2014 2:32:20 PM
KATINA WATSON
CLERK OF COURT
Angela Harris

## TWELFTH JUDICIAL DISTRICT COURT
## COUNTY OF OTERO
## STATE OF NEW MEXICO

### TRANSCRIPT OF JUDGMENT

CASE NUMBER: CV-2010-1054

NATURE OF ACTION: Counterclaim for Violation of Subdivision Act

JUDGMENT CREDITORS: Belleview Valley Land Co., John Williams and Ellen Bl. Williams

JUDGMENT DEBTOR: Tammy Sprague, Personal Representative Of Estate Of Fred Dale Van Winkle, Deceased—Estate of Fred Dale Van Winkle, deceased

### AMOUNT OF JUDGMENT

| DAMAGES | COSTS | TOTAL | RATE OF INTEREST |
|---|---|---|---|
| $271,905.61 (Deficiency Judgment entered July 28, 2014) | | $271,905.61 | 8.75% per annum calculated from July 28, 2014. |

DATE OF DEFICIENCY JUDGMENT:

HOW SATISFIED & REMARKS

| | |
|---|---|
| July 28, 2014 | |
| ATTORNEY FOR JUDGMENT CREDITOR: | |
| W. T. Martin, Jr. Martin, Dugan & Martin 509 W. Pierce St. P.O. Box 2168 Carlsbad, NM 88221-2168 (575) 887-3528 Fax (575) 887-2136 | |

I, Jan Perry, Clerk of the District Court of the Twelfth Judicial District of the State of New Mexico, within and for the County of Otero, do hereby certify the foregoing to be a true transcript of the judgment of said Court, now of record in my office.

IN WITNESS WHEREOF, I have hereunto set my hand and Seal of said Court this _8th_ day of _August_, 2014.

KATINA WATSON
CLERK OF THE DISTRICT COURT

By: _____
Deputy

(SEAL)

20210318  02/05/2021 10:54:43 AM
Page: 2 of 2    Fee: 25.00    TJ
Mandi M. Park, Roosevelt Co. Clk., Roosevelt, NM

ATTEST: CERTIFIED AS A TRUE AND CORRECT COPY
OF THE ORIGINAL FILED IN THE OFFICE OF

_August 8th, 2014_ (date)

DISTRICT COURT CLERK

Dated _2/1/21_   By: _____ Deputy

| | |
|---|---|
| **From:** | Harcharan Singh <harchi13@gmail.com> |
| **Sent:** | Wednesday, June 9, 2021 12:20 PM |
| **To:** | usa0453@fedex.com |
| **Subject:** | [EXTERNAL] Fwd: |

---

**Caution! This email originated outside of FedEx. Please do not open attachments or click links from an unknown or suspicious origin.**

---

---------- Forwarded message ---------
From: **Harcharan Singh** <harchi13@gmail.com>
Date: Wed, Jun 9, 2021, 11:37 AM
Subject:
To: <arminder18@msn.com>

Sent just now to ...

Joel,
have you had time to review how to proceed with Presenting judicial lien info to Judge Thuma ?
  Please let me know your intentions so I can make plans if needed to address the situation on Monday if You decide not to ?
Thank you,
Brian VW

Sent from my iPhone

Hi Brian,

I do not agree with you that the re-filing of this judicial lien is an attempt to collect the discharged debt as a personal obligation of the estate. Recently the state legislature changed the law regarding the enforcement of judgments to extend their duration to a flat fourteen years. Previously, the law had been that they were enforceable for seven years but could be renewed for an additional seven years when they neared expiration. The language in the statute describing the seven-year renewal was left in during the revision that extended the life of judgments to fourteen years. The filing in February is nothing more than the (arguably unnecessary because the length of time to enforce was extended) renewal of the judgment.

Your statement that you intend to draft and file a pro se pleading is disturbing, but I will not withdraw from the representation just because you made the threat. I believe it would be unwise to file anything akin to what you described in any event, but certainly not on Monday. The Court has given the Defendants time to respond to its indication that it is considering entering summary judgment in your favor on liability, after which we have two weeks to reply to their response. Now is not the time to muddy the waters with additional claims. If the renewed filing of the judgment has damaged the estate, we can bring it to the court when it is time for the court to calculate the damage award.

I have reviewed the retainer agreement you signed and I previously misstated your agreement regarding pro se filings. You agreed to give me advance notice of any you intend to file, and you have complied with that agreement. I will note, however, that you agreed to ensure there is always at least $5,000.00 in trust on your account. As you should have

noticed from the billing statement that was sent to you on January 20, there was just over $3,000 in your trust at that time. Please send me $2,000 to replenish the trust account. I would appreciate having the opportunity to review any pro se pleading you decide against my recommendation to prepare before you file it.


On Fri, Mar 19, 2021 at 1:24 PM brian van winkle <brianvw62@gmail.com> wrote:
Joel,

have you had time to review how to proceed with Presenting judicial lien info to Judge Thuma ?
   Please let me know your intentions so I can make plans if needed to address the situation on Monday if You decide not to ?
Thank you,
Brian VW


Sent from my iPhone


> On Mar 17, 2021, at 10:09 AM, Joel Gaffney <joel@gaffneylaw.com> wrote:
>
> Send me evidence of the new lien from February 5.
>
> Joel Alan Gaffney, Esq.
> Gaffney Law, PC
> P.O. Box 3460
> Albuquerque, NM 87190
> M: (505) 226-1748
> F: (505)213-0629
> Sent from my iPhone
>
>> On Mar 17, 2021, at 10:03, brian van winkle <brianvw62@gmail.com> wrote:
>>
>> Joel,
>>  It is my wish that you inform Thumas court that we have , after two attempts to negotiate, determined that it is not in the best interest of the estate to deposit the Sanction Check awarded by the court until a final ruling concerning the Williams' in Personam persuit to collect a debt or Summary Judgement is made.
>> I want it known that Williams has placed judicial liens ( in personam) on discharged property that was released upon our payment to the bankruptcy court of $12,500.00. Under Clark Coll. This is more evidenced of Williams' pursuit to collect a discharged debt in personam. Williams Atty has threatened to inform the court that we are refusing to cash the sanction check. I want it known to the court that Williams placed a second lien on the Roosevelt property on the estate of Fred Van Winkle ( in Rem)on Feb 5th , three days before our Feb 8th court date. This is additional proof Evidence of Williams knowing his actions of pursuit to collect a discharged debt in personam vrs in Rem.
>> If you are not willing to do this, I will prepare something pro-se . Please Let me know why We should not proceed as requested ?
>> Thank you
>> Brian VW
>>
>> Sent from my iPhone
Show Quoted Content

On Fri, Mar 19, 2021 at 1:24 PM brian van winkle <brianvw62@gmail.com> wrote:
Joel,

have you had time to review how to proceed with Presenting judicial lien info to Judge Thuma ?
   Please let me know your intentions so I can make plans if needed to address the situation on Monday if You decide not to ?
Thank you,
Brian VW

Sent from my iPhone

> On Mar 17, 2021, at 10:09 AM, Joel Gaffney <joel@gaffneylaw.com> wrote:
>
> Send me evidence of the new lien from February 5.
>
> Joel Alan Gaffney, Esq.
> Gaffney Law, PC
> P.O. Box 3460
> Albuquerque, NM 87190
> M: (505) 226-1748
> F: (505)213-0629
> Sent from my iPhone
>
>> On Mar 17, 2021, at 10:03, brian van winkle <brianvw62@gmail.com> wrote:
>>
>> Joel,
>> It is my wish that you inform Thumas court that we have , after two attempts to negotiate, determined that it is not in the best interest of the estate to deposit the Sanction Check awarded by the court until a final ruling concerning the Williams' in Personam persuit to collect a debt or Summary Judgement is made.
>> I want it known that Williams has placed judicial liens ( in personam) on discharged property that was released upon our payment to the bankruptcy court of $12,500.00. Under Clark Coll. This is more evidenced of Williams' pursuit to collect a discharged debt in personam. Williams Atty has threatened to inform the court that we are refusing to cash the sanction check. I want it known to the court that Williams placed a second lien on the Roosevelt property on the estate of Fred Van Winkle ( in Rem)on Feb 5th , three days before our Feb 8th court date. This is additional proof Evidence of Williams knowing his actions of pursuit to collect a discharged debt in personam vrs in Rem.
>> If you are not willing to do this, I will prepare something pro-se . Please Let me know why We should not proceed as requested ?
>> Thank you
>> Brian VW
>>
>> Sent from my iPhone


--
Joel Alan Gaffney
Shareholder
Gaffney Law, PC
PO Box 3460
Albuquerque, NM 87110
c: (505) 226-1748
f: (505) 213-0629
Joel,
The Roosevelt County property was inherited from my grandmother thru my father out of his bankruptcy, we paid @$12,500.00 to the BC court and the court released it and it was put in me and my sisters names. That's how it's recorded at the Roosevelt clerks office. That's how it's been recorded since the Bankruptcy court took action to close out my fathers estate and awarded us the property.
I will be bringing this up along with the Ignored repeated written request that my Sister And I both made to you prior to our last hearing in front of J.Thuma that you inform the court of the judicial liens... You leave me no choice but to proceed pro-se .
After our last Court date, I made it known to the court that I was not satisfied with the representation, this was done

because you did not bring up the judicial liens on the Roosevelt property. Immediately following I contacted The court and asked them to please make it known that I am dis I-satisfied with the representation I received in court and that the energy I anticipated being presented to the court was not. They noted it and said I have the right to proceed pro-se and to inform them if That is my wish...I called them back and said I would wait.

I will begin preparing to do so now .

Thank you.

Brian.

Sent from my iPhone

On Mar 19, 2021, at 2:00 PM, Joel Gaffney <joel@gaffneylaw.com> wrote:

Thank you.

Sent from my iPhone

On Mar 19, 2021, at 3:25 PM, Joel Gaffney <joel@gaffneylaw.com> wrote:


Okay, I have re-examined the matter and now I understand your position. Please follow up with Silke Humpe to make sure I get an answer to the followup questions I sent today. I'll have a draft of a pleading for you to review on Monday.

On Fri, Mar 19, 2021 at 3:19 PM Joel Gaffney <joel@gaffneylaw.com> wrote:
Found it. Stand by, please.

On Fri, Mar 19, 2021 at 3:16 PM Joel Gaffney <joel@gaffneylaw.com> wrote:
Thank you for the clarification. Do you remember the date the BK Court authorized the transfer out of the estate to your sister's name? I can locate it myself but it will be faster with this information.

On Fri, Mar 19, 2021 at 3:13 PM brian van winkle <brianvw62@gmail.com> wrote:
Joel,
The judicial liens I had sent to you day before yesterday are from the Roosevelt County clerks office they are on The Roosevelt County Property that is in me and my sisters names... the property that's been in me and my sisters names since the BC closed out the estate...

Sent from my iPhone

On Mar 19, 2021, at 2:54 PM, Joel Gaffney <joel@gaffneylaw.com> wrote:

Brian,

The document you sent me was filed in Otero County. Can you send me a recent filing in Roosevelt County that you say I have not addressed?

Joel Alan Gaffney, Esq.
Gaffney Law, PC
P.O. Box 3460
Albuquerque, NM 87190
M: (505) 226-1748
F: (505)213-0629
Sent from my iPhone

On Mar 19, 2021, at 14:44, brian van winkle <brianvw62@gmail.com> wrote:

Joel,
The Roosevelt County property was inherited from my grandmother thru my father out of his bankruptcy, we paid @$12,500.00 to the BC court and the court released it and it was put in me and my sisters names. That's how it's recorded at the Roosevelt clerks office. That's how it's been recorded since the Bankruptcy court took action to close out my fathers estate and awarded us the property.
I will be bringing this up along with the Ignored repeated written request that my Sister And I both made to you prior to our last hearing in front of J.Thuma that you inform the court of the judicial liens... You leave me no choice but to proceed pro-se .
After our last Court date, I made it known to the court that I was not satisfied with the representation, this was done because you did not bring up the judicial liens on the Roosevelt property. Immediately following I contacted The court and asked them to please make it known that I am dis l-satisfied with the representation I received in court and that the energy I anticipated being presented to the court was not. They noted it and said I have the right to proceed pro-se and to inform them if That is my wish...I called them back and said I would wait.
I will begin preparing to do so now .
Thank you.
Brian.


Sent from my iPhone

On Mar 19, 2021, at 2:00 PM, Joel Gaffney <joel@gaffneylaw.com> wrote:

Okay, I have re-examined the matter and now I understand your position. Please follow up with Silke Humpe to make sure I get an answer to the followup questions I sent today. I'll have a draft of a pleading for you to review on Monday.

On Fri, Mar 19, 2021 at 3:19 PM Joel Gaffney <joel@gaffneylaw.com> wrote:
Found it. Stand by, please.

On Fri, Mar 19, 2021 at 3:16 PM Joel Gaffney <joel@gaffneylaw.com> wrote:
Thank you for the clarification. Do you remember the date the BK Court authorized the transfer out of the estate to your sister's name? I can locate it myself but it will be faster with this information.

On Fri, Mar 19, 2021 at 3:13 PM brian van winkle <brianvw62@gmail.com> wrote:
Joel,
The judicial liens I had sent to you day before yesterday are from the Roosevelt County clerks office they are on The Roosevelt County Property that is in me and my sisters names... the property that's been in me and my sisters names since the BC closed out the estate...

Sent from my iPhone

On Mar 19, 2021, at 2:54 PM, Joel Gaffney <joel@gaffneylaw.com> wrote:

Brian,

The document you sent me was filed in Otero County. Can you send me a recent filing in Roosevelt County that you say I have not addressed?

Joel Alan Gaffney, Esq.
Gaffney Law, PC
P.O. Box 3460
Albuquerque, NM 87190

M: (505) 226-1748
F: (505)213-0629
Sent from my iPhone

On Mar 19, 2021, at 14:44, brian van winkle <bri

Pete V. Domenici U.S. Courthouse
333 Lomas Blvd. NW, 5th Floor
Albuquerque, NM 87102
505-415-7999/866-291-6805
www.nmb.uscourts.gov

Case No.:   13-11743-t7
Chapter: 7
Judge:  David T. Thuma
Judge/341 Location:  TR

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

**In re Debtor(s):**

Fred Dale Van Winkle
PO Box 1691
Ruidoso, NM 88355
SSN/ITIN(if any):  xxx-xx-9361

### NOTICE OF STATUS CONFERENCE

Notice is hereby given that a status conference will be held on:

**Monday, June 14, 2021 at 10:00 AM, before the Honorable David T. Thuma, Judge Thuma's Hearing Room, Pete V. Domenici U.S. Courthouse, 333 Lomas Blvd. NW, 5th Floor, Albuquerque, NM 87102.**

(Document number, referenced docket text, and filer as shown below):

*1* – Chapter 7 Voluntary Petition. Fee Amount $306 Filed by Fred Dale Van Winkle. (Arvizu, R)

**BY ORDER OF THE COURT**
Lana Merewether
Clerk of Court

Appearing by telephone: Counsel/parties may appear via telephone if a request is made in advance by calling the chambers of Judge Thuma at (505) 600-4640 or by e-mail to thumastaff@nmb.uscourts.gov.

nm_ntchrgph.jsp – 5/21/21

016571



# United States Bankruptcy Court
## District of New Mexico
### Office of the Clerk
Lana Merewether, Clerk of Court
*www.nmb.uscourts.gov*

Brian Van Winkle
P.O. Box 2595
Ruidoso, NM 88355

May 21, 2021

      Re:    **Fred Dale Van Winkle**
               **Brian Van Winkle et al v. John H. Williams et al**
               **Notice of Suspension of Attorney**

      This is to notify you that Joel Alan Gaffney, *was suspended by the Supreme Court of the State of New Mexico, ordered as of March 26, 2021.*

      When an attorney ceases to act as an attorney, Local Bankruptcy Rule 9010-2(e) Death or Removal of an Attorney, requires the clerk to notify parties represented by that attorney of the requirement that you either:

      -- retain another attorney, or
      -- appear in person

in any further matters in this case.

      If after 21 days from the date of this letter we do not receive an entry of appearance by another attorney on your behalf, this case will proceed on the assumption that you will represent yourself.

      Please note that our case records have already been changed to show that you are representing yourself (to insure that you would receive any notices mailed by the court), so if you choose to represent yourself, no further action is required.   If you have any questions or if you need further information, please call us at 505-415-7999, Option 4.

               Very truly yours,

               *Christa R. Lucero*



**The Disciplinary Board**

AN AGENCY OF THE SUPREME COURT OF THE
STATE OF NEW MEXICO

2440 Louisiana Blvd. NE
Suite. 280
Albuquerque, NM 87110

Phone:    (505) 842-5781
Facsimilie:  (505) 766-6833

**CONFIDENTIAL**

May 12, 2021

Brian Van Winkle
Post Office Box 2595
Ruidoso, NM 88355

     Re:  Joel Gaffney, Esq. (Administratively Suspended)

Dear Mr. Van Winkle:

     Mr. Gaffney is listed as your counsel of record for your bankruptcy proceeding. Our office is concerned that he may be either not properly communicating with clients or not advising them of his suspension. Would you please contact our office if you have any concerns regarding Mr. Gaffney. You can file a complaint online at nmdisboard.org.

     I look forward to hearing from you.

                   Sincerely,

                   Christine E. Long
                   Deputy Disciplinary Counsel