# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>**Fred Dale Van Winkle**,<br><br>Debtor,<br><br>and<br><br>**Brian Van Winkle**, not in his personal capacity but solely as co–personal representative of the estate of Fred Van Winkle, and **Tammy Sprague**, not in her personal capacity but solely as co–personal representative of the estate of Fred Van Winkle,<br><br>Plaintiffs,<br><br>vs.<br><br>**Belleview Valley Land Co.**, a New Mexico corporation, **John H. Williams**, and **Ellen B. Williams**,<br><br>Defendants. | Case No. 13-11743-t7<br><br><br><br><br><br><br><br>Adv. No. 20-01022 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO BRIAN VAN WINKLE'S OBJECTION TO SETTLEMENT AGREEMENT

**COME NOW** Defendants, **Belleview Valley Land Co.,** a New Mexico corporation (*hereinafter referred to as "Belleview"*), **John H. Williams** and **Ellen B. Williams** (*the Williams are hereinafter jointly referred in the singular to as "Williams"*)(*Williams and Belleview are jointly referred to as "Defendants"*) by and through their attorney, W. T. Martin, Jr., of Martin, Dugan & Martin, and for their *Response in Opposition to Brian Van Winkle's Objection to Settlement Agreement* state:

1. This Court ordered a mediation. The mediator was to be Paul Fish. (Doc. 56)
2. All the parties had counsel of record for the mediation.
3. At the mediation with Paul Fish, it was agreed the settlement would be global in nature. Not only was this adversary case to be settled, but state court cases in Otero County and Lincoln County were to be settled. In addition, the issue of the judgment lien against land in Roosevelt County was also to be settled. The goal was to have the parties settle all matters that existed between them.
4. For an entire day, the parties and their attorneys, through Paul Fish as the mediator, negotiated. The Defendant, with John Williams present and the Defendants attorney were in Carlsbad participating by Zoom conferencing. The Plaintiffs were in Albuquerque at Paul Fish's office. Neither the parties nor their attorneys spoke with each other. All communication was through Paul Fish. The negotiations were clearly arm's length with give and take on issues by each side.
    a. A settlement was reached late in the day.
    b. The Plaintiffs signed the Settlement Agreement in their capacity as Co-Personal Representatives of the Fred Van Winkle Estate and they each signed individually.

1

  c. John Williams signed on behalf of Belleview Valley Land Co., himself and as attorney-in-fact for Ellen Williams.

  d. The attorneys for the Plaintiffs and the Defendants each signed the Settlement Agreement.

5. The Settlement Agreement settled the following matters:

  a. The Otero County District Court Case that is presently on appeal to the New Mexico Court of Appeals; and

  b. The foreclosure suit in Lincoln County; and

  c. The judgment line against real property in Roosevelt County; and

  d. The Adversary proceeding in this Court.

6. Each side gave up claims in exchange for obtaining other consideration. By way of example,

  a. The parties settled the redemption money issue by the splitting up the redemption funds with the Defendants receiving the larger portion of those funds.

  b. The Defendants agreed to accept $40,000.00 as full satisfaction of the First Mortgage against the condominium in Ruidoso and in exchange agreed to release the Mortgage and, of course, dismiss the suit.

  c. Defendants agreed to return the check that had been sent as payment of the damages Order entered by this Court.

  d. I exchange, the Defendants are to release the judgment lien in Roosevelt County.

7. It is obvious both sides gave consideration for what they agreed to receive.

a. The e-mail from Mr. Holmes, the Defendants' attorney to the Defendants clearly reflects the "give and take" that occurred in the negotiations. (*See*: Doc 63-1 page 2 of the exhibits attached to Brian Van Winkle's Objection.)

8. The Settlement Agreement is not perfect for either side, but it is fair and equitable.

9. The fact this litigation started in Otero County around 2008 cannot be ignored and the costs to the parties cannot be ignored. The settlement is advantageous to both sides because it stops ongoing litigation and ongoing litigation costs.

10. It resolves issues that were clearly in dispute and the outcome was uncertain.

11. There are no creditors of the Fred Van Winkle Estate harmed. Also, the Fred Van Winkle Chapter 7 had previously been closed and assets distributed. The Trustee reported no assets to distribute. (Doc 112) It was reopened only for the purpose of the Plaintiffs being allowed to bring this adversary claiming they, not other creditors were harmed. It was also re-opened to allow pursuit of collection of the money judgment, which had no effect on other creditors. (Doc. 105)

12. Because the settlement is global, it is questionable whether this court not approving the settlement has the effect of setting aside the settlements of the state court matters. All the property in question has previously been abandoned by or sold by the bankruptcy estate. The redemption proceeds themselves are the result of a redemption in state court and are not part of the bankruptcy estate. Only the courts that have the cases would have authority to set aside the settlement as it relates to that court's case.

    a. While Defendants' counsel has not found a case directly in point, **In re Otero County Hosp. Ass'n, Inc., 617 B.R. 699, 704 (Bankr. D.N.M. 2020)** provides guidance.

3

Bankruptcy courts are courts of limited jurisdiction. *See Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990) ("Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress."); *Connolly v. City of Houston (In re Western Integrated Networks, LLC)*, 329 B.R. 334, 340 (Bankr. D. Colo. 2005) ("[A] bankruptcy court cannot exercise jurisdiction over a proceeding when the proceeding falls outside the jurisdictional boundaries established by statute."). The jurisdictional grant conferred on bankruptcy courts by 28 U.S.C § 1334 covers "all civil pro proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).[2] Proceedings "arising under title 11, or arising in a case under title 11" are core proceedings. 28 U.S.C. § 157(b)(1). *See also Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("The term 'core proceeding,' which, under section 157(b)(1), includes matters arising under and arising in bankruptcy cases, is defined in 28 U.S.C. § 157(b)(2).").[3] Core proceedings involve rights created by bankruptcy law, or proceedings that would arise only within a bankruptcy case. *Gardner*, 913 F.2d at 1518. Proceedings that fall within the Court's "related to" jurisdiction are non-core proceedings. *Midgard*, 204 B.R. at 771. Non-core, related proceedings primarily "encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for the bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others[.]" *In re Zale Corp.,* 62 F.3d 746, 752 (5th Cir. 1995) (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)). *See also Gardner*, 913 F.2d at 1518 ("Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court."). A proceeding is "related to" a case under title 11 if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Gardner*, 913 F.2d at 1518 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

The outcome of this adversary will have no effect on the Lincoln County foreclosure nor the judgment lien against the real property in Roosevelt County. The redemption funds issue is a final judgment in Otero County and is on appeal in the New Mexico Court of Appeals.

b. Further, under New Mexico law, the settlement is not subject to being set aside.

i.) "New Mexico public policy favors the settlement of claims without litigation. *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1139 (N.M. Ct. App. 1983).

Because New Mexico favors settlement, courts "have a duty to enforce[ ]

4

settlement agreements. ………("[T]he policy of our law is to favor amicable settlement of claims without litigation when the agreements are fairly secured, are without fraud, misrepresentation, or overreaching, and when they are supported by consideration.")" **Loehr v. Allstate Ins. Co., 2008 WL 11327385, at \*3 (D.N.M. Mar. 17, 2008), enforcement granted, Loehr v. Allstate Ins. Co., 2008 WL 11337668 (D.N.M. May 14, 2008)**

13. Also, Tammy Sprague, who signed in her capacity as Co-Personal Representative and individually, has not filed an objection. In the context of this case, it is difficult, if not impossible, to set aside the Settlement Agreement for one Co-Personal Representative and only one party.

14. The following general rules of law apply to setting aside a settlement:

    a. A voluntary compromise and settlement of doubtful claims will not be disturbed or set aside merely because of a mistake as to the law. **15A C.J.S. Compromise & Settlement § 68**

    b. A compromise may not be set aside because of bad faith, negligence, and indifference on the part of one of the parties where the other party is without fault and is not complaining but is insisting that it be maintained and executed. A contemporaneous mental reservation or subsequent change of mind as to the adequacy of the bargain will not destroy a settlement formally entered into. A change of heart is not a valid ground to rescind a compromise agreement. **15A C.J.S. Compromise & Settlement § 60**

15. The Defendants negotiated the settlement in good faith. No fault can be placed on the Defendants regarding the negotiations nor the settlement. Brian Van Winkle is deciding he

5

wants out of an agreement he negotiated and signed. Change of mind or change of heart is not grounds to have the settlement set aside. The Defendants are insistent the settlement be approved and enforced.

16. Relevant *Iridium* factors a bankruptcy court generally follows shows the settlement should be approved.

    a. The balance between the litigation's possibility of success and the settlement's future benefits – The ultimate resolution of the issue in the adversary presents a case with an uncertain ultimate result. The settlement provides a resolution and stops ongoing litigation and costs.

    b. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay. – The likelihood is a certainty.

    c. The paramount interests of creditors – There are no creditors affected by the settlement.

    d. Whether other parties in interest support the settlement – The Defendants support the settlement.

    e. The extent to which the settlement is the product of arm's length bargaining. – The settlement was the result of a day long mediation conducted by Paul Fish as mediator. The arm's length bargaining is discussed above.

17. This Court should approve the Settlement Agreement.

**Martin, Dugan & Martin**

By_____
    W. T. Martin, Jr.
    509 W. Pierce St.
    P.O. Box 2168
    Carlsbad, NM 88221-2168
    (575) 887-3528
    Fax (575) 887-2136
    e-mail: martinlaw@zianet.com
    Attorney for Defendants

## CERTIFICATE OF SERVICE

    I hereby certify that on September 23rd, 2021, I served copies of the foregoing pleading on opposing cousel by electronic filing through the CM/ECF system, which caused all parties or counsel requesting notice to be served by electronic means on the date of filing.

**Martin, Dugan & Martin**

By_____
    W. T. Martin, Jr.

7