UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                                    No. 13-11743 t7

      Debtor.

BRIAN VAN WINKLE and
TAMMY SPRAGUE,
Co-personal representatives,

      Plaintiffs,

v.                                                       Adv. No. 20-1022 t

BELLEVIEW VALLEY LAND CO.,
JOHN H. WILLIAMS, and
ELLEN B. WILLIAMS,

      Defendants.


## **OPINION**

After a long day of mediation, the parties to this adversary proceeding resolved their disputes and signed a settlement agreement. They filed a joint motion to approve the settlement. In an unexpected turn of events, the only objection to the joint motion was filed by Brian Van Winkle, one of plaintiff's co-representatives. Mr. Van Winkle attended the mediation with his co-representative (his sister Tammy Sprague) and their counsel. He agreed to the settlement and signed the settlement agreement. Nevertheless, in his objection Mr. Van Winkle asks the Court to rescind the agreement. The Court held a hearing on the matter, at which the parties asked the Court to rule based on the papers and the case history. Being sufficiently advised, the Court concludes that Van Winkle's objection/request for rescission is not well taken.

A.    Facts.[1]

For the limited purpose of ruling on the Motion, the Court finds:

This dispute started in 2008, when Fred Van Winkle ("F. Van Winkle") sued John and Ellen Williams over certain real property he owned in Otero County, New Mexico. The Williamses counterclaimed. In 2010 the state court entered a substantial money judgment against F. Van Winkle on the counterclaim. The Williamses filed judgment liens in the two New Mexico counties where F. Van Winkle owned real estate and began foreclosing the judgment liens. In 2011 Van Winkle filed a chapter 13 bankruptcy case. The case was dismissed in 2013 without a discharge, followed almost immediately by this chapter 7 case.

F. Van Winkle died on April 28, 2014. In 2015 his probate estate filed an adversary proceeding against the Williamses, alleging violations of the discharge injunction and a Court order. The complaint spawned substantial litigation, including a mandamus action, two final judgments, and two appeals to the Tenth Circuit Bankruptcy Appellate Panel. The proceeding was closed in 2019.

The current adversary proceeding involves the Williamses' successful attempt to obtain about $72,000 from a state court registry, which had been deposited by the probate estate to redeem property the Williamses had foreclosed (the "Redemption Funds").[2] The probate estate, represented by Brian Van Winkle ("Van Winkle") and Tammy Sprague ("Sprague") as co-personal representatives, sued the Williamses, alleging that taking the Redemption Funds violated

---

[1] The Court takes judicial notice of its docket in this proceeding. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

[2] There was significant litigation in state court over this issue. The state court eventually ruled that the Williamses were entitled to the Redemption Funds.

the discharge injunction. The Williamses denied any violation, asserted that they were the rightful owners of the Redemption Funds, and moved for summary judgment.

The Court denied the Williamses' summary judgment motion and gave notice pursuant to Rule 56(f) that it was considering granting summary judgment in favor of Plaintiffs instead.

Determining the rightful owner of the Redemption Funds (and hence whether there was a discharge injunction violation) required answering the following question: under New Mexico law, when does title pass to funds placed in the court registry to redeem foreclosed property? The question arose here only because the Williamses brought a second foreclosure action on the property at issue before the redemption prompted by their first foreclosure action had been completed. Normally, a redemption is completed before there is further litigation about the subject property.

After the Court ruled on the Williamses' summary judgment motion, they filed a response to the Court's Rule 56(f) notice, a motion to dismiss, and a second motion for summary judgment. Plaintiffs filed an omnibus response and the Williamses replied. While the Williamses' motions were pending, Plaintiffs' counsel, Joel Gaffney, was suspended from the practice of law.[3] Plaintiffs' new counsel, Ronald Holmes, entered his appearance on June 11, 2021.

At a June 14, 2021, status conference, the Court raised the issue of mediation. In light of the history of this case and the unusual issue raised by Plaintiff's complaint, the Court noted that any final judgment likely would be appealed. Considering that the parties had been fighting for 13 years and that the Williamses were facing health problems, the Court encouraged the parties to

---

[3] Mr. Gaffney was the second lawyer involved in these proceedings to be disbarred. Jennie D. Behles, the Williamses' bankruptcy counsel, was disbarred in 2019.

pursue a settlement. They ultimately agreed that mediation was a good idea. The parties hired Paul

Fish, a respected local attorney and mediator, to facilitate.

The mediation took place August 24, 2021. Both sides attended with their counsel. After a

full day the parties settled all disputes in this adversary proceeding and in pending state court

litigation. The agreement, signed by the parties, their counsel, and Mr. Fish, contains the following

terms:

- The probate estate gets $50,000 of the Redemption Funds;
- The probate estate will pay the Williamses $40,000 and will get, in exchange, a certain Lincoln County condominium, free and clear of any lien or other claims the Williamses may have;
- Certain real property in Roosevelt County shall be released from any and all claims by the Williamses;
- The Williamses shall release any and all transcripts of judgment; and
- The parties shall execute mutual releases.

The settlement agreement also provides:

This agreement is subject to the approval of the Bankruptcy Court for Van Winkle. All parties represent that they will support such approval. It shall be final when the Order of the Bankruptcy Court approving it is final and non-appealable. At that time, the parties shall expeditiously fulfill the provisions thereof.

The parties filed a joint motion to approve the settlement on August 30, 2021. Van Winkle

filed the only objection. Sprague did not object. The deadline to object has passed.

In his objection, Van Winkle argues that the settlement agreement should rescinded on

grounds of mutual mistake and unconscionability. He asserts that "My attorney incorrectly viewed

my position from the district court's perspective, rather than the bankruptcy court's." Van Winkle

asserted that the settlement agreement was "based in reliance on a misrepresentation and on false

law." He stated that "I felt like I had been duped by everyone involved in this mediation," and that

"Strong-arming and misinformation were used by the entire cast to have me believe the state of

the law was something other than what it was."

B.    State Law Governing Settlement Agreements.

Settlement agreements are contracts. *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013); *Herrera v. Herrera*, 974 P.2d 675, 678 (N.M. App. 1999). Issues regarding the validity of contracts are governed by the contract law of the state in which the agreement was made. *Walters*, 703 F.3d at 1172; 15A C.J.S. Compromise & Settlement § 33 (issues about the validity of settlement agreements are governed by the law of the state where the agreement was made); *Flemma v. Halliburton Energy Servs., Inc.*, 303 P.3d 814, 819 (N.M. 2013) ("As a general proposition of law, it is settled that the validity of a contract must be determined by the law of the state in which it was made."). Van Winkle's objection is thus governed by New Mexico contract law.

"It is the policy of the law and of the State of New Mexico to favor settlement agreements." *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 749 P.2d 90, 92 (N.M. 1988); *Montano v. NM Real Estate Appraiser's Bd.*, 200 P.3d 544, 547 (N.M. App. 2008) ("It is well settled law that th[e] [c]ourt generally enforces settlement agreements."). A settlement agreement *"*will not be set aside just because it later proves to have been unwise or unfortunate for one party to enter into the agreement." *Id.* "Instead, [New Mexico appellate courts consistently hold] that in negotiating a settlement contract, the parties are bound by its provisions and must accept both the burdens and benefits of the contract." *Id.* A court will relieve a party from its contractual obligations under a settlement agreement based only on "well-defined equitable exceptions such as unconscionability, mistake, fraud or illegality." *Builders Contract Interiors, Inc. v. Hi-Lo Indus. Inc.*, 134 P.3d 795, 798 (N.M. App. 2006); *Montano*, 200 P.3d at 547.

C.    Mutual Mistake.

"A contract or settlement, which equity will reform or rescind because of a mutual mistake, must fail to express the agreement actually entered into, or fail to express what was really intended by the parties." *Smith v. Loos*, 431 P.2d 72, 76 (N.M. App. 1967); *see Twin Forks Ranch, Inc. v. Brooks*, 120 N.M. 832, 835 (Ct. App. 1995) ("A mutual mistake occurs when the parties have reached an agreement, but the writing either does not express what was really intended, or has achieved what neither party intended[.]") (citations omitted).[4]

Van Winkle did not present any evidence of a mutual mistake. He does not point to any provision of the settlement agreement that fails to express the parties' intent or actual agreement. The Williamses strongly disagree that the settlement agreement reflects or is based on any mistakes. Rather, they believe the agreement accurately memorializes the deal struck by the parties. Nothing in the record is to the contrary. The Court concludes that there is no basis for setting aside the settlement agreement because of a mutual mistake.

D.    Unilateral Mistake.

It seems more likely that Van Winkle seeks relief for a *unilateral* rather than a *mutual* mistake. New Mexico follows the Restatement (Second) of Contracts when determining whether a party's unilateral mistake allows him or her to avoid a contract. *See Twin Forks*, 120 N.M. at 835 (citing the Restatement). Under the Restatement, the mistake of one party makes a contract voidable

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and

---

[4] An example of a mutual mistake might be if the Williamses had agreed to sell Blackacre to the probate estate but the signed sales contract mistakenly contained the legal description of Whiteacre, which the Williamses did not own and the probate estate did not wish to buy.

(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
(b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contracts § 153 (1981). A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or
(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154 (1981).

"Courts have traditionally been reluctant to allow a party to avoid a contract on the ground of mistake, even as to a basic assumption, if the mistake was not shared by the other party." Restatement (Second) of Contracts § 153 cmt. a (1981). To rescind the settlement based on a unilateral mistake, Van Winkle would have to show the mistake was "basic and material to the agreement, and the other party knew or reasonably should have known of the mistake." *Jacobs v. Phillippi*, 697 P.2d 132, 134-35 (N.M. 1985).

Here, there is no such showing. While Van Winkle complains that his counsel and the mediator mistakenly focused on the state court's ruling rather than this Court's, it is likely that they emphasized to Van Winkle the risks and uncertainties of this particular piece of litigation. Van Winkle had gotten a favorable initial ruling from this Court, true enough, but the state court had viewed the situation differently; there was no binding or persuasive precedent on the issue; the issue was obscure; and the risk of an appeal was high. Continued substantial expense was almost guaranteed, absent a settlement. Advising Van Winkle of those facts and risks is not the same as misunderstanding the law, and does not constitute a unilateral mistake. In any event, the

risk of agreeing to a deal he now dislikes, for whatever reason, must be borne by Van Winkle, not the Williamses.

E.      Unconscionability.

"Unconscionability is an equitable doctrine, rooted in public policy, [that] allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp. of NM*, 208 P.3d 901, 907 (N.M. 2009). Unconscionability falls into two categories: procedural and substantive. *Id.*

1.      Substantive Unconscionability.

Substantive unconscionability concerns the legality and fairness of the contract terms themselves. The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns.

*Id.* at 907 (citations omitted).

The Court has reviewed the settlement agreement and concludes that it is fair and reasonable to both sides. The probate estate gets about 69% of the Redemption Funds. It settles separate litigation with the Williamses over the Lincoln County condominium and Roosevelt County property for $40,000. All litigation ends. There is no evidence that these terms are unfair, unlawful, or implicate public policy concerns.

Van Winkle is right that the Court was considering granting Plaintiffs summary judgment in this proceeding, in which event the probate estate would get $72,000, not $50,000. That is not the end of the story, however. The Williamses and their counsel have been tenacious litigators these many years. The legal and factual issues involved are unusual, with little or no relevant case law or other guidance. The state court ruling on the Redemption Funds is at odds with this Court's ruling. Had the Court granted Plaintiffs summary judgment, an appeal very likely would have

followed. The outcome of any such appeal would have been uncertain. Viewed in that context, the settlement is reasonable, especially when coupled with the other settlement terms.

The litigation between the parties has been expensive and time-consuming. Without a settlement, it is impossible to say when the litigation would end, how it would end, and what the ultimate cost or benefit to Plaintiffs might be.

All of that, and more, was undoubtedly explained to Van Winkle by the mediator and counsel. Given what the Court knows about the pending disputes between the parties, it appears to the Court that the settlement is well within the range of reasonableness. To be sure, the probate estate might have done better through litigation and appeal, but it also could have done much worse. The only certainties, absent a settlement, are time and expense. The agreement is substantively conscionable.

2.     Procedural Unconscionability.

Procedural unconscionability goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.

*Id.* at 907–08.

Inequality of bargaining power or a party's impression that he has no meaningful choice but to accept the other party's terms are indicia of procedural unconscionability. *Guthmann v. La Vida Llena*, 709 P.2d 675, 679 (N.M. 1985). Van Winkle presented no evidence that the circumstances of the mediation fall into that category. Both sides were represented by competent counsel. Each side had equal bargaining power and engaged voluntarily in the mediation. The mediation was facilitated by a reputable, experienced, and unbiased mediator. Van Winkle has not shown that the circumstances surrounding the mediation were such that he was not free to decline

the Williamses' proposed terms. He could have insisted on different settlement terms and refused to agree to the terms now before the Court. He did not. Sprague accepted the same terms, under the same circumstances, and does not seek to rescind or avoid the settlement.

Mediations can involve significant pressure to settle. That is part of the process. Mediators who do not assert such pressure in support of a reasonable settlement are not doing their job. As a result, it is not unusual for parties to experience buyer's remorse after a difficult mediation.

A mediated settlement cannot be set aside because a party has second thoughts. As the Williamses' observed in their response to the rescission request, "such precedent [would] open the door to the possibility of every negotiated settlement being set aside because the signing party doesn't like the deal to which he agreed or has had a change of heart. This cannot be sanctioned."

There is no basis to set aside the settlement agreement for procedural unconscionability.

F.    Van Winkle's Lack of Authority to Seek Rescission.

Van Winkle's objection must be overruled for another reason: Sprague is not a co-objector. NMSA 1978, § 45-3-717(A), governing co-representatives of a probate estate, provides:

> If two or more persons are appointed co-representatives, the concurrence of all is required, unless the will provides otherwise, on all acts connected with the administration and distribution of the estate. This restriction does not apply when:
>     (1) any co-representative receives and receipts for property due the estate;
>     (2) the concurrence of all cannot readily be obtained in the time reasonably available for emergency action necessary to preserve the estate; or
>     (3) a co-representative has been delegated to act for the others.

Exceptions (1) and (2) do not apply. With regard to exception (3), there is no evidence that Tammy Sprague delegated to Van Winkle the right to seek rescission of the settlement agreement. Thus, even if there were grounds to set aside the agreement (and there are none), the Court could not consider doing so because Sprague did not concur.

G.     <u>The Settlement Should be Approved Under B.R. 9019 and the *Kopexa* Factors</u>.

Having determined that the settlement agreement should not be rescinded, the Court will review whether it should be approved. "On motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. Pro. 9019(a). "Settlements are favored in bankruptcy." *Kearney v. Unsecured Creditors Committee*, 987 F.3d 1284, 1290 (10th Cir. 2021). Nevertheless, "[t]he decision of a bankruptcy court to approve a settlement must be 'an informed one based upon an objective evaluation of developed facts.'" *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997), quoting *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989). "A mini-trial on the matters under consideration is unnecessary; it is enough for the court to 'canvass ... 'the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *Kearney*, 987 F.3d at 1290, quoting *In re Dennett*, 449 B.R. 139, 145 (Bankr. D. Utah 2011).

To determine whether to approve a proposed settlement, the bankruptcy court should consider the probable success of the litigation on the merits; the difficulty of collecting a judgment; the complexity and expense of the litigation; and the interests of creditors. *Kopexa Realty*, 213 B.R. at 1022; *see also Kearney*, 987 F.3d at 1290 (citing these "*Kopexa* factors"); *In re Velasquez*, 2019 WL 2511557, at *5 (10th Cir. BAP) (same).

Here, the *Kopexa* factors weigh in favor of settlement. The probate estate has a better than even chance of succeeding on the merits of the dispute over the Redemption Funds, even considering the risk of an appeal. That is reflected in paying the probate estate 69% of the Redemption Funds. It does not appear that it would be difficult to collect any judgment. The complexity and expense of litigation strongly favor the settlement. Finally, to the extent, if any,

the dispute between the parties could result in a dividend to creditors, the settlement is consistent with the interests of creditors.

Conclusion

Van Winkle's objection is overruled. The joint motion will be granted by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 3, 2021

Copies to:

Counsel of record

Brian Van Winkle
702 White Mountain Drive #11
Ruidoso, N.M. 88355

Tammy Sprague
1007 Ellendale
Las Cruces, NM 88005